**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated | Civil Case No.: 4:25-cv-00931-O |
| Plaintiffs | |
| v. | **COMPLAINT – CLASS ACTION** |
| USA FENCING ASSOCIATION a Colorado Corporation | |
| and | |
| Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually | **JURY TRIAL DEMANDED** |
| Defendants. | |

**SECOND AMENDED VERIFIED CLASS ACTION COMPLAINT**

Plaintiffs Julia Zhao, Frederick Hausheer, Nana Pan, and Hongran Stone (collectively, "Plaintiffs"), individually and on behalf of the Class defined herein of similarly situated persons ("Class Members"), allege the following against Defendant USA Fencing Association ("USFA") and each and every individual defendant (together the "Defendants"), based upon personal knowledge and information and belief as to all other matters:

## INTRODUCTION

1. This class action is brought by parents of minor athletes who were discriminated against, defrauded,

and otherwise harmed by Defendant USFA and each individual defendant, through the purposeful defrauding of parents of minor athletes regarding events falsely advertised as women's sporting events, intentionally allowing biological men to compete in events specifically for women, and promoting alcohol at competitions exclusively designed for minors.

2. Defendant USFA hosted the North American Cup in Fort Worth, Texas from March 3, 2023, to March 6, 2023 (March NAC). This tournament consisted of events grouped by age, sex, and weapon. The age groups included under 10, 12, 14, 16 (cadet) year old and adult (para fencing). For each age group, there were two sex groups – men and women. For each sex and age groups, there were three weapon categories – foil, epee, and saber. This tournament hosted a total of 29 events (para epee only had men's event). More than 2300 athletes, including many Texan athletes, participated in this tournament, other than the 29 para fencers, all of them were minors.

3. Defendant USFA hosted the North American Cup in Fort Worth, Texas from November 10 to November 13, 2023 (November NAC). Similarly, this tournament also consisted of events grouped by age, sex, and weapon. The age groups included under 14, 16 (cadet) and 20 (junior) years old. For each age group, there were two sex groups – men and women. For each sex and age groups, there were three weapon categories – foil, epee, and saber. This tournament hosted a total of 24 events. A total of 2268 athletes, including many Texan athletes, participated in this tournament, most of them are minors and all of them were under 21, the legal age for alcohol consumption in Texas.

4. During the above two tournaments, Defendant USFA, authorized by the individual Defendants, brazenly violated Title IX of the 1972 Educational Amendment by discriminating against biological women athletes, defrauded Plaintiffs by falsely advertising women's events while at all times intending to include men in those events, and illegally promoted alcohol specifically

targeting minor athletes at the tournament venue.

## THE PARTIES

4. Plaintiff Julia Ya Zhao is an adult individual residing in Lakeway, Texas 78738, and a mother of a minor athlete who participated in the Y14 and Cadet Women's Epee events in November NAC.
5. Plaintiff Frederick Hausheer is an adult individual residing in Lakeway, Texas 78738, and a father of a minor athlete who participated in the Y14 and Cadet Women's Epee events in November NAC.
6. Plaintiff Nana Pan is an adult individual residing in Weston, MA 02493, and a mother of a minor athlete who participated in the Cadet Men's Epee event in March NAC and Cadet and Junior Men's Epee events in November NAC.
7. Plaintiff Hongran Stone is an adult individual residing in Menlo Park, CA 94025, and a mother of a minor athlete who participated in the Y14 and Cadet Women Saber events in March NAC and Y14, Cadet, and Junior Women Saber events in November NAC.
8. Defendant United States Fencing Association ("USFA") is a Colorado nonprofit membership organization located in 210 USA Cycling Point, Suite 120, Colorado Springs, CO 80919 that conducts substantial and continuous business in Texas and has hosted multiple national events in Fort Worth, Texas.
9. Defendant Donald Alperstein is an adult individual residing in 429 S. Ogden St., Denver, CO 80209 and has been serving USFA with every possible executive position such as president, legal counsel, and board director for the past 30 plus years. At the time of alleged harm to the Plaintiffs and currently, he served as a Special Board Member and fashioned himself as the legal advisor to the board.

10. Defendant Phil Andrews is an adult individual residing in 2667 E. Fremont Place, Centennial, Colorado 80122 and has been serving as the Chief Executive Officer of USA Fencing since August 2022.

11. Defendant David Arias is an adult individual residing in 1408 Cosmos Cir, Vestavia, AL 35216-2408, and had served as USFA's director for more than ten years. At the time of alleged harm to the Plaintiffs, he was the chairman of the USFA's board.

12. Defendant Damien Lehfeldt is an adult individual residing in 6222 Berlee Dr. Alexandria, VA 22312-1224 and currently serving as the Chair on the USA Fencing Board. At the time of alleged harm to the Plaintiffs, he was a director of the USFA's board.

13. Defendant Kat Holmes is an adult individual residing in 300 W 110th St. Apt 17F New York, NY 10026-4056 and currently serves as a director on the USA Fencing Board. At the time of alleged harm to the Plaintiffs, she was a director of the USFA's board.

14. Defendant Lauryn Deluca is an adult individual residing in 320004 N Marginal Dr, Apt 132, Willowick, OH 44095, Lake County and currently serves as an Athlete Director on the USAF's Board. At the time of alleged harm to the Plaintiffs, she was a director of the USFA's board.

## JURISDICTION AND VENUE

15. This court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 20 U.S.C. § 1681, and Executive Order 14201 (2025).

16. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the Parties are from different states and the amount in controversy exceeds $75,000.

