IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>*Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION<br>a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually.<br><br>*Defendants*. | Civil Action No. 4:25-cv-00931-O |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND MEMORANDUM IN SUPPORT**

Subject to Defendants' motions to dismiss for lack of personal jurisdiction, motions to transfer for improper venue, motion to transfer on the basis of a forum selection clause, and motion to dismiss for failure to state a claim, Defendants file this motion to compel arbitration of Plaintiffs' suit against them, asking the Court to compel Plaintiffs to enter into arbitration and to stay the lawsuit pending resolution of the arbitration proceeding.

**I. INTRODUCTION**

1.       Plaintiffs are Julia Ya Zhao, Frederick Hausheer, and Hongran Stone; Defendants

1

are USA Fencing Association ("USFA"),[1] Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, and Kat Holmes.

2.  Plaintiffs sued Defendants for alleged violations of Title IX (20 U.S.C. § 1681, *et seq.*), violations of the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code § 17.41, *et seq.*), Breach of Contract, Conspiracy, and Negligent Misrepresentation / Negligence Per Se in the Northern District of Texas, Dallas Division. After a preliminary review of the first amended complaint, the Dallas Division transferred the case to the Fort Worth Division.[2]

3.  The parties entered a contract that contains a valid and enforceable arbitration provision that covers all of Plaintiffs' claims. A copy of the contractual waivers containing the arbitration provision are attached as Exhibits A-1 (March 2023 NAC waiver) and A-2 (November 2023 NAC waiver). Each of the named and proposed Plaintiffs who participated in the March 2023 and November 2023 NACs in Fort Worth, Texas had to read and sign the respective contractual waivers prior to their participation in the respective events that they allege are at issue in this litigation.

4.  Because the arbitration provision is valid and enforceable, Defendants ask the Court to compel Plaintiffs to arbitrate their claims against Defendants and/or abate this matter as the Court may deem appropriate.

---

[1] Plaintiffs have misidentified Defendant United States Fencing Association. United States Fencing Association is the official governing body for the sport of fencing in the United States. *See* Amateur Sports Act of 1978, Pub. L. No. 95-606, sec. 2, § 201, 92 Stat. 3045, 3050 (1978); USA Fencing, *United States Fencing Association Bylaws* § 2.1 (2024), https://www.usafencing.org/by-laws (choose "United States Fencing Association Bylaws – Effective September 15, 2024") [https://perma.cc/VEP5-QYLF].

[2] Notably, on October 29, 2025, Plaintiffs' counsel filed nearly the exact same verified class action complaint against the same Defendants (minus Arias and including three new individuals) on the same facts as before this Court in United States District Court for the Western District of Missouri.

## II. ARGUMENT

5. When a party seeking to compel arbitration proves that the parties contractually agreed to arbitrate and that the claim at issue is arbitrable, a court should compel arbitration. *Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 508 (1st Cir. 2020); *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009); *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

6. There is a contractual agreement to arbitrate when the parties have entered into a valid arbitration agreement, and the dispute falls within the scope of the agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549 & 950646*, 584 F.3d 513, 523 (3d Cir. 2009); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

7. This Court should compel arbitration for the following reasons:

   a. The parties entered valid, written contractual agreements, containing an arbitration clause, to participate in the March 2023 and November 2023 NACs, about which Plaintiffs complain. *Dealer Comput. Servs.*, 588 F.3d at 886; *Century Indem. Co.*, 584 F.3d at 523; *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 730–31 (8th Cir. 2009). A copy of the arbitration provision to which the Plaintiffs agreed in their contractual waivers is attached as Exhibits A-1 and A-2. Prior to being permitted to register for and participate in either the March 2023 or November 2023 NACs, the Plaintiffs had to read and sign the waivers attached as Exhibits A-1 and A-2. Exhibit A, ¶ 3. The Plaintiffs were required to acknowledge that they had received the waiver and agree to the terms of the waiver prior to USFA accepting their registration for the March 2023 or

