IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>   *Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION<br>a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually.<br><br>   *Defendants*. | Civil Action No. 4:25-cv-00931-O |

**DEFENDANTS' OMNIBUS BRIEF IN REPLY TO PLAINTIFFS' BRIEFS IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR IMPROPER VENUE AND TO TRANSFER**

  Defendants United States Fencing Association ("USFA"), Donald Alperstein ("Alperstein"), David Arias ("Arias"), Phil Andrews ("Andrews"), Damien Lehfeldt ("Lehfeldt"), Lauryn Deluca ("Deluca"), and Kat Holmes ("Holmes") (collectively, "Defendants") file this omnibus brief in reply to Plaintiffs' briefs in opposition [Dkt. 56, 57, 58, 59] to Defendants' motions to dismiss plaintiffs' suit against them for improper venue, as authorized by Federal Rule of Civil Procedure 12(b)(3), and to transfer venue.[1]

---

[1] Plaintiffs only filed responses to the motions to dismiss for proper venue filed by Andrews [Dkt. 33], Holmes [Dkt. 36], and Lehfeldt [Dkt. 37]. Plaintiffs did not file any response to the motions to dismiss for improper venue filed by USFA [Dkt. 31], Alperstein [Dkt. 32], Arias [Dkt. 34], and Deluca [Dkt. 35]. Because motions to dismiss or transfer require briefing under Local Rule 7.1(h), the responding party is required to file a brief in opposition. L.R. 7.1(d) ("A responding party is not required to a brief in opposition to a motion for which a brief is not required by

## I. INTRODUCTION

1. Plaintiffs' opposition mischaracterizes the parties' agreement and the governing law. The participant agreement includes a mandatory mechanism requiring that controversies arising from or relating to membership and participation (as well as policy and rule dissemination and safe competition environments) be resolved in Colorado Springs under Colorado law, which is precisely the type of parties' forum-selection commitment that *Atlantic Marine* instructs courts to enforce in all but the most exceptional cases. Plaintiffs' efforts to recast the clause as exclusively "arbitration" to avoid transfer, to limit its cope to exclude the asserted claims, and to invoke public-interest factors to defeat dismissal or transfer each fail. The clause is enforceable, encompasses the entirety of this dispute, and the public-interest factors militate in favor of the contractual choice of venue as well as arbitration. Dismissal of this case in the Northern District of Texas or, in the alternative, transfer to the District of Colorado is warranted.

## II. ARGUMENT

### A. THE PARTIES AGREE THAT COLORADO IS THE ONLY UNASSAILABLE PROPER VENUE.

2. Plaintiffs admit that "USFA is incorporated and domiciled in Colorado, making it a proper venue for claims against the organization." [Dkt. 56, para. 28; Dkt. 58, para. 30; Dkt. 59, para. 28]. Plaintiffs likewise admit that "[t]he policies allegedly at issue in this case were created in Colorado, making it a district at least a part of the events or omissions giving rise to the claim occurred." *Id.* Plaintiffs further admit that "[a]ll defendants" have been sued because of their "connections to USFA," and not based on any independent, several or personal liability.

---

subjection (h) of this rule."). Defendants aver that, by operation of this Local Rule, Plaintiffs' failure to respond as required should be deemed consent to the relief Defendants requested in those motions.

*Id.*

       3.     Plaintiffs cannot avoid the binding precedent of *Pearson v. Shriners Hosp. for Children, Inc.*, 133 F.4th 433 (5th Cir. 2025), which is directly on point with the issues before this Court. In *Pearson*, former employees of Shriners Hospital for Children ("Shriners") sued over their termination from the hospital for refusing to get a COVID-19 vaccination. *Pearson*, 133 F.4th 433, 439. The former employees sued the hospital, its agents, and the Executive Commissioner of Texas Health and Human services for violating their alleged right to refuse the vaccine. *Id.* Shriners is incorporated in Colorado and operates an international network of hospitals. *Id.* Two agents whom the former employees had sued and who signed the vaccine provider agreement were based outside of Texas. *Id.*, at 440. "In November 2021, Shriners adopted a companywide policy that required its employees to be vaccinated against COVID-19." *Id.* Three other agents whom the former employees had sued and who signed the policy were also based outside of Texas. *Id.* In response to the suit, Shriners and its agents argued that there was no personal jurisdiction over the agents, to which the district court agreed because the agents "were protected by the fiduciary shield doctrine." *Id.*, at 440-41. The Fifth Court of Appeals upheld the dismissal of the claims against the agents under the fiduciary shield doctrine. *Id.*, at 441.

