IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>   *Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION<br>a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually.<br><br>   *Defendants*. | Civil Action No. 4:25-cv-00931-O |

**DEFENDANTS' GLOBAL BRIEF IN REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

Defendants United States Fencing Association ("USFA"), Donald Alperstein ("Alperstein"), David Arias ("Arias"), Phil Andrews ("Andrews"), Damien Lehfeldt ("Lehfeldt"), Lauryn Deluca ("Deluca"), and Kat Holmes ("Holmes") (collectively, "Defendants") file this global brief in reply to Plaintiffs' brief in opposition [Dkts. 60 and 61] to Defendants' motion to dismiss plaintiffs' suit against them for failure to state a claim and for lack of subject-matter jurisdiction, as authorized by Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

**I. INTRODUCTION**

1. Plaintiffs' briefs in opposition continue their endeavors in artful pleading to avoid

the effect and plain language of Congress and binding precedent.

2. Plaintiffs cannot avoid the fact that their claims are beyond the limits of Article III of the United States Constitution because they are effectively suing the Defendants for complying with and obeying the rules, regulations, and laws of the United States in force at the time of their alleged injury. Plaintiffs have no standing, the dispute is moot, and this Court lacks subject-matter jurisdiction over the dispute. Plaintiffs have failed to state a claim upon which this Court may grant relief. Plaintiffs, therefore, cannot overcome Defendants' arguments and defenses.

3. Plaintiffs cannot avoid the fact that they are challenging nationwide eligibility policies adopted by a national governing body, which Congress has explicitly mandated is subject to mandatory and binding arbitration, and therefore cannot overcome Defendants' arguments and defenses.

## II. ARGUMENT

### A. NO DISCRIMINATION

4. As a fundamental principle, there can be no discriminatory policy on any basis where everyone has an equal opportunity to compete in any category they wish in compliance with the laws and regulations in place at the time. Plaintiffs cannot artfully manufacture a discrimination claim under Title IX where none, *prima facie*, exists. USFA is not an "educational institution" as defined Title IX. *See* 20 U.S.C. § 1681(c). And, even if Plaintiffs are correct that Title IX can be stretched to apply to a national governing bodies ("NGB") subject to the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501, *et seq.* (the "Ted Stevens Act"), then the NGB would have to comply, by Plaintiffs' own logic and allegations, with Executive Order No. 14021, which was in effect for the time complained of by Plaintiffs and guarantees "an educational environment free form discrimination on the basis of sex, […]

including discrimination on the basis of sexual orientation or gender identity." Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity, 86 FR 13803 (E.O. 14021, March 8, 2021). Furthermore, Title IX makes clear that it does not "add or detract from any *existing authority*." 20 U.S.C. § 1685 (emphasis added). The Ted Stevens Act is existing authority that requires USFA to have open membership and to provide "an equal opportunity to amateur athletes, coaches, trainers, managers, administrators, and officials to participate in amateur athletic competition, without discrimination on the basis of race, color, religion, sex, age, or national origin, and with fair notice and opportunity for a hearing to any amateur athlete, coach, trainer, manager, administrator, or official before declaring the individual ineligible to participate." 36 U.S.C. § 220522(7) and (8). Simply put, by its own language, Title IX does not add or detract from the governing statute for NGBs, such as the USFA, which addresses "discrimination on the basis of […] sex" in the same terms as Title IX. Congress understands that Title IX does not apply to NGBs, and therefore explicitly imported the protections from Title IX through the new statute—the Ted Stevens Act—and provided a comprehensive dispute resolution scheme to address discriminatory practices and other complaints distinct from and to the exclusion of the Title IX scheme and other state law claims that fall within the clear boundaries of the Ted Stevens Act. To be clear, the Ted Stevens Act does not prevent a complainant from asserting a claim of and obtaining relief for discrimination on the basis of sex as one might under Title IX, failure to disclose applicable policies as one night under the DTPA, or a failure to provide a safe competitive environment under any other applicable theory, but it does preempt how the complainant does it. The Ted Stevens Act's operative language as to this matter requires the NGBs to look to the executive branch for guidance as to what "discrimination on the basis of

3

sex" means in order to comply with the eligibility statute. At the time of the complained of conduct (2023), that guidance came in the form of Executive Order No. 14021, with which USFA complied. Now (2025), that guidance comes in the form of Executive Order No. 14201, with which USFA currently complies. If another Executive Order is issued or if Congress enacts further legislation in the future, USFA will continue to do what it has always done—comply with applicable law and regulations.

