UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Hongran Stone, individually and on behalf of all others similarly situated </br></br> Plaintiffs </br></br> v. </br></br> USA FENCING ASSOCIATION </br> a Colorado Corporation </br></br> and </br></br> Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually </br></br> Defendants. | Civil Case No.:4:25-cv-00931-O |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

Plaintiffs Julia Ya Zhao, Frederick Hausheer, Nana Pan, and Hongran Stone, individually and on behalf of all others similarly situated, respectfully submit their Opposition to Defendants' Motion to Compel Arbitration ("Motion") and state as follows:

# Table of Contents

**Table of Contents** ---------------------------------------------------------------------------------------------------- ii

**Table of Authorities** --------------------------------------------------------------------------------------------- iii, iv

**INTRODUCTION** ---------------------------------------------------------------------------------------------------- 1

**FACTUAL BACKGROUND** ----------------------------------------------------------------------------------- 1

**SUMMARY OF ARGUMENT** -------------------------------------------------------------------------------- 2

**ARGUMENT** -------------------------------------------------------------------------------------------------------- 3

    I.    THE AGREEMENT'S PROHIBITION ON CERTAIN DAMAGES PREVENTS EFFECTIVE VINDICATION OF STATUTORY RIGHTS ------------------------------------ 3

        A.    The Effective Vindication Doctrine Protects Statutory Rights in Arbitration ------ 3

        B.    The Arbitration Agreement Bars Effective Vindication of Statutory Rights Under the Texas DTPA ------------------------------------------------------------------------- 4

        C.    The Agreement Does Not Permit Vindication of Plaintiffs' Rights to Punitive Damages for their Conspiracy Claim ------------------------------------------------------ 4

        D.    The Applicable Law Does Not Support Enforcement of the Arbitration Agreement  5

        E.    THE ARBITRATION AGREEMENT IS UNCONSCIONABLE UNDER TEXAS LAW ------------------------------------------------------------------------------------------------------- 5

            A.    The Arbitration Agreement Here Is Procedurally Unconscionable ------------------ 6

            B.    The Arbitration Agreement Is Substantively Unconscionable ----------------------- 7

                (i)    *The Damages Ban Is Unlawful and Materially Undermines Plaintiffs' Statutory and Common-Law Remedies* ------------------------------------------------------------------- 7

                (ii)    *The Forum Selection Clause is Unconscionable* ------------------------------------- 10

                (iii)    *The Arbitration Agreement Cannot Bind Minor Plaintiffs* -------------------------- 11

        C.    The Clause, If Enforceable at All, Warrants Only Severance. ------------------------- 11

        D.    THE CIRCUMSTANCES REQUIRE A STAY FOR ANY NON-ARBITRABLE CLAIMS PENDING ARBITRATION ---------------------------------------------------------- 12

            (i)    The Fifth Circuit's Approach to Stays Versus Dismissals and recent Supreme Court case ------------------------------------------------------------------------------------- 13

**CONCLUSION** ----------------------------------------------------------------------------------------------------- 13

## TABLE OF AUTHORITIES

CASES

*Akin v. Dahl*, 661 S.W.2d 917, 921-22 (Tex. 1983) ------------------------------------------------- 9

*Alvarez v. Gryphon Holdco, LLC*, *Alvarez v. Gryphon Holdco, LLC*, 2019 U.S. Dist. LEXIS 158854 (W.D. Tex. 2019) ------------------------------------------------------------------------- 5

*American Express Co. v. Italian Colors Restaurant.*, 570 U.S. 228, 235–36, (2013) -------------- 3

*Blount v. Nat'l Lending Corp.,* 108 F. Supp. 2d 666 (S.D. Miss. 2000) ------------------------------ 6

*Carter v. Countrywide Credit Indus.*, 362 F.3d 294 (5th Cir. 2004) ---------------------------------- 6

*Costanza v. Allstate Ins. Co.*, No. 02-1492, 2002 U.S. Dist. LEXIS 21991 (E.D. La. Nov. 12, 2002) ------------------------------------------------------------------------------------------------------- 11

*Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406 (N.D. Miss. 2016) ---------- 6

*Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676-79 (5th Cir. 1999) ----------------------------- 13

*Fenslage v. Dawkins*, 629 F.2d 1107, 1110 (5th Cir. 1980) ----------------------------------------- 4

*Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1076-77 (5th Cir. 2002) ---------------------- 11

*Gateway Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993 (5th Cir. 1995) ----- 5

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ------------------------------------ 3

*Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ----------------------------- 3, 6

*Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) -------------------------------------------- 5

*Hall v. Treasure Bay V.I. Corp.*, 371 Fed.Appx. 311 (3d Cir. 2010) ---------------------------------- 6

*Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561 (W.D. Tex. 2014) ---------------- 10

*In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) ------------------------------------------------- 8

*In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) -------------------------- 5

*In re Poly-America*, 262 S.W.3d 337, 352-53 (Tex. 2008) ----------------------------------------- 9

*In re Poly-America, L.P.*, 262 S.W.3d 337, 348-49 (Tex. 2008) ------------------------------------ 7

*In re Poly-American, L.P.,* 262 S.W.3d 337, 348 (Tex. 2008) --------------------------------------- 5

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014) --------------------------------------------- 12

*In re Rolls Royce Corp.*, 775 F.3d at 674 -------------------------------------------------------------- 12

*ITT Educ. Servs. v. Arce,* 533 F.3d 342 (5th Cir. 2008) -------------------------------------------- 10

*Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 241 (Tex. 1985) ----------------------------- 8

*Kane v. Yancy*, 2015 U.S. Dist. LEXIS 173991, at *16-18 (S.D. Tex. 2015) ------------------------ 8

*Marcotte v. Am. Motorists Ins. Co.,* 709 F.2d 378, 380  (5th Cir. 1983) ----------------------------- 4

*Mertens v. Benelux Corp.*, 2024 U.S. Dist. LEXIS 201895 at * 4 (W.D. Tex. Nov. 6, 2024) ----- 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985) ------------------ 5

*Pennington v. Singleton*, 606 S.W.2d 682, 690-91 (Tex. 1980) ----------------------------------------- 8

*Pickens v. ITT Educ. Servs.*, 2012 U.S. Dist. LEXIS 150783 at *9 (S.D. Tex. 2012) --------------- 5

*Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W. 3d 105, 136-38 (Tex, App. 2018) --------------------------------------------------------------------------------------------------------- 9

*Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 300 (Tex. App. 2008) ------------------ 8

*Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F. Supp. 3d 967, 974 (S.D. Tex. 2018) ---------------- 4

*Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005) ----------------------------- 6

*Smith v. Spizzirri*¸601 U.S. 472, 476-79 (2024) ---------------------------------------------------- 12, 13

*St. Louis & Southwestern Ry. Co. v. Chapa*, 102 Tex. 89, 113 S.W. 144, 146 (1908) --------------- 4

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 308-09 (Tex. 2006) -------------------------- 8

*Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227-32 (Tex. 2014) ------------------------- 9, 10

*Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211 (5th Cir. 2003) ------------------------------ 11

STATUTES

36 U.S.C. § 220501 et seq. ------------------------------------------------------------------------------------ 6

9 U.S.C.S. § 3 ------------------------------------------------------------------------------------------------- 13

Tex. Bus. & Com. Code § 17.42 ----------------------------------------------------------------------------- 9

Tex. Bus. & Com. Code § 17.50 ------------------------------------------------------------------------- 4, 10

Tex. Bus. & Com. Code § 17.50(b) ------------------------------------------------------------------------- 8

OTHER AUTHORITIES

Federal Arbitration Act --------------------------------------------------------------------------------- 12, 13

Texas Deceptive Trade Practices Act ------------------------------------------------------------- 1, 2, 4, 8, 9

Title IX ----------------------------------------------------------------------------------------------- 1, 2, 13, 16

Title VII ------------------------------------------------------------------------------------------------------- 5