17. This court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged are so closely related to the federal claims and/or part of the

same case or controversy.

18. This Court has specific personal jurisdiction over Defendant USFA. Defendant USFA conducts substantial and continuous business in Texas where this District is located. Defendant USFA has sufficient minimum contacts with this State, including through recruiting and training its members, referees, and coaches; developing, certifying, and collecting dues from Texas fencing clubs; and sanctioning local and regional tournaments in Texas while collecting related fees. Defendant USFA hosted its national tournaments North American Cups (NACs) in Fort Worth, Texas in March 2023 and November 2023 respectively; and is scheduled to host another NAC in November 2025.

19. This Court has specific personal jurisdiction over individual Defendants. Individual Defendants are current or former USFA directors or officers who authorized USFA to conduct substantial and continuous business in Texas where this District is located. The individual Defendants, by their intentional conduct and/or recklessness and/or gross negligence, have authorized Defendant to conduct fraudulent transactions and to violate various state and federal laws and regulations, including without limitation, authorize Defendant USFA to host and falsely advertise its national tournaments North American Cups (NACs) in Fort Worth, Texas in March 2023 and November 2023 respectively. As the result of their wrong doings, the Plaintiffs suffered damages in Texas. Therefore, each and every individual Defendant has sufficient minimum contacts with this State to warrant this Court's specific personal jurisdiction.

20. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant conducts significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## FACT ALLEGATIONS

### *Educational Institution Receiving Federal Funding*

21. USFA is the national governing body ("NGB") for the Olympic and Paralympic Sport of fencing in the United States. On information and belief, it is the only vocational training institution that provides official fencing referee and coach training programs and certification.

22. On its applications to the Paycheck Protection Program (PPP) loan, a federal funded program that provides financial relief to small business during the COVID pandemic, USFA listed itself as an educational service organization twice in 2020 and 2021.

23. USFA received two forgivable loans from the federal PPP program in the amount of $191,873 on April 11, 2020, and $266,559 on March 3, 2021.

24. Defendant USFA is a member organization of the United States Olympic & Paralympic Committee (USOPC) and designated by USOPC as the NGB for the sport of fencing.

25. USOPC receives direct federal funding, including taxpayer-derived appropriations, PPP forgivable loans, and funding from Department of Veterans Affairs (VA) to administer its Paralympic Military Program (PMP), a federally funded program to support adaptive sports opportunities for wounded, ill, and injured U.S. service members and veterans.

26. The Paralympic Military Program includes Paralympic disciplines such as wheelchair fencing and provides financial and logistical support that extends to affiliated national governing bodies involved in these activities, including USFA.

27. According to the DOD's published budget, the USOPC was allocated approximately $2.4 million in FY 2024 and $2.5 million in FY 2025 under the Support for International Sporting Competitions (SISC) program to administer this initiative.

28. Given that the USOPC receives direct federal funding for its operations—including through the DOD, VA Department, and PPP—any funds transferred to Defendant USFA came from a commingled and indivisible pool of funds that include federal funds.

29. As a result, federal financial support flows from the federal government to USOPC and, in turn, to Defendant USFA. The USOPC's official audited financial report for the year ending December 31, 2023, confirms that USA Fencing received $1,190,129 in direct financial support from USOPC. This amount includes $784,889 in athlete grants, $214,316 in athlete services, $150,000 in NGB grants, and $40,924 in NGB services.

30. According to a 2025 USFA financial report, USFA received at least $1.239 million under the category "USOC Funding" from the USOPC.

31. On information and belief, Defendant Alperstein, as the then president of USFA at the time of the PPP loan, was personally involved in the preparation and approval of USFA's PPP loan application and had personal knowledge of USFA's status as an educational institution that had received federal funding.

32. Defendant Damien Lehfeldt is a coach and referee with personal knowledge that USFA is an educational institution that provides vocational training and certification to coaches and referees. Defendant Lehfeldt is the current chairman of USFA's board. As such, he has personal knowledge that USFA has received federal funding.

33. All other individual Defendants are either long time coaches, referees, and/or USFA executives or USFA board directors. All of them have personal knowledge that USFA has always been an educational institution, and all of them have actual knowledge through USFA's financials and budgets that USFA has been receiving federal funding.

34. On May 7, 2025, Defendant Lehfeldt was subpoenaed by the Subcommittee on Delivering on

Government Efficiency (DOGE) of the U.S. Congress to testify in a Congressional Hearing on biological men competing in women's sports. At the hearing Defendant Lehfeldt stated that Defendant USFA did not need to comply with President Donald Trump's Executive Order 14201 on February 5, 2025, titled *"Keeping Men Out of Women's Sports,"* which mandates that all recipients of federal financial assistance—including educational institutions and affiliated organizations—must prohibit biological males from participating in female-designated athletic competitions.

35. Defendant Lehfeldt misrepresented material facts to Congress by stating that USFA was a "purely private organization," not an educational institution, and "never received any federal funding," while, at all times, he had full personal knowledge that USFA did receive federal funding.

36. Defendant Alperstein, with personal knowledge of USFA's receipt of federal funding as an educational institution, while acting as the board's legal advisor, endorsed and supported Defendant Lehfeldt's misrepresentation to Congress.

37. Similarly, Defendants Phil Andrews, Kat Holmes, and Lauryn Deluca adopted and publicly endorsed Defendant Lehfeldt's misrepresentations to Congress while knowing that USFA is an educational institution which received federal funding both directly and through USOPC.