November 2023 NACs. *Id* at ¶ 4. Each acknowledgement and agreement is recorded automatically into the USFA waiver database as prerequisite to registration. *Id.* Thus, it was impossible for the Plaintiffs to register for and participate in either the March 2023 or November 2023 NACs without affirmative assent to the applicable waiver. *Id.; see, e.g., In re Online Travel Co.*, 953 F. Supp. 2d 713, 718-19 (N.D. Tex. 2013); *Colombia v. Experian Info. Sols.*, No. 24-CV-02522-NYW-SBP, 2025 WL 2430015, at *8-9 (D. Colo. Aug. 22, 2025) (discussing clickwrap agreements under Colorado law and collecting cases). All participating athletes (or a parent/guardian on their behalf) did in fact sign the waivers before competing in the March 2023 or November 2023 NACs. Exhibit A, ¶ 5. Therefore, the waiver was conspicuously presented to the Plaintiffs, the Plaintiffs could manifest an unambiguous assent to the terms of the waiver if they chose, and the waiver is a valid and enforceable clickwrap agreement. *Experian Info*, 2025 WL 2430015, at *9-10; *In re Online Travel Co.*, 953 F. Supp. 2d at 719 (citing *RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007)). It is the Plaintiffs' "responsibility to read the electronically-presented contract, and [they] cannot complain if [they] did not do so." *In re Online Travel Co.*, 953 F. Supp. 2d at 719; *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013) ("[i]f one chooses to 'sign' a contract and to accept its benefits without reading and understanding its terms, he generally must accept the consequences of his decision.").

b. The arbitration clause requires the dispute involved in the suit to be submitted to arbitration, and the provision should be enforced. *Century Indem. Co.*, 584 F.3d

at 555–56. The clause applies to:

> "[a]ny controversy or claim arising from or relating to [the Plaintiffs'] membership or participation, or [the Plaintiffs'] minor child's membership or participation in USA Fencing, including but not limited to any matter arising from or relating to (i) qualification or selection for, or competition in, any fencing event, whether staged under the auspices of USA Fencing, the FIE, the USOC, the IOC or some other fencing administrative body, (ii) qualification or selection for, or activities as, a referee, coach or other official at any such fencing event; or (iii) compliance with any rule, regulation, policy, practice, bylaw, or statutory or common law, of USA Fencing, FIE, USOC or IOC, or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing or by any officer, director, employee, agent, attorney, referee, official, committee member or volunteer of the USA Fencing, shall to the fullest extent permitted by law be settled by arbitration, *provided however*, that prior to the commencement of any such arbitration, any and all available administrative procedures and remedies of USA Fencing, FIE, USOC, IOC or applicable sports, governmental or administrative body shall have been exhausted."

Exhibits A-1 and A-2 (emphasis in original). Plaintiffs' claims fall squarely within this provision, as they arise from and relate to (i) Plaintiffs' competition in the March and November 2023 NACs, which are fencing events staged under the auspices of USA Fencing; (ii) the activities of the referees or other officials at the March and November 2023 NACs; and (iii) compliance with Title IX, Tex. Educ. Code § 33.0834, the DTPA, USFA's bylaws, 26 U.S.C. § 501(c)(3), the Federal Alcohol Administration Act, regulations of the Alcohol and Tobacco Tax and Trad Bureau, various sections of the Texas Alcoholic Beverage Code, Texas Administrative Code § 45.103, and Executive Order 14201.[3]

    c.   The claims involved in the suit are arbitrable and not subject to any legal

---

[3] *See* Second Amended Verified Class Action Complaint, Class Action Causes of Action, at pp. 14-27. Illogically, Plaintiffs appear to complain about USFA's alleged violation in 2023 of an executive order that did not exist until 2025.

constraint that renders them nonarbitrable. *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008); *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). No statute or public policy renders Plaintiffs' claims nonarbitrable. The Federal Arbitration Act ("FAA") "manifests a 'liberal federal policy favoring arbitration.'" *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Consequently, in keeping with this liberal policy towards arbitration, the Court must "resolve 'any doubts concerning the scope of arbitrable issues … in favor of arbitration.'" *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "In addition, this liberal policy covers more than simply the substantive scope of the arbitration clause, and encompasses an expectation that [arbitration] procedures will be binding." *Id.* (quotation omitted). Digital signatures are widely accepted as evidence of mutual assent. *See, e.g., Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1258 (D. Colo. 2019) (finding evidence of signed agreement sufficient to meet initial burden of demonstrating enforceable arbitration agreement); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012) (explaining that courts routinely uphold digital agreements, provided the signatory had "reasonable notice, either actual or constructive, of the terms of the putative agreement and [the signatory] manifest[ed] assent to those terms"); *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 208 (Tex. 2021) (recognizing digital signatures as

valid). Furthermore, the Amateur Sports Act of 1978 ("ASA"), 36 U.S.C. § 220501, *et seq.*, provides that national governing bodies ("NGBs") such as USFA may:

> Facilitate, through orderly and effective administrative procedures, the resolution of conflicts or disputes that involve any of its member and any amateur athlete, coach, trainer, manager, administrator, official, national governing body, or amateur sports organization and that arise in connection with their eligibility for and participation in the Olympic Games, the Paralympic Games, the Pan-American Games, the Parapan American Games, world championship competition, the Pan-American world championship competition, or other protected competition as defined in the constitution and bylaws of the corporation.