       4.     In analyzing the claims against the agents, the Fifth Circuit found that, as to the signing of the vaccination provider agreement, the actions of the agents were relevant to certain claims alleged against Shriners, but that they related to Shriners vaccine administration across the United States, not targeted towards Texas. *Id.*, at 443. As to the agents who signed onto the nationwide policy, the Fifth Circuit found that the actions relate to the former employees' claims, "but there is no indication that the mandatory vaccination policy was signed in Texas or

3

otherwise focused on Texas." *Id.* The Fifth Circuit continued to reason that contrary to any Texas focus, "Shriners is an international entity with locations across the United States and Canada[, and] the policy appears to apply to all Shriners locations." *Id.* The Fifth Circuit concluded that the nationwide mandatory vaccination policy "was not 'expressly aimed at' Texas." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984) and *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) (holding that a defamatory online article "presumably directed at the entire world, or perhaps just concerned U.S. citizens," was "not directed specifically at Texas" for jurisdictional purposes.")). As a result, the Fifth Circuit held that the plaintiffs did "not allege any acts by any of the [a]gents to establish a *prima facie* case for personal jurisdiction" and that "the district court properly dismissed the claims against them." *Id.* (citing *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

5.   Similarly to *Pearson*, Plaintiffs have sued USFA and its agents over a nationwide policy implemented by USFA. The sole allegations against the Defendants arise from or derive from their involvement in the policy. A policy, notably, not targeted towards Texas, but nationally to apply to all USFA event locations across the United States. *See Pearson*, 133 F.4th at 443. Like the policy at issue in *Pearson*, the policy here was not signed in Texas nor otherwise focused on Texas. *See id.* Plaintiffs have admitted that the policy was "created in Colorado." [Dkt. 56, para. 28; Dkt. 58, para. 30; Dkt. 59, para. 28]. USFA's nationwide policy that Plaintiffs challenge was not expressly aimed at Texas. *See id.; see also, Calder*, 465 U.S. 790 *and Revell*, 317 F.3d at 475.

6.   Therefore, for the same reasons that the Fifth Circuit upheld the dismissal of the claims against the agents of Shriners in *Pearson*, the Court here should either dismiss the case against Defendants or transfer the case, in its entirety, to Colorado, as both Defendants and

Plaintiffs agree. Colorado is the only unassailable venue for this dispute and is also the venue for which the parties contracted.

**B. THE PARTIES' CLAUSE IS ENFORCEABLE AND SUPPORTS TRANSFER UNDER *ATLANTIC MARINE*.**

7. Plaintiffs concede the operative language requires that "[a]ny controversy or claim" arising from or relating to membership, participation, or competition be resolved in Colorado Springs under Colorado law and proceeds to restrict available remedies—features reflecting the parties' bargained-for dispute-resolution forum and governing law. Plaintiffs' assertion that the clause "opts out of court entirely" and therefore cannot support transfer is incorrect; at minimum, the clause fixes Colorado Springs as the exclusive situs for resolution of disputes arising from or related to participation, displacing Plaintiffs' choice of forum and triggering *Atlantic Marine*'s directive to honor that agreement. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 66 (2013).

8. Plaintiffs' reliance on a purported distinction between arbitration and forum selection to avoid 28 U.S.C. § 1404(a) transfer is misplaced; regardless of labeling, the agreement designates Colorado Springs as the situs where disputes such as the ones advanced by Plaintiffs must be resolved, and thus defeats Plaintiffs' attempt to litigate in Texas contrary to their commitment. "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only ***the situs of suit*** but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1976) (***emphasis added***). To the extent Plaintiffs contend Defendants "did not lead with" a motion to compel arbitration, that litigation sequencing critique is both a red-herring, since Defendants have not substantially invoked the Court's authority, and is immaterial to whether the parties' agreed forum controls venue for these disputes.