5. The "normal definition of discrimination" is "differential treatment" or "less favorable" treatment. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (citing *Olmstead v. L. C.,* 527 U.S. 581, 614, (1999) (KENNEDY, J., concurring in judgment) (the "normal definition of discrimination" is "differential treatment"); *see also Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682, n. 22, (1983) (discrimination means "less favorable" treatment)). What Plaintiffs are challenging is not a discriminatory policy because neither male nor female amateur athletes are receiving "differential" or "less favorable" treatment under the challenged policy. For either category of amateur athlete, and individual athlete under the age of sixteen was eligible and had the opportunity to compete in the category of their choice, provided they had parental consent. This was a nationwide policy of which every member of USFA was aware, including the Plaintiffs. Furthermore, Plaintiffs have not presented any evidence that any of their athletes (nor any in their proposed class) competed against a biologically different amateur athlete at either of the two Fort Worth NACs at issue here.

6. Plaintiffs seek to turn discriminatory conduct on its head and are now arguing for government sponsored discrimination under a statute that was enacted to prohibit that very conduct. By dropping class representative Nana Pan [Dkt. 49], the lone parent of an amateur

athlete competing in the Men's categories according to their first amended complaint, Plaintiffs are advocating that biologically male and female amateur athletes should be subject to differential treatment under the former USFA policy in that biologically female amateur athletes should have the opportunity and be eligible to compete in either the Men or Women categories, but biologically male amateur athletes should be treated less favorably, restricted to only one category.

7.   The success of Plaintiffs' claims would lead to two absurd results. First, it would institutionalize and systematize discrimination on the basis of sex because biological females would be permitted to compete in either category while biological males would be restricted to only one. Second, it would penalize compliance with the law. Setting aside civil disobedience principles, institutions created by Federal statute can hardly be required to bite the very hand that feeds them, yet that is exactly what Plaintiffs' success would do. Plaintiffs' true target is the executive order of the former administration, with which USFA and USOPC had complied. And now, Plaintiffs are seeking relief for that compliance on the basis that there is now a new administration.

**B. PLAINTIFFS' CLAIMS ARE PRESCRIBED BY THE MANDATE OF CONGRESS**

8.   Regardless of Plaintiffs' aims, their efforts are misplaced before this Court. The "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). Where "a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 16 (2017). A court has no warrant to revise Congress's scheme simply because Congress did not affirmatively preclude the availability of other actions where a fair reading of the statutory text displays an intent to foreclose that availability. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). Through the Ted Stevens

Act, Congress explicitly mandated that challenges (1) to eligibility and the opportunity to compete in amateur sports competition, (2) to the dissemination and distribution of rules and policies applicable to the amateur sports competition, and (3) to the safe environment and operation of the amateur sports competition are subject to statutory dispute resolution rules, including arbitration, to which Plaintiffs also separately agreed by their acceptance of the terms and conditions in the NAC participation waivers.  *See* 36 U.S.C. §§ 220522(8), 220524, 220525, 220527, and 220529. The core of Plaintiffs' claims challenge these very same matters—(1) eligibility and opportunity of amateur athletes to compete in the form of their Title IX claim, (2) the dissemination and distribution of applicable rules and policies in the form of their DTPA claim, and (3) the promotion of a safe environment in the form of their breach of contract claims, each of which then reiterated through their conspiracy and negligence claims.  *See* Plaintiffs' Second Amended Verified Class Action Complaint.  Thus, no matter how the Plaintiffs artfully plead their complaints, they fall squarely within the issues prescribed by Congress in the Ted Stevens Act and are therefore subject to the Ted Stevens Act.  Plaintiffs cannot avoid this simple syllogism.

**C. PLAINTIFFS' LACK STANDING AND THEIR CLAIMS ARE MOOT**

9.      Federal courts are "courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.375, 377 (1994).  Federal courts have a "special obligation to satisfy [themselves] of [their] own jurisdiction" before proceeding to the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259 (2025).  The most fundamental limits on federal judicial power are contained in Article III of the Constitution, which grants federal courts jurisdiction only over enumerated categories of "Cases" and "Controversies." U.S. Const. art. III, § 2.  "The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins

both [the] standing and […] mootness jurisprudence […]." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180 (2000). Here, both standing and mootness are at issue, and the Court must consider both threshold questions before considering the merits. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("For a court to pronounce upon the merits when it has no jurisdiction to do so, is for a court to act ultra vires.").