RULES

Tex. Civ. Prac. & Rem. Code §§ 41.001(11), 41.003(a) ------------------------------------------------ 10

# INTRODUCTION

This lawsuit arises from Defendants' discriminatory policies at a national fencing tournament in Ft. Worth, Texas. Plaintiffs filed suit on August 25, 2025, claiming USA Fencing Association and the individual defendants (officers and board members) violated Title IX (First Claim), violated the Texas Deceptive Trade Practices Act (DTPA) (Second Claim), conspired to violate established rights (Fourth Claim), and negligently misrepresented material facts (Fifth Claim) through their illegal and discriminatory policies, false advertising of fencing tournaments, and unlawful promotion of alcohol at youth events.[1] Defendants seek to compel arbitration based on a clause in membership waivers signed by Plaintiffs or their parents, a clause buried in lengthy, non-negotiable documents filled with unrelated boilerplate language.

As detailed below, the arbitration clause prohibits prohibits arbitrators from awarding consequential, punitive, or exemplary damages—remedies that are central to Plaintiffs' statutory claims under Title IX and the Texas DTPA, as well as for common law conspiracy. These limitations preclude Plaintiffs from vindicating their statutory rights in arbitration. Moreover, the agreement's forum selection clause requiring arbitration in Colorado imposes an undue burden on Texas residents and minors, further undermining enforceability. Accordingly, Plaintiffs request that the Court deny Defendants' motion to compel arbitration as to claims seeking punitive or exemplary damages, including the Title IX, DTPA and conspiracy claims, and stay any remaining claims pending arbitration.

## FACTUAL BACKGROUND

---

[1] Plaintiffs voluntarily dismissed their Third Claim for Breach of Contract claim under the Federal Rules.

1

Plaintiffs are the parents of minor athletes who participated in USA Fencing Association's (USFA) North American Cup (NAC) tournaments held in Fort Worth, Texas, in March and November 2023. Plaintiffs allege that USFA and individual defendants discriminated against biological female athletes by allowing biological males to compete in women's events, in violation of Title IX and Texas law. Plaintiffs further allege that USFA falsely advertised these tournaments as sex-segregated women's and men's events, thereby defrauding parents and athletes in violation of the Texas Deceptive Trade Practices Act. Plaintiffs also allege a conspiracy among individual defendants to implement and conceal these policies and misrepresentations, and negligent misrepresentations regarding the nature and safety of the tournaments.

## SUMMARY OF ARGUMENT

The Court should deny Defendants' motion to compel arbitration for four primary reasons. First, the arbitration agreement's prohibition on consequential, punitive, and exemplary damages prevents Plaintiffs from effectively vindicating their statutory rights under Title IX and the Texas DTPA. The Supreme Court has established that arbitration agreements cannot be enforced if they prevent the effective vindication of federal statutory rights.

Second, the limitation on damages indicates that the parties did not intend to arbitrate claims where punitive and/or exemplary damages are central to the statutory remedy. When an arbitration clause explicitly prohibits an arbitrator from awarding damages that are integral to a statutory remedy, that language indicates that such claims were not intended to be arbitrated.

Third, the arbitration agreement is both procedurally and substantively unconscionable under Texas law. It was presented as a non-negotiable condition of participation in fencing tournaments, with no opportunity for negotiation and no alternative to participate in Olympic-

sanctioned fencing events. Further, this agreement was forced upon minors and their immigrant parents where many of the class do not understand English well.

Finally, if the Court were to find that some claims are arbitrable while others are not, it must stay the non-arbitrable claims rather than dismiss the case.

## ARGUMENT

### I. THE AGREEMENT'S PROHIBITION ON CERTAIN DAMAGES PREVENTS EFFECTIVE VINDICATION OF STATUTORY RIGHTS.

#### A. The Effective Vindication Doctrine Protects Statutory Rights in Arbitration.

The Supreme Court has held that statutory claims may be subject to arbitration only when the agreement allows litigants to effectively vindicate their statutory rights: "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). This principle is known as the "effective vindication" doctrine. *American Express Co. v. Italian Colors Restaurant.*, 570 U.S. 228, 235–36, (2013).