***Blanket Approval of Biological Men Competing in Women's Events***

38. As approved by the individual Defendants, Defendant USFA adopted near blanket approval for any athlete to compete in women's fencing events, irrespective of the athlete's sex assigned at birth, for the age groups of Cadet and below (under 16 years old). Additionally, Defendant USFA penalized female athletes who do not wish to compete against athletes assigned male at birth.

39. Defendant USFA's transgender policy, in effect starting in 2023 until August 1, 2025, allowed

anyone under the age of 16 "to compete in the gender category with which they identify, without restriction."

> *"Transgender and nonbinary athletes competing in youth events are permitted to compete in the gender category with which they identify. Any fencer can compete in self-identified sex group in one season and switch to a different sex in another season, without any restriction other than a parental approval"*

40. Only when cadet fencers "who qualify to compete in junior and/or senior competitions" are then required to take testosterone treatment.

41. Defendant USFA does not disclose to its members whether an event has transgender and/or nonbinary fencers.

42. Defendant USFA only advertises its events using two sex categorizations – men's and women's events. This deceptive practice has created a false impression that all USFA tournaments are grouped into men's and women's events.

43. USFA did not disclose the inclusion of athletes assigned male at birth in women's events. As a result, many parents of minor fencers were unaware of USFA's transgender policy and registered their children for events based on the sex category published by USFA's advertisements without any knowledge that USFA would allow biological men to freely compete with women.

***False Advertisement***

44. Defendant USFA advertised the March NAC and November NAC to be sex segregated competitions, as it claimed in all other tournaments hosted by USFA.

45. Relying on Defendant USFA's advertisement, Plaintiffs paid registration fees, tournament fees, incurred travel and hotel expenses, and many had to take days off from work to accompany their minor children to these competitions.

46. Plaintiffs reasonably trusted Defendant USFA's advertisement in light that Defendant USFA is a NGB sanctioned by the USOPC. Plaintiffs had every reason to believe that such an NGB would not falsely advertise events and to believe that their children would compete with other children of the same sex assigned at birth.

***Alcohol Advertisement Targeting Minors and Serving Alcohol to the Under Aged***

47. Defendant USFA entered into a commercial sponsorship agreement with Naked Wines, publicly announced in a May 4, 2023 press release titled "A Toast to Victory: Naked Wines Named Official Wine of USA Fencing," designating the brand as an official partner and promotional affiliate.

48. Defendant USFA thereafter advertised and promoted Naked Wines, including "member benefit" discounts, on its public membership portal and event-related communications, with no effort to restrict such messaging from reaching minor athletes or their families. Defendant's own website identifies a significant portion of its membership as minors.

49. Defendant USFA knowingly marketed this alcohol sponsorship in connection with the March and November NACs where a majority of participating athletes were minors.

50. While Defendant USFA and all individual Defendants were fully aware that both the March NAC and November NAC were designed for minors, they nevertheless intentionally and recklessly placed numerous Naked Wines banners which were immediately visible from almost all angles at competition venues.

51. Defendant USFA went so far as to email minor fencers that there was $100 voucher from Naked Wine as a "benefit" of becoming a member of USFA.

52. On information and belief, Defendant USFA freely served wines from Naked Wines to tournament staff members and referees in both March and November NACs. As a result, certain referees became too drunk to perform their duty as referees.

53. USFA recklessly placed wine on the tables inside the staff's area and did not check anyone's identification before serving wine, knowing many staff members and referees were under the age of 21.

## CLASS ACTION ALLEGATIONS

54. All previous paragraphs are incorporated herein.

55. Plaintiffs seek to represent a class defined as all persons in the United States who registered for, participated in, or had a minor child participate in, the March and November NACs which were organized, sanctioned, and/or hosted by Defendants.

56. Class members are so numerous that their individual joinders herein are impracticable. On information and belief, members of the Class number will be thousands. The precise number of Class members and their identities are unknown to Plaintiffs at the time of this filing but may be determined through discovery. Class members may be notified of the pendency of this action after May 7, 2025, when Defendant Lehfeldt, testifying before the Congress as Defendant USFA's Chair, falsely claimed that Defendant USFA was not an educational institution and had never received federal funding. This testimony triggered public scrutiny and investigation, which first revealed Defendant USFA's series of deceptive actions and illegal conduct.

57. Common questions of law and fact exist for all Class members and predominate over questions affecting only individual class members. Common legal and factual questions include but are not limited to

(i) Whether Defendant USFA's policy of allowing transgender-identifying biological males to compete in women's categories has violated Title IX, which prohibits sex discrimination in federally funded educational programs;

(ii) Whether Defendant USFA falsely advertised its fencing events as sex-segregated

when, in fact, it allowed biological males to compete in women's events;

(iii) Whether Defendant USFA promoted alcohol to minors by displaying alcohol branding at events where almost all athletes were under 18;

(iv) Whether Defendant USFA violated its nonprofit status by engaging in business inconsistent with its stated purpose such as marketing alcohol;

(v) Whether Defendant USFA has invalidated its nonprofit status by violating state and federal laws such as its sex discrimination in violation of Title IX, and marketing alcohol to minors;

(vi) Whether Defendant Lehfeldt's untruth under oath to Congress, a possible violation of 18 U.S.C. §1001 should disqualify him as a board director and whether other individual Defendants' intentional, reckless, and/or grossly negligent action or inaction approving Defendants' illegal activities should result in their personal liability to the Plaintiffs; and

(vii) Whether Class members suffered economic and noneconomic harm as a result of Defendant USFA's illegal conducts and omissions.