36 U.S.C. § 220505(c)(5). Plaintiffs' claims are exactly the type that the ASA was designed to address through the rules and regulations set forth by the NGBs of each amateur sport, such as USFA. *See Pliuskaitis v. USA Swimming, Inc.*, 243 F.Supp.3d 1217, 112 (D. Utah 2017) aff'd sub nom. *Pliuskaitis v. USA Swimming*, 720 F.App'x 481 (10th Cir. 2018). The ASA specifically provides a detailed mechanism, which includes arbitration, so that grievances and disputes against NGBs can be resolved to fulfill this goal. *See* 36 U.S.C. § 220527, 220528, and 220529. The ASA "was enacted 'to correct the disorganization and the serious factional disputes that seemed to plague amateur sports in the United States.'" *San Francisco Arts & Athletics, Inc. v. U.S.O.C.*, 483 U.S. 522, 544 (1987).

8. The Court should grant a stay of the lawsuit pending resolution of the arbitration proceeding if (1) the claim involved in the suit is referable to arbitration and (2) the party seeking the stay is not in default in proceeding with arbitration. 9 U.S.C. § 3; *see Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). For the reasons stated above,

the claim is referable to arbitration. Further, Defendants are not barred from seeking arbitration because they have been diligent in proceeding with their request for arbitration.

### III. CONCLUSION

9. Because there is a valid and enforceable arbitration clause between the parties that covers all of Plaintiffs' claims, the Court should compel Plaintiffs to arbitrate their claims against Defendants and abate the proceedings pending before the Court.

### IV. PRAYER

For these reasons, Defendants request that this Court grant the motion to compel arbitration, stay the lawsuit pending resolution of the arbitration proceeding, and for such other and further relief to which they may be entitled in equity or law.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: /s/ Robert Lemus

Robert Lemus
Texas Bar No.: 24052225
rlemus@grsm.com
*Attorney-in-Charge*
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4869 - Telephone
(713) 961-3938 - Facsimile

**ATTORNEYS FOR DEFENDANTS UNITED STATES FENCING ASSOCIATION, DONALD ALPERSTEIN, PHIL ANDREWS, DAVID ARIAS, LAURYN DELUCA, KAT HOLMES, and DAMIEN LEHFELDT**

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 10, 2025, I conferred with opposing counsel concerning the relief sought by this motion, and they indicated that they are opposed.

*/s/ Robert Lemus*
Robert Lemus

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, a true and correct copy of the foregoing instrument has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

*/s/ Robert Lemus*
Robert Lemus

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>   *Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION<br>a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually.<br><br>   *Defendants*. | Civil Action No. 4:25-cv-00931-O |

## UNSWORN DECLARATION GLEN HOLLINGSWORTH

STATE OF COLORADO   §

COUNTY OF EL PASO   §

1. "My name is Glen Hollingsworth, my date of birth is August 1, 1992, and my address is 2232 Drakestone Drive, Colorado Springs, CO 80909. I am over 18 years of age, of sound mind, and capable of making this declaration. I declare under penalty of perjury the facts stated in this document are within my personal knowledge, true and correct.

2. At the time of the alleged harm in Plaintiffs' Second Amended Complaint, I was Director of Events of USA Fencing Association ("USFA") who is a co-defendant in the above-styled lawsuit. I am the custodian of records of USFA. The documents attached hereto are original or exact duplicates of the original records. Based on the regular practices of USFA, the records were: (a) made at or near the time of each act, event, or condition set forth in them; (b) made by, or from information transmitted by, persons with knowledge of the matters set forth; and (c) kept in the course of regularly conducted business activity. It was the regular practice of that business activity to make such records. As such, I am familiar with the facts in this matter.

3. Prior to being permitted to register for and participate in either the March 2023 or November 2023 NACs, all athletes, whether individually or through a parent or legal guardian on their behalf, would have been required to read and sign the waivers attached hereto as Exhibits 1 and 2.

4. Plaintiffs were required to acknowledge that they had received the waiver and agree to the terms of the waiver prior to USFA accepting their registration for the March 2023 or November 2023 NACs. Each acknowledgment and agreement is recorded automatically into the USFA waiver database as a prerequisite to registration. Thus, it was impossible for Plaintiffs to register for and participate in either the March 2023 or November 2023 NACs without affirmative assent to the applicable waiver.