5

**C. PLAINTIFFS' CLAIMS ALL FALL WITHIN THE CLAUSE'S BROAD SCOPE.**

9.     The clause reaches "[a]ny controversy or claim arising from or relating to" membership or participation, including matters relating to competition, rules, policies, and statutory or common law claims involving USA Fencing or its officers and directors. Plaintiffs' claims arise from youth members' participation in USFA-sanctioned tournaments in Texas and alleged misrepresentations regarding competition categories and event policies; they therefore "arise from or relate to" participation and fall within the clause, not to mention within the exclusive jurisdiction of the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501, *et seq.* (the "Ted Stevens Act") as well.

10.    Plaintiffs' attempt to exclude statutory and tort claims from the clause's reach contradicts the clause's express inclusion of disputes "arising from or relating to … statutory or common law," including actions involving officers and directors. Their argument that individual defendants cannot invoke the clause ignores the clause's express reference to officers and directors in disputes related to participation, and is contrary to their own admission that they have sued these individuals because of their "connections to USFA." *See* [Dkt. 56, para. 28; Dkt. 58, para. 30; Dkt. 59, para. 28].

**D. PLAINTIFFS' REMEDY-LIMITATION ARGUMENTS TO NOT INVALIDATE THE FORUM COMMITMENT OR DEFEAT TRANSFER.**

11.    Plaintiffs argue the clause is invalid because it restricts punitive, exemplary, and consequential damages and thus purportedly waives statutory remedies. That contention is premature and beside the point on this transfer motion. *Atlantic Marine* directs courts to enforce the parties' forum commitment and leave challenges to the validity or scope of ancillary terms (such as remedial limits) to the chosen forum or arbitral body. *Atl. Marine Const. Co., Inc.*, 571 U.S. at 64 ("[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-

selection clause should not consider arguments about the parties' private interests."). Plaintiffs' authorities addressing the availability of punitive damages in arbitration do not bear on whether this Court should honor the parties' forum selection and transfer this dispute to the agreed location. Also, Plaintiffs' authorities do not preclude an arbitration panel from awarding substantive rights under the statute but confirm Defendants' arguments that the resolution of those claims must be submitted to an arbitral, rather than judicial, forum. *See Hadnot v. Bay, Ltd.*, 344 F. 3d 474, 478 n.14 (5th Cir. 2003) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)).

12. Even on their own terms, Plaintiffs' arguments about damages do not negate the forum selection; at most, they raise severability or as-applied enforceability issues for the chosen decisionmaker to resolve, and do not preclude reformation of the contractual language to ensure enforceability. Plaintiffs' suggestion that, if any claim were covered, the Court should sever only that claim and retain the balance is inconsistent with the broad "arising from or relating to" language that encompasses the nucleus of facts underpinning all pleaded claims. Simply put, Plaintiffs cannot avoid the broad scope of the clause to which they agreed.

### E. PLAINTIFFS' UNCONSCIONABILITY AND ADHESION THEORIES ARE INSUFFICIENT TO AVOID TRANSFER.

13. Plaintiffs assert procedural and substantive unconscionability based on the form nature of the agreement, alleged lack of bargaining power, Colorado situs, and remedy limits. These arguments dispute enforceability of terms but do not supply the "most exceptional" circumstances necessary to disregard the parties' forum commitment under *Atlantic Marine*. *See Atl. Marine Const. Co., Inc.*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). The asserted facts—that

USFA is the NGB, that participation requires acceptance of standardized terms, and that the designated place is Colorado Springs—do not show that enforcement of the forum selection would be unjust; rather, they confirm the predictability and uniformity the clause was designed to achieve for disputes arising from participation in USFA events. *See id.*

### F. PLAINTIFFS DO NOT CARRY THEIR BURDEN TO OVERCOME THE CLAUSE UNDER PUBLIC INTEREST FACTORS.

14. Plaintiffs recognize *Atlantic Marine*'s framework and concede that only public-interest factors remain relevant when a valid forum-selection clause applies. Their showing falls short.