10. The "triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04, 118 S. Ct. 1003, 1016–17, 140 L. Ed. 2d 210 (1998). "First and foremost, there must be alleged (and ultimately proved) an 'injury in fact'—a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical.' ' " *Id.* (citation omitted). "An interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000). An injury in fact must be concrete and particularized. *Friends of the Earth*, 528 U.S. at 180-181. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, (2016), as revised (May 24, 2016) (internal quotations omitted). "A concrete injury must be *de facto*; that is, it must actually exist." *Id.* at 340 (internal quotations omitted). Where a plaintiff is without an injury in fact, that plaintiff lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint. *See id.* at 338.

11. Plaintiffs have failed to, and in fact cannot, allege any injury in fact. Plaintiffs have not identified (they cannot) a single concrete or particularized instance in which any of the amateur athletes on whose behalf the Plaintiffs advance claims in this case competed against any other amateur athlete that was transgender. Plaintiffs have not identified any single concrete or

particularized harm that arose from any of the complained of conduct. And, even if Plaintiffs could identify a single instance, Plaintiffs have not demonstrated concretely or particularly how such a competition would have changed the outcome of the North America Cups of which Plaintiffs complain or their choices to compete. Plaintiffs have no injury-in-fact for any of their claims.

12. Federal courts have no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Cnty. Of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). So, a case must be dismissed "if an event occurs while a case is pending … that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology*, 506 U.S. at 12 (citing *Mills*, 159 U.S. at 653). A case becomes moot when "it can be said with assurance that 'there is no reasonable expectation' that the alleged violation will recur, and interim relief or events have complete and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631.

13. The promulgation of Executive Order 14201 (2025) and the subsequent change in USFA eligibility policy to comply with the new regulatory regime and USOPC policies renders Plaintiffs' claims moot. It is undisputed that USFA has, and will continue, to comply with applicable law and regulations—that is very reason Plaintiffs have sued them. "The purpose of an injunction is to prevent future violations," so for a claim for injunctive relief to remain a live controversy there must exist "some cognizable danger of recurrent violation, something more

than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). A claim for declaratory relief becomes moot when there is no longer "a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*" *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (emphasis in original). Here is where logical gymnastics of Plaintiffs' claims strain credulity. Plaintiffs allege that USFA violated Title IX, the DTPA, breached a contract, committed conspiracy, and committed negligence because USFA complied with regulatory guidance of the executive branch of the United States government. In so doing, Plaintiffs invite this Court to disregard statutory and constitutional requirements and provisions, which this Court cannot do. *Armstrong*, 575 U.S. at 327–28.

      14.    As to Plaintiffs' state law claims, in *McCulloch v. Maryland*, 17 U.S. 316 (1819), Chief Justice Marshall explained that, under the Supremacy Clause, "the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." *McCulloch v. Maryland*, 17 U.S. at 436. Plaintiffs' arguments explicitly invite the Court to find that the laws of the State of Texas control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. During the relevant time of Plaintiffs' complaint, Defendants were in compliance and obeisance with the constitutional laws enacted by Congress and the Federal regulations based on those laws in effect at the time. And, even if Plaintiffs are correct, "[s]tate law [is] impliedly preempted by federal law where it is impossible for party to comply with both state and federal requirements." *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 480 (2013). Furthermore, a practice cannot be *de facto* deceptive, when it is disclosed prior to the alleged

transaction. Simply put, Plaintiffs seek to manufacture a controversy where none exists.

## III. CONCLUSION

15. Plaintiffs cannotavoid the facts of their own claims, the statutory intent of Congress, nor the binding precedent of the federal courts. For these reasons, all of Plaintiffs' claims against the Defendants should be dismissed.

## IV. PRAYER

Based on the foregoing, Defendants reassert their requests that this Court dismiss all of Plaintiffs' causes of action against them for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants further pray for such other and further relief to which they may be entitled in equity or law.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _____
Robert Lemus
Texas Bar No.: 24052225
rlemus@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4869 - Telephone
(713) 961-3938 - Facsimile

**ATTORNEYS FOR DEFENDANTS UNITED STATES FENCING ASSOCIATION, DONALD ALPERSTEIN, PHIL ANDREWS, DAVID ARIAS, LAURYN DELUCA, KAT HOLMES, and DAMIEN LEHFELDT**

**CERTIFICATE OF SERVICE**

    I hereby certify that on the January 13, 2026, a true and correct copy of the foregoing instrument has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

                                             */s/ Robert Lemus*
                                             Robert Lemus