The "effective vindication doctrine" serves to safeguard federal rights and prevent a prospective waiver of statutory remedies. *Id.* The Court has consistently recognized that, while statutory claims may be arbitrated, this is permissible only when "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 90 (2000). An arbitration clause will not be enforced "if it prevents the effective vindication of federal statutory rights, however it achieves that result." *American Express*, 570 U.S. at 242.

#### B. The Arbitration Agreement Bars Effective Vindication of Statutory Rights Under the Texas DTPA.

3

The agreement's prohibition on consequential, punitive, and exemplary damages conflicts with the remedies provided by the Texas DTPA, whose claim for treble damages "is a claim for statutory damages." *Marcotte v. Am. Motorists Ins. Co.,* 709 F.2d 378, 380 (5th Cir. 1983); Tex. Bus. & Com. Code § 17.50. By barring an arbitrator from awarding such statutory damages, the agreement prevents Plaintiffs from enforcing their DTPA rights. The Fifth Circuit has recognized that arbitration agreements cannot be used to circumvent statutory remedies that are essential to the vindication of statutory rights. When an arbitration agreement prevents a litigant from pursuing statutory remedies, it undermines both the remedial and deterrent functions of the statute.

Arbitration provisions relating to federal statutory claims generally are "valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'" *Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F. Supp. 3d 967, 974 (S.D. Tex. 2018) (quoting *In re Poly-American, L.P.,* 262 S.W.3d 337, 348 (Tex. 2008)). The court also noted "it would be unconscionable for an arbitration agreement to mandate arbitration of a statutory claim and at the same time eliminate the rights and remedies afforded by the statute." *Id*. Here, arbitration would impermissibly restrict Plaintiffs' ability to the benefits of the law.

### C. The Agreement Does Not Permit Vindication of Plaintiffs' Rights to Punitive Damages for their Conspiracy Claim.

Enforcing the agreement would mean that the Arbitrator could not award punitive damages for Plaintiffs' separate conspiracy claim. *Fenslage v. Dawkins*, 629 F.2d 1107, 1110 (5th Cir. 1980) (citing *St. Louis & Southwestern Ry. Co. v. Chapa*, 102 Tex. 89, 113 S.W. 144, 146 (1908) ("Exemplary damages and damages for mental anguish are recoverable against civil conspirators"). This unlawful restriction renders the agreement unenforceable.

### D. The Applicable Law Does Not Support Enforcement of the Arbitration Agreement.

Further, "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial form." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985). Multiple cases "have found that a limitation of remedies clause would significantly undermine Title VII's remedial purpose." *Pickens v. ITT Educ. Servs*., 2012 U.S. Dist. LEXIS 150783 at *9 (S.D. Tex. 2012) (cites omitted). That same rationale applies to all counts where punitive damages is requested, including but not limited to the Texas Deceptive Trade Practices Act.

The Fifth Circuit has consistently held that arbitration agreements cannot be used to deprive litigants of their statutory remedies. In *Hadnot*, the court held that "an arbitration agreement's ban on punitive and exemplary damages is unenforceable in a Title VII case." *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003). Such a ban would impermissibly restrict substantive rights afforded by the statute. *Id; Gateway Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993 (5th Cir. 1995) ("arbitrators presumptively enjoy the power to award punitive damages unless the arbitration contract unequivocally excludes punitive damages claims."). The exclusion here of punitive damages renders the agreement unenforceable. A*lvarez v. Gryphon Holdco, LLC*, *Alvarez v. Gryphon Holdco, LLC*, 2019 U.S. Dist. LEXIS 158854 (W.D. Tex. 2019) (agreement's ban on punitive and exemplary damages contravened Title VII; and that therefore, "the lifting of that illegal restriction enhanced the ability of the arbitration provision to function fully and adequately under the law.").