58. The named Plaintiffs' claims are typical of the claims of the Class in that the Defendant's conduct toward the putative class is the same: Defendant USFA's conduct has caused Plaintiffs and their families significant emotional distress, financial loss, and a loss of trust in Defendant USFA's integrity:

(i) Defendant USFA's policy allowing transgender-identifying biological males to compete in women's categories violates Title IX, which prohibits sex discrimination in any federally funded educational program, including athletic programs;

(ii) Defendant USFA falsely advertised its fencing events as sex-segregated, while knowingly allowing biological males to compete against female minors;

(iii) Defendant USFA further promoted alcohol to minors by displaying alcohol branding at events where almost all athletes were under 18;

(iv) Defendant USFA also violated its nonprofit obligations under IRC § 501(c)(3) by engaging in activities - including sex discrimination and alcohol promotion to minors - that deviate from its stated educational mission and that violates federal law.

59. Plaintiffs are adequate representatives of the Class, with no conflicts of interest, and have retained experienced litigation counsel. The two lead attorneys (Mr. James Bacon and Mr. Charles Wang) have over 70 years combined litigation experience, including complex litigation matters. They are committed to prosecuting this action vigorously and will fairly and adequately protect the interests of all Class members.

60. The class mechanism is superior to other available means for the fair and efficient adjudication of Class members' claims. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues. Individualized litigation also presents potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication of the common questions of law and fact, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for

consistent adjudication of the liability issues.

## CLASS ACTION CAUSES OF ACTION

### FIRST CLAIM OF RELIEF
### VIOLATION OF TITLE IX (Against Defendant USFA)

### 20 U.S.C. § 1681, et. seq.

61. All previous paragraphs are incorporated herein.

62. Defendant USA Fencing Association ("USFA") is the National Governing Body ("NGB") for the Olympic and Paralympic Sport of fencing in the United States. It is the only recognized vocational training institution providing official fencing referee and coach training programs and certifications nationwide.

63. As a direct and proximate result of Defendant USFA's receipt of federal funds and its sex-discriminatory policies described above, Plaintiffs' minor children were denied equal access to athletic opportunities, suffered measurable economic damages, and are entitled to injunctive and monetary relief under 20 U.S.C. § 1681.

64. Pursuant to Title IX of the Education Amendments of 1972 (Title IX), codified at 20 U.S.C. § 1681(a), no person shall, based on sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance, including athletic activities. See 20 U.S.C. § 1681(a).

65. Defendant USFA is subject to Title IX because it is an educational institution that has been receiving federal funding both directly and indirectly. USFA qualifies as an "educational institution" under 20 U.S.C. § 1681(c) because it operates structured, national vocational training and certification programs for fencing coaches, referees, and athletes. These programs are fee-based, credentialed, and designed to advance participants in a professional capacity within the

sport. Defendant USFA in its federal loan application listed itself as a nonprofit organization in the educational industry. Defendant USFA claimed itself as an educational institution under Internal Revenue Code 501(C)(3) to benefit from federal tax exemption as a nonprofit organization.

66. Defendant USFA has received substantial federal financial assistance both directly and through USOPC. It applied and obtained two separate forgivable loans from Paycheck Protection Program (PPP) in the amount of $190,417 on April 11, 2020, and $264,667 on March 3, 2021, respectively. Both loans were entirely forgiven, evidencing full satisfaction of federal program requirements and confirming Defendant USFA's receipt of direct taxpayer funding.

67. Defendant USFA has received indirect federal support through the United States Olympic & Paralympic Committee (USOPC), which itself receives annual federal appropriations to fund Olympic and Paralympic programs, including funding from Department of Defense and Department of Veteran Affairs for the Paralympic Military Program (PMP). USOPC received $2.4 million in FY 2024 and $2.5 million in FY 2025 under the federally funded Support for International Sporting Competitions (SISC) program.

68. Defendant USFA's financial disclosures confirm that it received $784,869 in grants from USOPC in 2023 and $1,239,102 in 2024. The USOPC's own audited statements further verify that Defendant USFA received $1,190,129 in 2023 in the form of athlete grants, athlete services, and NGB support. Because there is no indication that federal and non-federal funds are segregated at any stage, the entire fund pool becomes commingled and indivisible, and the financial support Defendant USFA receives is presumptively federal in nature.

69. Despite being clearly subject to Title IX, Defendant USFA has adopted and maintained a "Transgender and Non-Binary Athlete Eligibility Policy" that permits school age athletes to freely select their gender identity for purposes of competition, without regard to biological sex, medical

history, legal documentation, or any objective verification. For school aged athlete under 16 years old, this policy is entirely self-determined and completely unregulated.

70. Subsection A of Section 14.4 of the Defendant USFA Athlete Handbook, in force from 2022, explicitly allows athletes—including minors in youth divisions such as Y10, Y12, Y14, and Cadet (Y16) - to compete in categories that align with their self-declared gender identity. There is no requirement for a diagnosis, treatment, or medical transition. This provision is repeated verbatim across multiple annual editions of the Handbook, indicating deliberate and sustained enforcement.

71. As a result, biologically male athletes are permitted to compete in female-designated events, including youth and cadet categories involving children as young as 10 years old. This creates inherent physical disparities, increases safety risks, and deprives female athletes of fair competition and equal opportunity - all of which Title IX was enacted to prevent.

72. Title IX mandates that no person, based on sex, shall be excluded from participation in, denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal funds. During the years in question, and continuing through August 1, 2025, Defendant USFA has enforced and maintained a policy permitting biological males - i.e., transgender-identified athletes who were born male - to participate in competitions designated for females.