5. All athletes (or a parent or guardian on their behalf) signed the waivers before competing in the March 2023 or November 2023 NACs. *See* Exhibit 3, USFA database extract.

6. I personally extracted the data located in Exhibit 3 from the USFA database, with which I am personally familiar. The data in the USFA database is recorded at the time each potential registrant acknowledges and agrees to the waiver. It is the regular practice of USFA to record and maintain such information. I personally verified the data in the extract by comparing it to the original data in the database to ensure the integrity of the entries."

Executed on the ___6th___ day of January 2026.

_____
Glen Hollingsworth

**All Participants MUST Read and Sign each of the following statements (<u>For athletes under the age of 18, a parent or guardian must sign</u>) Parents or guardians signing for a minor shall themselves also be bound by the following.**

**REFUNDS**: For refund of <u>event fee</u>(s), withdrawals must be reported, in writing, to the National Office by the posted date for each tournament. You can email your withdrawal request to: withdrawals@usafencing.org. Registration and administration fees are nonrefundable, and registrants withdrawing from an event will only receive a refund of fifty (50) percent of the Event Registration fees. Refunds are processed 4-6 weeks after the tournament.

**NO SHOW FINE POLICY:** Should a fencer fail to appear for any event, the fencer will be subject to a fine of $250 per event that the individual fails to appear for AND suspension of membership privileges, including participation in all USA Fencing sanctioned tournaments, until the applicable fine(s) is/are paid. If a fencer fails to complete payment of the fine by the conclusion of the current membership year, renewal privileges for membership will also be suspended until all applicable fines are paid in full. If a fencer wishes to withdraw, the request must be received in by email to <u>withdrawals@usafencing.org</u> prior to 5 p.m. local time the day prior to the event in order to avoid the fine.

**WAIVER OF LIABILITY:** Upon entering this tournament under the auspices of USA FENCING, I agree, on my own behalf and on behalf of any minor athlete for whom I am signing, to abide by the current rules, policies, procedures and codes of conduct of USA FENCING. I enter this tournament at my own risk and, to the maximum extent permitted by law, I release USA FENCING and its sponsors, referees, tournament organizers, employees, volunteers and contractors from any liability. The undersigned certifies that the birth date of the individual is as stated on the entry form and that the individual is a current competitive member of USA FENCING for the 2022-2023 fencing season. In addition, I understand that by entering this tournament under the auspices of USA FENCING, photography, filming, recording or any other form of media of this athlete can be used by USA FENCING.

**<u>DRUG TESTING</u>**: I understand that drug testing may be conducted for athletes who compete in this tournament and that detection of the use of banned drugs is cause for suspension for a period of 3 months, 1 year or 2 years, based on substance detected, and that I will lose any national points earned. By registering for this tournament, I am consenting to be subject to drug testing if selected, and to its penalties if declared positive for a banned substance. If selected, I am aware that failure to comply with the drug test is cause for the same penalties as for those who are positive for a banned substance. I KNOW THAT I MAY CALL THE USADA HOTLINE, 800-233-0393, FOR QUESTIONS ABOUT MEDICATIONS AND BANNED SUBSTANCES OR PRACTICES. I realize that there are **OVER-THE-COUNTER** medications that may contain banned substances and that it is my responsibility to insure that I do not inadvertently take any medication that contains a banned substance.

**<u>CONSENT FOR MEDICAL TREATMENT</u>**: This is to certify that on this date I give my consent to USA FENCING and its representatives to obtain medical care from any licensed physician, hospital or clinic for the above named athlete for any injury or illness that may arise during activities associated with USA FENCING North American Cup & Junior Olympic tournaments.