15. *Local interest*. Plaintiffs emphasize that tournaments occurred in Texas and that families in Texas were affected. But they ignore that the dispute concerns nationwide membership and participation governed by USFA policies and rules, with the parties' agreement fixing Colorado Springs as the forum. Plaintiffs' own articulation of the controversy ties it to "compliance with any … rule, regulation, policy," matters expressly encompassed by the clause. Local-interest considerations do not overcome the contractual forum in these circumstances, and a court "must deem the private-interest factors to weigh entirely in favor of the pre-selected forum." *Id.*

16. *Governing law and conflicts*. Plaintiffs invoke Texas law claims and argue a Texas court is more familiar with Texas statutes. First, state law claims are preempted under the Ted Stevens Act. *See Micheletti v. McGregor*, No. 1-25-CV-245-RP, 2025 WL 1914888, at *5 (W.D. Tex. June 26, 2025), report and recommendation adopted in part, No. 1:25-CV-245-RP, 2025 WL 2218883 (W.D. Tex. Aug. 4, 2025) and report and recommendation adopted as modified, No. 1:25-CV-245-RP, 2025 WL 2663677 (W.D. Tex. Sept. 11, 2025); *Hale v. McGregor*, No. 1-24-CV-1076-RP, 2025 WL 2622360, at *4 (W.D. Tex. June 26, 2025), report

8

and recommendation adopted, No. 1:24-CV-1076-RP, 2025 WL 2218882 (W.D. Tex. Aug. 4, 2025); *Nat'l Collegiate Rugby Inc. v. McGregor*, No. A-25-CV-269-RP, 2025 WL 1914870, at *3 (W.D. Tex. June 26, 2025), report and recommendation adopted, No. 1:25-CV-269-RP, 2025 WL 2630232 (W.D. Tex. Sept. 11, 2025).  Second, the agreement specifies that Colorado law governs the dispute-resolution mechanism and the clause interpretation.  Furthermore, the transferee court can handle any application of Texas law; familiarity with state law is a neutral or minor consideration and does not defeat transfer under *Atlantic Marine*.  *Atl. Marine Const. Co., Inc.*, 571 U.S. at 64-68.

17.     *Court congestion and practical problems*. Plaintiffs argue delay, docket activity, and an intra-district transfer weigh against transfer. But under *Atlantic Marine*, private-interest factors—including convenience and case progress—carry no weight against a valid forum clause, and Plaintiffs identify no administratively exceptional circumstances that would justify disregarding the parties' agreement. *Id.*

### G. ALTERNATIVELY, AT MINIMUM, CLAIMS SUBJECT TO THE CLAUSE SHOULD BE SEVERED AND SENT TO THE AGREED FORUM.

18.     If the Court concludes that any subset of claims is within the clause, those claims should be severed and transferred or compelled to proceed in the designated forum, rather than allowing Plaintiffs to avoid their contractual commitment through artful pleading. Plaintiffs themselves acknowledge severance as the appropriate vehicle for claims covered by a forum-selection commitment, even while seeking to cabin the effect here.

### III. CONCLUSION

19.     The parties agreed to resolve disputes arising from or relating to membership and participation in Colorado Springs under Colorado law.  Plaintiffs' claims fall within that agreement. Under Atlantic Marine, the clause must be given controlling weight, and Plaintiffs

have not shown the "most exceptional" public-interest circumstances necessary to override it. The Court should grant Defendants' motion and transfer this action to the District of Colorado.

## IV. PRAYER

Based on the foregoing, Defendants reassert their requests that this Court dismiss all of Plaintiffs' causes of action against them for improper venue or transfer the causes of action pursuant to the parties' forum selection and alternative dispute resolution clause, and for such other and further relief to which they may be entitled in equity or law.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: /s/ Robert Lemus

Robert Lemus
Texas Bar No.: 24052225
rlemus@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4869 - Telephone
(713) 961-3938 - Facsimile

**ATTORNEYS FOR DEFENDANTS UNITED STATES FENCING ASSOCIATION, DONALD ALPERSTEIN, PHIL ANDREWS, DAVID ARIAS, LAURYN DELUCA, KAT HOLMES, and DAMIEN LEHFELDT**

## CERTIFICATE OF SERVICE

    I hereby certify that on the January 13, 2026, a true and correct copy of the foregoing instrument has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

                                          */s/ Robert Lemus*
                                          Robert Lemus