## II.   THE ARBITRATION AGREEMENT IS UNCONSCIONABLE UNDER TEXAS LAW.

Texas law renders unconscionable contracts unenforceable. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (citing *In re Poly-America, L.P.*, 262 S.W.3d 337, 348

5

(Tex. 2008)). There are two aspects of unconscionability: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *Carter v. Countrywide Credit Indus.*, 362 F.3d 294 (5th Cir. 2004); *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002). The burden of proving unconscionability rests on the party seeking to invalidate an arbitration agreement. *Green Tree,* 531 U.S. 79, 81.

### A.  The Arbitration Agreement Here Is Procedurally Unconscionable.

Contracts presented to a party on a take-it-or-leave-it basis are a classic example of an unenforceable contract of adhesion. *Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406 (N.D. Miss. 2016); *Hall v. Treasure Bay V.I. Corp.*, 371 Fed.Appx. 311 (3d Cir. 2010) (finding that unconscionability barred enforcement of an employment agreement). An adhesion contract is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party with no real opportunity to negotiate terms. *Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406 (N.D. Miss. 2016). Lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in the sophistication or bargaining power of the parties, and/or a lack of opportunity to study the contract and inquire about its terms are all factors that weigh in favor of finding a contract unconscionable. *Blount v. Nat'l Lending Corp.,* 108 F. Supp. 2d 666 (S.D. Miss. 2000). Similarly, courts consider whether the contracting party had a meaningful choice whether or not to agree to the terms. *See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005) (contract is unconscionable when "the weaker party had no meaningful choice, no real alternative," but to accept the contract offered by the stronger party).

Here, USFA is the exclusive National Governing Body (NGB) for the sport of fencing under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 et seq. It maintains

sole control over sanctioned tournaments, national points rankings, and athlete qualification pathways. Participation in USFA-sanctioned events is the only viable route for youth athletes to pursue competitive fencing at regional or national levels. To enter such events, athletes (or their parents) were required to click through a boilerplate "Participant Waiver" drafted exclusively by USFA. Families had no meaningful choice but to acquiesce if their children wanted to fence.

Additionally, the arbitration clause was embedded near the end of a lengthy scroll-through form, flanked by unrelated topics like refund policies and medical releases. It was not subject to negotiation, did not require a separate signature, and was presented on a take-it-or-leave-it basis as a precondition to competing. The arbitration clause at issue here bears all the hallmarks of a contract of adhesion and should be deemed procedurally unconscionable.

### B. The Arbitration Agreement Is Substantively Unconscionable.

Contracts are substantively unconscionable when they result in "oppression and unfair surprise" or are "grossly one-sided." *In re Poly-America, L.P.*, 262 S.W.3d 337, 348-49 (Tex. 2008). Here, the arbitration clause is one-sided and unjust, leading to unduly harsh consequences for the unaware Plaintiffs.

Here, the arbitration provision is substantively unconscionable because it operates as part of a cumulative, one-sided scheme that (i) bars core statutory and common-law remedies, (ii) attempts to shield non-signatory individual defendants, (iii) forces Texas parents and minors into a distant, out-of-state arbitral forum, and (iv) does so through a non-negotiable adhesion contract imposed as a condition of youth athletic participation. Taken together, these features render the arbitral forum an inadequate substitute for litigation and prevent Plaintiffs from effectively vindicating their rights.

#### (i) The Damages Ban Is Unlawful and Materially Undermines Plaintiffs' Statutory and Common-Law Remedies.

The arbitration clause provides that the arbitrator(s) will have no authority to award consequential, punitive, or exemplary damages. Such a limitation is a substantive restriction on remedies that Texas law affirmatively provides and, in several instances, relies upon for deterrence and enforcement.