73. While Title IX prohibits any discrimination based on sex in any federally funded institution, the federal statute leaves it to the state law to define sex. As all athletes in the March NAC and November NAC were of the same age as students in any Texas K12 school and those tournaments are of the nature and scope closely resemble Texas interscholastic athletic competitions, the definition of Texas Education Code (TX Educ Code) is the most pertinent state law in the determination of sex for the tournaments at issue and for the purpose of Title IX.

74. TX Educ. Code §33.0834 mandates that athletes participate in sports based on their "biological

sex" as stated on their official birth certificate or another government record if the birth certificate is unavailable. The law was precisely intended to ensure that athletes compete in sports based on their biological sex, as understood at or near birth and properly recorded on their birth certificate. Texas law does not permit athletes to freely change their sex by self-claimed gender identity.

75. When Defendant USFA comes to Texas to conduct business, benefiting from the protection of Texas law and generating great revenues from the State of Texas, it is required to observe and abide by Texas law, irrespective of Defendant USFA's own policy and individual Defendants' personal ideological belief.

76. By placing its Transgender and Non-Binary Athlete Eligibility Policy above Texas statute and binding case law, Defendant USFA violated both Title IX and TX Educ Code. All individual Defendants are also liable for willfully authorizing USFA to commit such violations and recklessly disregard both Federal and Texas statutory mandates. By allowing gender identity to override biological sex in determining athletic participation, Defendant USFA has instituted a discriminatory system that deprives women of the right to compete in a competition of their own sex category and results in the exclusion and unequal treatment of biologically female athletes, in direct violation of federal and Texas state law.

77. Defendant USFA has knowingly applied this policy at national-level events such as the November NAC and March NAC held in Fort Worth, Texas, a jurisdiction which recognizes only binary sex classification on birth certificates. By doing so, Defendant USFA has amplified the discriminatory impact on biologically female athletes and shown open defiance of both federal and state mandates.

78. As a direct or proximate result of Defendant USFA's policy and conduct, biological female athletes have been deprived of equal access to competitive opportunities, recognition, and advancement. Defendant USFA's policy discriminates against women, lacks any important governmental

interest, and is not substantially related to a legitimate objective. It violates both Title IX and the laws of the State of Texas, causing ongoing harm to minor female athletes and their families.

## SECOND CLAIM OF RELIEF
## FALSE ADVERTISEMENT/VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT
## (Against Defendant USFA)

**Texas Bus. & Com. Code § 17.41, et seq.**

79. All previous paragraphs are incorporated herein.

80. Defendant USFA's false advertisement also violated Texas Deceptive Trade Practices–Consumer Protection Act (DTPA, or Texas Bus. & Com. Code § 17.41, et seq.)

81. Under Tex. Bus. & Com. Code § 17.45(4), Plaintiffs and all similarly situated individuals qualify as "consumers" because they sought and acquired services offered by Defendant USFA, including tournament registration, competition participation, and related travel and event services, by making purchase from and payment to Defendant USFA.

82. Defendant USFA's false advertisement falls squarely within the laundry-list of violations under Tex. Bus. & Com. Code § 17.46(b) et seq., by misrepresenting the characteristics, uses, or benefits of goods/services provided.

83. Defendant USFA advertised, promoted, and hosted the 2023 March NAC and November NAC in Fort Worth, Texas, representing that the events included sex-segregated "Women's" divisions for youth athletes.

84. Pursuant to Tex. Bus. & Com. Code § 17.45(6)**,** Defendant USFA engaged in trade and commerce by organizing and promoting national-level fencing tournaments, and offering these services to the public, including Texas residents and interstate participants.

85. Pursuant to Tex. Bus. & Com. Code § 17.46 (b)(5), Defendant misrepresented the characteristics

of service offered by advertising the March and November NACs as consisting of sex-separated "Men's" and "Women's" divisions, publishing this information on its official website, registration portals, schedules, promotional materials, and direct email marketing.

86. Defendant USFA's advertisements and public communications included detailed breakdowns of events by gender, age category (e.g., Youth 10, Youth 12, Cadet, Junior), and weapon (foil, épée, saber), reinforcing the impression that female competitors would participate only in events restricted to other biological females.

87. This presentation conveyed that the "Women's" divisions were restricted by biological sex - an essential characteristic for parents and young athletes to select which events to enter and invest in – as women means biological women evidenced by birth certificate in Texas.

88. Defendant USFA had adopted and was enforcing a policy allowing biological males who identify as female to participate in "Women's" divisions, including youth and cadet-level events, without any restriction or proof medical treatment.

89. Defendant USFA knew or should have known that such a blanket permission would certainly attract self-identified transgender to join women' events, however, Defendant never disclosed this eligibility policy in any promotional or registration material and failed to disclose or clarify in its advertisement that "Women's" divisions were not restricted to biological females. Thus, Defendant materially misrepresented a core characteristic of the service offered.

90. Pursuant to Tex. Bus. & Com. Code 17.46 (b)(7), Defendant USFA misrepresented the standard or quality by marketing a false impression that the NAC events would conform to laws of the hosting place and generally understood practice - women's events would be biologically female-only competitions. Defendant USFA intentionally omitted any mentioning in its marketing materials of its deviation from the hosting state law and generally understood and accepted practice.

91. The fact that athletes in the “Women’s” divisions were misrepresented, and not informed due to Defendant USFA’s intentional omission of material facts directly impacted the Plaintiffs’ willingness to participate.

92. Pursuant to Tex. Bus. & Com. Code § 17.46(b)(9), Defendant promoted “Women’s” events in public-facing materials, intending to attract registration and commercial engagement from athletes seeking biologically female-only competition.