**<u>ARBITRATION</u>:** Any controversy or claim arising from or relating to my membership or participation, or my minor child's membership or participation, in USA Fencing, including but not limited to any matter arising from or relating to (i) qualification or selection for, or competition in, any fencing event, whether staged under the auspices of USA FENCING, the FIE, the USOC, the IOC or some other fencing administrative body, (ii) qualification or selection for, or activities as, a referee, coach or other official at any such fencing event; or (iii) compliance with any rule, regulation, policy, practice, bylaw, or statutory or common law, of USA Fencing, FIE, USOC or IOC, or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing or by any officer, director, employee, agent, attorney, referee, official, committee member or volunteer of the USA Fencing, shall to the fullest extent permitted by law be settled by arbitration, *provided however*, that prior to the commencement of any such arbitration, any and all available administrative procedures and remedies of USA Fencing, FIE, USOC, IOC or applicable sports, governmental or administrative body shall have been exhausted. Any arbitration shall be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration shall be governed by the laws of the State of Colorado and the United States, and it shall be conducted in Colorado Springs, Colorado. If the dispute is less than $50,000 there shall be no discovery other than the exchange of documents. If the dispute is over $49,999.99, discovery may also include no more than two (2) depositions (of not more than 7 hours each) by each side, unless the parties shall otherwise agree or the arbitrator(s) shall otherwise order for good cause shown. The arbitrator(s) will have no authority to award consequential, punitive or exemplary damages. Except as may be required by law or noted above, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder to a non-party without the prior written consent of all parties.

**All Participants MUST Read and Sign each of the following statements (<u>For athletes under the age of 18, a parent or guardian must sign</u>) Parents or guardians signing for a minor shall themselves also be bound by the following.**

**REFUNDS**: For refund of <u>event fee</u>(s), withdrawals must be reported, in writing, to the National Office by the posted date for each tournament. You can email your withdrawal request to: withdrawals@usafencing.org. Registration and administration fees are nonrefundable, and registrants withdrawing from an event will only receive a refund of fifty (50) percent of the Event Registration fees. Refunds are processed 4-6 weeks after the tournament.

**NO SHOW FINE POLICY:** Should a fencer fail to appear for any event, the fencer will be subject to a fine of $250 per event that the individual fails to appear for AND suspension of membership privileges, including participation in all USA Fencing sanctioned tournaments, until the applicable fine(s) is/are paid. If a fencer fails to complete payment of the fine by the conclusion of the current membership year, renewal privileges for membership will also be suspended until all applicable fines are paid in full. If a fencer wishes to withdraw, the request must be received in by email to <u>withdrawals@usafencing.org</u> prior to 5 p.m. local time the day prior to the event in order to avoid the fine.

**WAIVER OF LIABILITY:** Upon entering this tournament under the auspices of USA FENCING, I agree, on my own behalf and on behalf of any minor athlete for whom I am signing, to abide by the current rules, policies, procedures and codes of conduct of USA FENCING. I enter this tournament at my own risk and, to the maximum extent permitted by law, I release USA FENCING and its sponsors, referees, tournament organizers, employees, volunteers and contractors from any liability. The undersigned certifies that the birth date of the individual is as stated on the entry form and that the individual is a current competitive member of USA FENCING for the 2022-2023 fencing season. In addition, I understand that by entering this tournament under the auspices of USA FENCING, photography, filming, recording or any other form of media of this athlete can be used by USA FENCING.

**DRUG TESTING**: I understand that drug testing may be conducted for athletes who compete in this tournament and that detection of the use of banned drugs is cause for suspension for a period of 3 months, 1 year or 2 years, based on substance detected, and that I will lose any national points earned. By registering for this tournament, I am consenting to be subject to drug testing if selected, and to its penalties if declared positive for a banned substance. If selected, I am aware that failure to comply with the drug test is cause for the same penalties as for those who are positive for a banned substance. I KNOW THAT I MAY CALL THE USADA HOTLINE, 800-233-0393, FOR QUESTIONS ABOUT MEDICATIONS AND BANNED SUBSTANCES OR PRACTICES. I realize that there are **OVER-THE-COUNTER** medications that may contain banned substances and that it is my responsibility to insure that I do not inadvertently take any medication that contains a banned substance.

**CONSENT FOR MEDICAL TREATMENT**: This is to certify that on this date I give my consent to USA FENCING and its representatives to obtain medical care from any licensed physician or healthcare provider including athletic trainers, chiropractors, and physical therapists, for the above named athlete for any injury or illness that may arise during activities associated with USA FENCING sanctioned tournaments.

**PHOTO AND VIDEO RELEASE**: I understand that during my participation in USA Fencing's sanctioned events, activities, or programs, or those in which my minor child is participating, USA Fencing and its representatives may take photographs or videos capturing my likeness or that of my minor child. I hereby grant USA Fencing, its affiliates, partners, and any authorized third parties, unrestricted permission to use, reproduce, display, distribute, and publish the photographs or videos in which I or my minor child may appear, for any lawful commercial purpose, including but not limited to promotional or advertising content, without any expectation of compensation or notification. I also waive any right to inspect or approve the finished photographs or videos that may include my likeness or that of my minor child, and I release USA Fencing and its agents or officers from any claims, damages, or liability arising from the use of the images or videos, including any claims for defamation, invasion of privacy, or infringement of moral rights.