Under the DTPA, prevailing consumers may recover treble damages for knowing or intentional misconduct. Tex. Bus. & Com. Code § 17.50(b). Texas courts have repeatedly emphasized that these enhanced damages serve a central deterrent and remedial function, functionally equivalent to punitive damages, and encouraging private enforcement where individual damages might otherwise be too small to justify suit. *See Pennington v. Singleton*, 606 S.W.2d 682, 690-91 (Tex. 1980) (purposes of the DTPA's treble damages provisions are to encourage privately initiated consumer litigation and to deter violations of the Act); *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 241 (Tex. 1985) (legislature sought to achieve three things with the 1979 amendments of the DTPA: (1) to preserve mandatory treble damages for consumers with small claims causes of action; (2) to eliminate automatic treble damages against sellers who make innocent misrepresentations; and (3) to allow consumers to recover treble damages at the discretion of the trier of fact in cases of knowing violations of the DTPA.); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 308-09 (Tex. 2006) (treble damages under the DTPA are consistent with the broader purpose of punitive damages, which deters misconduct and incentivizes compliance with consumer protection laws).

Texas courts have therefore held that arbitration provisions that eliminate or nullify statutory remedies, particularly DTPA remedies, are unenforceable to that extent. *Kane v. Yancy*, 2015 U.S. Dist. LEXIS 173991, at *16-18 (S.D. Tex. 2015); *Sec. Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 300 (Tex. App. 2008). While the Texas Supreme Court has recognized

that DTPA remedies may be waived in limited circumstances, such waivers are valid only if they strictly comply with the statutory safeguards set forth in Tex. Bus. & Com. Code § 17.42. *See Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227-32 (Tex. 2014). No such compliance exists here. Nor does *Venture Cotton* render the damages ban immaterial to unconscionability analysis. To the contrary, *Venture Cotton* reaffirmed that arbitration agreements function as forum-selection mechanisms only so long as they do not operate to defeat substantive statutory protections. *Id.*; *In re Poly-America*, 262 S.W.3d 337, 352-53 (Tex. 2008). Where, as here, a damages prohibition is imposed through a non-negotiable adhesion contract and operates in tandem with other one-sided provisions, it materially contributes to substantive unconscionability.

Recent Texas authority confirms the aforesaid. In *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, the court held that contractual prohibitions on exemplary damages that conflict with Texas public policy are unenforceable, even where arbitration is otherwise contemplated. 564 S.W.3d 105, 136-38 (Tex. App. 2018). The court emphasized that such limitations cannot be enforced where they strip claimants of remedies Texas law affirmatively allows, particularly for intentional or malicious conduct. *Id*.

The same reasoning applies with equal force to Plaintiffs' civil conspiracy and negligence claims. Under Texas law, civil conspiracy supports exemplary damages where the underlying conduct is intentional or malicious. *Akin v. Dahl*, 661 S.W.2d 917, 921-22 (Tex. 1983). Likewise, Texas permits recovery of exemplary damages for gross negligence. Tex. Civ. Prac. & Rem. Code §§ 41.001(11), 41.003(a). In *Ridge Nat. Res., L.L.C.*, the 8th Court of Appeals stated "The exemplary damages statute in Section 41.003 represents a measured legislative judgment and a statement of public policy aimed at enforcing the State of Texas' interest in deterring fraud, malice, and gross negligence. Unlike the DTPA, it does not contain a provision allowing parties to waive

the statutory remedy. To read this provision as implicitly allowing for the waiver of a statutory remedy in the absence of a statutorily-authorized waiver procedure would undercut the Legislature's judgment and violate the logic of *Venture Cotton*." 564 S.W.3d at 137-38. Tex. Civ. Prac. & Rem. Code §§ 41.001(11), 41.003(a). By categorically barring punitive and exemplary damages, the arbitration clause strips these claims of their full remedial structure and improperly insulates intentional misconduct from meaningful accountability.

This effect is magnified by the clause's attempt to sweep within arbitration "any matter arising from or relating to" claims against "any officer [or] director" of USA Fencing, individuals who did not sign the agreement and who otherwise would face direct tort liability under Texas law. An arbitration regime that simultaneously (1) forces claims into a distant forum, (2) bars core remedies, and (3) attempts to immunize non-signatory actors is substantively unconscionable.