93. At the time of advertising, Defendant did not intend to restrict participation in the “Women’s” division to biological females. It instead applied a different eligibility policy that allowed any sex to participate in its marketed “women’s events”, contrary to its public representation.

94. On information and belief, there were transgender biological males who participated in women’s events. Allowing biological men to participate in the woman’s game was not disclosed and was inconsistent with the stated nature of the competition. Because the Plaintiffs do not have access to Defendant USFA’s database of registered transgender fencers, the actual number of biological men in women’s events can only be determined through discovery.

95. Therefore, Defendant USFA’s advertising was false and made with intent to sell services under materially different terms than those represented, in violation of Tex. Bus. & Com. Code § 17.46(b)(9).

96. Pursuant to Tex. Bus. & Com. Code § 17.46(b)(24), Defendant USFA was aware, at the time of advertising and registration, that its policy allowed transgender-identifying biological males to register and compete in the “Women’s” division.

97. Defendant USFA intentionally failed to disclose this material fact, which would have affected a reasonable consumer’s decision to participate or send their minor children to compete in the advertised “women events”.

98. Plaintiffs and their families were induced to register for and attend the events based on this omission. Had Defendant disclosed its eligibility policy, Plaintiffs would not have incurred the costs of participation.

99. The omission of this policy constituted a material concealment intended to induce participation and payment, in violation of Tex. Bus. & Com. Code § 17.46(b)(24).

100. Defendant's acts and omissions were a producing cause of economic damages to Plaintiffs by paying registration fees, booking travel and lodging, and purchasing equipment and services based on materially false and deceptive representations.

101. As a direct and proximate result of Defendant's false advertising, Plaintiffs have suffered damages and are entitled to relief under Tex. Bus. & Com. Code § 17.50(b)(1), including but not limited to monetary damages, injunctive relief, attorneys' fees, and other remedies as the Court deems appropriate.

**THIRD CLAIM OF RELIEF**
**BREACH OF CONTRACT (Against Defendant USFA)**

102. All previous paragraphs are incorporated herein.

103. USFA's Bylaws and its status as a single purpose nonprofit organization dedicated to the promotion of fencing sport are the most important consideration for the Plaintiffs and their minor children to join the organization. To observe the Bylaws and maintain its nonprofit status under Internal Revenue Code Section 501(c)(3) are part of Defendant USFA's important contractual obligations.

104. During both March and November NACs, Defendant USFA promoted a alcohol distributor called "Naked Wine" by target marketing of alcohol to minors and by serving alcohol to referees under 21 years old. Each individual Defendants supported or otherwise failed to supervise and correct Defendant USFA's illegal action.

105. Defendants' conduct implicate serious violations of both federal and state law, including but not limited to, Federal Alcohol Administration Act (FAA Act) and implementing regulations of the Alcohol and Tobacco Tax and Trade Bureau's (TTB), which prohibit alcohol advertising targeted toward underage audiences or placed in youth-dominated venues.

106. Texas Alcoholic Beverage Code §§ 106.03, 106.06, and 106.09 and Texas Administrative Code § 45.103 also prohibit the sale, promotion, or advertising of alcohol in a manner that reaches or encourages minors, particularly at child-centered events.

107. Defendant USFA and each and every individual Defendants have demonstrated their recklessness and gross negligence in its violation of multiple federal and state laws by marketing and serving alcohol to minors, the result of which would render serious liability to the organization as to gravely impair its ability to promote the fencing sport, the very reason Plaintiffs joined as USFA members.

108. Defendant USFA is a nonprofit organization under the Internal Revenue Code §501(c)(3), 26 U.S.C. § 501(c)(3), with its registered purpose of promoting competitive fencing and providing athletic opportunities for youth, including female and male amateur athletes.

109. Defendant USFA must be organized and operated exclusively for the stated exempt purposes such as charitable, educational, or amateur athletic activities. It must not operate for the benefit of private interests, advocating political interest, or engage in substantial non-exempt activity, nor may it use its status to facilitate the commission of unlawful acts.

110. Defendant USFA has materially deviated from its stated exempt purpose,

a. By advancing ideologically driven policies that permit biological males to participate in competitions explicitly advertised and designated as "Women's" events;

b. By engaging in gender-discriminatory practices under the guise of inclusion, effectively

undermining the integrity of women fencing and diminishing competitive opportunities for biologically female athletes;

c. By partnering with and promoting Naked Wine, a commercial alcohol distributor, through membership benefits and public sponsorships of events primarily attended by minors, without age screening, disclaimers, or restrictions.

111. These actions are inconsistent with Defendant's stated mission and represent a gross departure from its exempt purposes. The promotion of alcohol to minors in youth athletic settings and the misrepresentation of event characteristics for financial gain are not charitable or educational in nature and are prohibited under applicable federal tax regulations.

112. Pursuant to IRC § 4958, Defendant's engagement in unlawful conduct or use of its tax-exempt platform to violate federal laws, including Title IX and the Federal Alcohol Administration Act, risk sanctions and penalties, including revocation of tax-exempt status.

113. Defendant USFA's promotion of ideologically driven and commercially motivated practices at the expense of its fencing mission, its misleading event advertisements, and its youth-targeted alcohol marketing violate the conditions of its federal nonprofit status.

114. Plaintiffs and their minor children joined USFA in consideration of USFA being a national fencing association that fulfills its stated purpose of promoting fencing sport, that complies with all federal and state laws, and that maintains its 501(c)(3) status. Defendants breached its contract with Plaintiffs by engaging in the above mentioned federal and state law violations.