**ARBITRATION:** Any controversy or claim arising from or relating to my membership or participation, or my minor child's membership or participation, in USA Fencing, including but not limited to any matter arising from or relating to (i) qualification or selection for, or competition in, any fencing event, whether staged under the auspices of USA FENCING, the FIE, the USOC, the IOC or some other fencing administrative body, (ii) qualification or selection for, or activities as, a referee, coach or other official at any such fencing event; or (iii) compliance with any rule, regulation, policy, practice, bylaw, or statutory or common law, of USA Fencing, FIE, USOC or IOC, or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing or by any officer, director, employee, agent, attorney, referee, official, committee member or volunteer of the USA Fencing, shall to the fullest extent permitted by law be settled by arbitration, *provided however*, that prior to the commencement of any such arbitration, any and all available administrative procedures and remedies of USA Fencing, FIE, USOC, IOC or applicable sports, governmental or administrative

body shall have been exhausted. Any arbitration shall be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration shall be governed by the laws of the State of Colorado and the United States, and it shall be conducted in Colorado Springs, Colorado. If the dispute is less than $50,000 there shall be no discovery other than the exchange of documents. If the dispute is over $49,999.99, discovery may also include no more than two (2) depositions (of not more than 7 hours each) by each side, unless the parties shall otherwise agree or the arbitrator(s) shall otherwise order for good cause shown. The arbitrator(s) will have no authority to award consequential, punitive or exemplary damages. Except as may be required by law or noted above, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder to a non-party without the prior written consent of all parties.

| Name | Member ID | Other Events Fenced | Rating/Classification | Waiver Signed | March NAC Waiver Date | March NAC Waiver Time | November NAC Waiver Date | November NAC Waiver Time |
|---|---|---|---|---|---|---|---|---|
| JYZ | 100339040 | NA - Parent | NA - Parent | Yes - on behalf of KH | 1/5/2023 | 6:15 PM | 8/18/2023 | 7:08 AM |
| FH | | NA - Parent/Non-Member | NA - Parent/Non-Member | NA - Parent/Non-Member | NA - Parent/Non-Member | NA - Parent/Non-Member | NA - Parent/Non-Member | NA - Parent/Non-Member |
| NP | 100576292 | NA - Likely Parent | NA - Likely Parent | NA - Likely Parent | NA - Likely Parent | NA - Likely Parent | NA - Likely Parent | NA - Likely Parent |
| HS | 100272629 | NA - Parent | NA - Parent | Yes - on behalf of ES | NA | NA | 8/2/2023 | 1:31 PM |
| ███ | ███ | ███ | ███ | Yes - on behalf of CCS | 1/11/2023 | 3:20 PM | 8/1/2023 | 1:50 PM |
| KH | 100339041 | 2023 Summer Nationals, 2023 October NAC, 2024 March NAC, 2024 April NAC, 2024 Summer Nationals, 2024 October NAC, 2024 November NAC, 2024 December SJCC, 2025 Junior Olympics, 2025 March NAC, 2025 April NAC, 2025 Summer Nationals | B25 | Yes - by JYZ | 1/5/2023 | 6:15 PM | 8/18/2023 | 7:08 AM |
| ES | 100216975 | 2023 January NAC, 2023 Junior Olympics, 2023 April NAC, 2023 Summer Nationals, 2023 October NAC, 2024 January NAC, 2024 Junior Olympics | B22 | Yes - by HS | NA | NA | 8/2/2023 | 1:31 PM |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CS | 100250771 | 2023 January NAC, 2023 Junior Olympics, 2023 April NAC, 2023 Raleigh SJCC, 2023 Summer Nationals, 2023 October NAC, 2023 December SJCC, 2024 January NAC, 2024 Junior Olympics, 2024 March NAC, 2024 March SJCC, 2024 Summer Nationals, 2024 October NAC, 2024 November NAC, 2025 January NAC, 2025 Junior Olympics, 2025 March NAC, 2025 April NAC, 2025 Summer Nationals | D25 | Yes - by HHS | 1/11/2023 | 3:20 PM | 8/1/2023 | 1:50 PM |
| BS | 100272631 | 2023 January NAC, 2023 April NAC, 2023 Summer Nationals, 2024 January NAC, 2024 Summer Nationals, 2025 April NAC, 2025 Summer Nationals | U | Yes | NA | NA | NA | NA |