### (ii)     The Forum Selection Clause is Unconscionable.

The Supreme Court has recognized that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *ITT Educ. Servs. v. Arce,* 533 F.3d 342 (5th Cir. 2008). They are not enforceable if their inclusion was the product of unconscionability. *Id.* The Supreme Court and the Fifth Circuit have noted the similarities between arbitration clauses and forum selection clauses; accordingly, they have applied the same analysis to both because an arbitration clause is, "in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561 (W.D. Tex. 2014).

The requirement that arbitration related to a Texas tournament take place in Colorado Springs under Colorado law, contributes to the unconscionability of the agreement because it imposes significant travel and legal costs on Texas plaintiffs. Additionally, the rights and remedies

10

of the Texas Plaintiffs would be unduly limited by the application of Colorado law which does not allow Plaintiffs a meaningful opportunity to pursue relief. Colorado law does not provide the same consumer-protection framework as Texas law, particularly with respect to the DTPA's enhanced-damages regime and Texas's strong public policy favoring private enforcement of consumer protections[2]. Requiring Texas consumers and minors to arbitrate under a foreign legal regime, while simultaneously stripping statutory remedies, further underscores the one-sided nature of the agreement.

### (iii) The Arbitration Agreement Cannot Bind Minor Plaintiffs.

Many of the Plaintiffs are parents who signed the arbitration agreement on behalf of their minor children. Texas courts have scrutinized arbitration agreements that purport to bind minors, particularly when the agreement limits statutory remedies designed to protect vulnerable individuals. Federal courts look to Texas law to determine whether there is a valid agreement to arbitrate between children and a defendant when parents sign on behalf of their children. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211 (5th Cir. 2003).

In such cases, courts have concluded that, under Texas law, children are not bound by their parents' signatures on arbitration agreements. *Id.* Even when the existence of the entire agreement, and not just the arbitration clause, is at issue, courts do not send the issue to the arbitrator but instead determine the validity of the agreement themselves. *Id.*

---

[2] Colorado Consumer Protection Act ("CCPA") provides for treble damages only when bad faith conduct is established by clear and convincing evidence, which is a higher evidentiary standard then the DTPA's "knowingly" or "intentionally" standard. Tex. Bus. & Com. Code §§ 17.45, 17.50; Colo. Rev. Stat. § 6-1-113. Colorado law imposes an additional hurdle for private plaintiffs under the CCPA by requiring that the challenged practice significantly impact the public as actual or potential consumers of the defendant's goods or services. *See Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 398 (Colo. App. 2003); *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146-47 (Colo. 2003). A CCPA claim must demonstrate both a deceptive trade practice and a significant public impact, the latter of which is not required under the DTPA.

11

In *Fleetwood Enterprises v. Gaskamp*, the Fifth Circuit did not require minors to submit to arbitration on the basis of their parents' arbitration agreement. *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1076-77 (5th Cir. 2002). The Court reasoned that a non-signatory could not be bound to arbitrate in the absence of third-party beneficiary status or an attempt by the children to enforce the contract. *Id.*

This principle is particularly important here where the claims involve allegations of Title IX violations and other serious matters affecting the welfare of minor athletes. The arbitration agreement's limitations on damages and forum selection provisions are especially problematic when applied to claims brought on behalf of minors.

### C. The Clause, If Enforceable at All, Warrants Only Severance.

Even if the Court found that one of Plaintiffs' claims does arise out of the NAC waiver and is covered by the arbitration clause, the remedy still would not be to transfer the entire action to Colorado. At most, the Court should follow the Fifth Circuit's guidance for partial enforcement: sever the arbitrable claim and stay or send that claim to the appropriate forum (e.g. arbitration), while keeping the remaining claims here. The Fifth Circuit has explicitly approved such a course in analogous situations involving forum-selection clauses. In *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), the court faced a multi-party suit where only one defendant had a forum-selection clause (designating Indiana) and the others did not. *See In re Rolls Royce Corp.*, 775 F.3d at 674. The district court had refused to transfer, but on mandamus, the Fifth Circuit held that the defendant's forum clause must be given effect by severing and transferring only the claims subject to that clause. *Id.* at 681. The case was sent to Indiana as to Rolls Royce but remained in Louisiana as to the other parties – a tailored solution to honor the contract without upending the entire lawsuit.