115. As a direct and proximate result of Defendant USFA's breach of contract with its members by willful misrepresentations, fraudulent advertisement, negligence, and mismanagement, Plaintiffs have suffered both economic and non-economic losses.

## FOURTH CLAIM OF RELIEF

**CONSPIRACY**
**(Against Defendants USFA, Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, and Kat Holmes)**

116. All previous paragraphs are incorporated herein.

117. Individual Defendants Alperstein, Arias, Lehfeldt, Andrews, Holmes, and Deluca conspired to place their personal ideological interests over USA Fencing's interests and through careful craftsmanship forged a scheme that, on the one hand, they established Defendant USFA's nonbinary and transgender policy allowing biological men into women's events in the guise of inclusivity, and, on the other hand, they continue to label competitions hosted by Defendant USFA as being segregated by men's and women's events to deceive unsuspecting athletes for the purpose of maximizing profit (the "Scheme"), all at the expenses of safety, fairness, and equality of women fencers.

118. At all times, material hereto, the Defendants' agreement to enter into the Scheme and implement the Scheme, which actions are detailed above, were ultra vires and in violation of federal and state law and the bylaws of USFA. By way of example, the actions of the Defendants in engaging in and agreeing to the following were all ultra vires: 1) discriminating against women and girls assigned female at birth by forcing them to compete against competitors assigned male at birth; 2) falsely advertising that women's events while omitting the material fact that they were permitting competitor's assigned male at birth to participate in women's events; and 3) violating Executive Order 14201 by organizing competitions in which competitors assigned male at birth compete against competitors assigned female at birth while receiving federal funding.

119. Individual Defendants conspired to rigorously enforce the nonbinary and transgender policy that violate Title IX. At the same time, they authorized and approved Defendant USFA to falsely

advertise its January NAC as being sex segregated into women's and men's events while at all times Defendants intended to and actually did include biological men in women's events.

120. Individual Defendants conspired to conceal the fact that biological men were allowed to participate to women's events from Defendant USFA's advertisement to attract women athletes to those events, in violation of the Texas DTPA.

121. As a result of the Defendants' conspiracy, Plaintiffs and similarly situated individuals suffered both economic and noneconomic damage.

122. As members of a conspiracy, each individual Defendant is the agent of the other and they are each bound by the actions of the other individual Defendants in furtherance of the Scheme.

**FIFTH CLAIM OF RELIEF**
**NEGLIGENT MISREPRESENTATION / NEGLIGENCE PER SE**
**(Against Defendants USFA, Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, and Kat Holmes)**

123. All previous paragraphs are incorporated herein.

124. Defendant USFA owed Plaintiffs and their minor children a duty of reasonable care to communicate material facts accurately and to comply with state and federal statutes designed to protect minors, including but not limited to Tex. Alco. Bev. Code §§ 106.05–.06 (prohibiting possession of alcohol by minors and furnishing alcohol to minors).

125. Defendant USFA and the Individual Defendants negligently supplied false information to Plaintiffs regarding the nature and safety of the November 2023 North American Cup ("November NAC") by advertising the November NAC as sex-segregated "Women's" events while intending to and actually permitting biological males to compete in those events.

126. Defendant USFA and the Individual Defendants negligently supplied false information to Plaintiffs regarding the nature and safety of the November NAC by publicly representing that USFA's November NAC was conducted in compliance with applicable federal and state law and

safe for minors, when in fact USFA promoted or allowed alcohol promotion at a venue hosting exclusively under-21 athletes.

127. Defendant USFA and the Individual Defendants negligently supplied false information to Plaintiffs regarding the nature and safety of the November NAC by representing that Plaintiffs' minor children would participate in events designed for their age and sex category under USFA's published eligibility rules, when in fact USFA implemented a "Transgender and Non-Binary Athlete Eligibility Policy" overriding biological sex and materially changing the competitive environment.

128. These statements and omissions were communicated via USFA's official website, registration portals, tournament schedules, promotional materials, and direct email marketing on or about May 2023 as aforesaid.

129. Plaintiffs and their minor children reasonably relied upon these representations in registering and paying for the November NAC. In reliance on these representations, Plaintiffs expended funds in entry fees, travel costs, lodging, equipment, and other expenses.

130. Defendants failed to exercise reasonable care in ascertaining the accuracy of the information conveyed and in the manner in which it was communicated to Plaintiffs, constituting negligent misrepresentation under Texas common law.

131. Separately, Defendants' promotion and/or allowance of alcohol at the November NAC, composed primarily of minors, violates Tex. Alco. Bev. Code §§ 106.05–.06 and related public-safety statutes, which were designed to prevent precisely the harms suffered here. By violating these statutes, Defendants are negligent per se under Texas law.

132. As a direct and proximate result of Defendants' negligent misrepresentations and statutory violations relating to the November NAC, Plaintiffs and their minor children suffered economic

damages including but not limited to: (i) entry fees paid to Defendant USFA for the November NAC; (ii) travel, lodging, equipment, and other participation costs; (iii) lost competitive opportunities, rankings, and awards due to the altered composition of "Women's" events; and (iv) emotional distress and mental anguish resulting from Defendants' misrepresentations and statutory violations.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant USFA as follows:

a. Award Plaintiffs and the proposed class members actual damages for all tournament fees paid to Defendant USFA and all direct damages resulting from travel, lodging, lost income, and other participation costs incurred in Plaintiffs' participation in 2023 March and November NACs, as well as all actual damages arising from Defendants' negligent misrepresentation and negligence per se related to the November 2023 NAC, including but not limited to entry fees, travel, lodging, equipment costs, and lost competitive opportunities.