Here, should the Court determine that the arbitration clause impacts any of Plaintiffs' claims, only the impacted claims should be severed for arbitration. This course of action is supported by the aforesaid case law and other Fifth Circuit precedent which stresses the need to avoid prejudicing Plaintiffs by yanking their whole case to a different forum when most of it falls outside the clause. Severance would also prevent Defendants from bootstrapping a minor claim into a vehicle to remove unrelated claims. The request to transfer should be denied.

### D. THE CIRCUMSTANCES REQUIRE A STAY FOR ANY NON-ARBITRABLE CLAIMS PENDING ARBITRATION.

If the Court were to determines that some claims are arbitrable and others are not, the Federal Arbitration Act (FAA) and Fifth Circuit precedent require staying the non-arbitrable claims rather than dismissing the case. *Smith v. Spizzirri*¸601 U.S. 472, 476-79 (2024) (resolving split amongst circuits and confirming that a stay is required upon request). Such an approach also would best serve the interests of justice and judicial economy while preserving Plaintiffs' rights to pursue all their claims.

The FAA states that, if a suit includes issues referable to arbitration under a written agreement, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C.S. § 3. This language establishes a clear preference for staying proceedings rather than dismissing them when arbitrable issues are present. In any event, the Supreme Court has held that this provision of the FAA requires a court to stay, rather than dismiss, a lawsuit involving an arbitrable dispute. *Mertens v. Benelux Corp.*, 2024 U.S. Dist. LEXIS 201895 at * 4 (W.D. Tex. Nov. 6, 2024).

      **(i)**      **The Fifth Circuit's Approach to Stays Versus Dismissals and recent Supreme Court case.**

The Fifth Circuit has interpreted Section 3 of the FAA to mean that "the district court cannot deny a stay when one is properly requested." *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676-79 (5th Cir. 1999); *Smith v. Spizzirri¸*601 U.S. 472, 476-79 (confirming that a stay is required upon request). Significantly, the Supreme Court ruled on this issue in May 2024 that a stay would be mandatory: "In this statutory interpretation case, text, structure, and purpose all point to the same conclusion: When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss." *Spizzirri*, 601 U.S. at 476.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court enter an order (i) Denying Defendants' Motion in its entirety; or (ii) at least as to Plaintiffs' claims seeking punitive or exemplary damages, including their Title IX, DTPA and Common Law Conspiracy claims; (iii) or in the alternative, staying litigation of any remaining claims pending arbitration if it finds that any claims should be referred to arbitration; and (iii) for such further relief as the Court deems just and appropriate.

Dated: February 2, 2026                                    Respectfully Submitted,

*/s/ James T. Bacon*
James T. Bacon (admitted *pro hac vice)*
VA Bar #：22146
jbacon@mbhylaw.com
**Mahdavi, Bacon, Halfhill & Young, PLLC**
11350 Random Hills Rd.
Suite 700
Fairfax, Virginia 22030
(703) 420-7620

Timothy T. Wang
TX Bar #：24067927
twang@nilawfirm.com

        **Ni, Wang & Massand, PLLC**
        8140 Walnut Hill Ln
        Suite 615
        Dallas, TX 75231
        (972) 331-4600

        Charles Xiaolin Wang (admitted *pro hac vice*)
        DC Bar #：470265
        cwang@mbhylaw.com
        **Mahdavi, Bacon, Halfhill & Young, PLLC**
        11350 Random Hills Rd.
        Suite 700
        Fairfax, Virginia 22030
        (703) 420-7620

        *Counsel for Plaintiffs Julia Ya Zhao,*
        *Frederick Hausheer, Hongran Stone,*
        *individually and on behalf of all others*
        *similarly situated*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 2, 2026, a true and correct copy of the foregoing has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

        */s/ James. T. Bacon*