b. Award Plaintiffs and class members who participated in 2023 March NAC exemplary damages in an amount equal to the greater of twice the aggregated actual damages sustained by the class or $200,000;

c. Award Plaintiffs and class members who participated in 2023 March NAC a $750,000 non-economic damage for Defendant USFA's violation of Title IX in 2023 March NAC;

d. Award Plaintiffs and class members who participated in 2023 November NAC exemplary

damages in an amount equal to the greater of twice the aggregated actual damages sustained by the class or $200,000;

e. Award Plaintiffs and class members who participated in 2023 November NAC a $750,000 non-economic damage for Defendant USFA's violation of Title IX in 2023 November NAC and for negligent misrepresentation and negligence per se associated with the November NAC as alleged in Count V;

f. Award Plaintiffs and class members who participated in 2023 March NAC exemplary damages in an amount of $200,000 for Defendant USFA's false advertisement of March NAC;

g. Award Plaintiffs and class members who participated in 2023 March NAC a $750,000 non-economic damages for Defendant USFA's false advertisement of March NAC;

h. Award Plaintiffs and class members who participated in 2023 November NAC exemplary damages in an amount of $200,000 for Defendant USFA's false advertisement of November NAC and for negligent misrepresentation and negligence per se associated with the November NAC;

i. Award Plaintiffs and class members who participated in 2023 November NAC a $750,000 non-economic damages for Defendant USFA's false advertisement of November NAC and negligent misrepresentation/negligence per se related to November NAC ;

j. Award $200,000 in exemplary damages, and $750,000 in non-economic damages per count, to deter Defendant USFA's future violations and punish Defendants' egregious misconduct including but not limited to negligent misrepresentation and negligence per se as alleged in Count V.

k. Order the immediate dissolution of Defendant USFA's current Board of Directors for its reckless disregard and gross negligence of applicable law, continuous failure in corporate governance and

persistent noncompliance with nonprofit standards.

l. Order that Defendant USFA be enjoined from allowing any persons who were not deemed to be female at birth to participate in any women events.

m. Order Defendant USFA to cease all political and ideological advocacy and unrelated business activities not authorized under the Internal Revenue Code, and to bring the organization into full compliance with all federal and state laws within 90 days, under a court-supervised transitional management team consisting of three member-elected directors, two athlete representatives, and two member representatives.

n. Order a comprehensive financial and operational audit of Defendant USFA, commencing from the fiscal year beginning January 1, 2023 to present.

o. Award Plaintiffs reasonable attorneys' fees, costs, and expenses under applicable statutes, including but not limited to the Texas DTPA (Tex. Bus. & Com. Code § 17.50(d)) and as permitted under Texas law for negligent misrepresentation and negligence per se claims where applicable.

Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against each and every individual Defendant as follows:

p. Award $200,000 in exemplary damages, and $750,000 in non-economic damages to be paid by the individual Defendants, jointly and severely, for their willfulness, recklessness, gross negligence, fraud and mismanagement in the above violations of the law including negligent misrepresentation and negligence per se alleged in Count V.

q. Enter an order banning Defendants Donald Alperstein, Phil Andrews, Damien Lehfeldt, David Arias, Kat Holmes, Lauryn Deluca from participating in any USFA election or assuming any official or management position within USFA for a period of five (5) years from the date of the

order;

r. Award such other and further legal or equitable relief as the Court may deem just, proper, and necessary in the interests of justice.

Dated: September 25, 2025

Respectfully submitted,

*/s/ Timothy T. Wang*
Timothy T. Wang
Texas Bar No.: 24067927
twang@nilawfirm.com
**Ni, Wang & Massand, PLLC**
8140 Walnut Hill Ln
Suite 615
Dallas, TX 75231
(972) 331-4600

Charles Xiaolin Wang (*pro hac vice granted*)
DC Bar #: 470265
cwang@mbhylaw.com
**Mahdavi, Bacon, Halfhill & Young, PLLC**
11350 Random Hills Road
Suite 700
Fairfax, Virginia 22030
(703) 420-7620

James T. Bacon (*pro hac vice granted*)
VA Bar #: 22146
jbacon@mbhylaw.com
**Mahdavi, Bacon, Halfhill & Young, PLLC**
11350 Random Hills Road
Suite 700
Fairfax, Virginia 22030
(703) 420-7620

*Counsel for Plaintiffs*

# **Verification**

I hereby certify under penalty of perjury that the contents of this verified complaint, which is brought on behalf of a class of similarly situated persons, are true and correct to the best of my knowledge, information, and belief.

Ya
____________________________
Julia Ya Zhao
August 25, 2025

## Verification

I hereby certify under penalty of perjury that the contents of this verified complaint, which is brought on behalf of a class of similarly situated persons, are true and correct to the best of my knowledge, information, and belief.

Frederick Hausheer (Aug 25, 2025 13:05:47 CDT)

Frederick Hausheer
August 25, 2025

**Verification**

I hereby certify under penalty of perjury that the contents of this verified complaint, which is brought on behalf of a class of similarly situated persons, are true and correct to the best of my knowledge, information, and belief.

Nana Pan (Aug 24, 2025 13:08:02 EDT)

Nana Pan
August 25, 2025

## Verification

I hereby certify under penalty of perjury that the contents of this verified complaint, which is brought on behalf of a class of similarly situated persons, are true and correct to the best of my knowledge, information, and belief.

Hongran Stone (Aug 24, 2025 10:03:38 PDT)

Hongran Stone
August 25, 2025