## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>*Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION<br>a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually.<br><br>*Defendants*. | Civil Action No. 4:25-cv-00931-O |

## DEFENDANTS' BRIEF IN REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    ARGUMENT .................................................................................................... 2

    A.    REASONING FROM FIRST PRINCIPLES........................................... 2

    B.    CONGRESS REQUIRES THE PARTIES TO ARBITRATE PLAINTIFFS' CLAIMS. ............................................................................................ 3

    C.    WHAT THE ARBITRATION AGREEMENT ACTUALLY SAYS. ....................... 4

    D.    THE ISSUE OF ARBITRABILITY (ALONG WITH ALL OF PLAINTIFFS' CLAIMS) SHOULD BE SUBMITTED TO THE ARBITRATOR(S) FOR RESOLUTION. ................................................... 8

    E.    THE ARBITRATION AGREEMENT ALLOWS STATUTORY RIGHTS VINDICATION.................................................................. 10

    F.    CONSPIRACY CLAIMS ARE ARBITRABLE.................................... 13

    G.    REMEDIAL PROVISIONS DO NOT AFFECT SCOPE OF ARBITRATION... 14

    H.    THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER TEXAS LAW. ................................................................... 16

    I.    MINORS ARE BOUND BY PARENTAL SIGNATURES. ................................. 22

    J.    THERE ARE NO NON-ARBITRABLE CLAIMS TO STAY. ............................ 23

III.   CONCLUSION.............................................................................................. 23

IV.   PRAYER ....................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adad v. Alta Colleges Inc.*,
No. 3:05-CV-2478-K, 2006 WL 8437382 (N.D. Tex. June 5, 2006) .................................... 11

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019) ..................................................................................... 14

*Amateur Athletic Union of the United States, Inc. v. Bray*,
499 S.W.3d 96 (Tex. App.—San Antonio 2016, no pet.) ................................................ 20, 21

*Budget Rent a Car Sys., LLC v. Ozumba*,
No. 01-20-00408-CV, 2022 WL 2347742 (Tex. App.—Houston [1st Dist.]
June 30, 2022, no pet.) .............................................................................................. 18

*Churchill Forge, Inc. v. Brown*,
61 S.W.3d 368 (Tex. 2001) ........................................................................................ 19

*Companion Prop. & Cas. Ins. Co. v. Opheim*,
92 F. Supp.3d 539 (N.D. Tex. 2015) ........................................................................... 11

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith*,
961 F.2d 1148 (5th Cir. 1992) .................................................................................... 17

*Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*,
524 F.2d 1275 (5th Cir.1975) ..................................................................................... 10

*Earl of Chesterfield v. Janssen*,
28 Eng. Rep. 82 (1751) .............................................................................................. 17

*Edwards v. Doordash, Inc.*,
888 F.3d 738 (5th Cir. 2018) ...................................................................................... 9

*El Paso Field Services, L.P. v. MasTec N. Am., Inc.*,
389 S.W.3d 802 (Tex. 2012) ....................................................................................... 2

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
545 U.S. 546 (2005) ................................................................................................... 10

*Fat Butter, Ltd v. BBVA USA Bancshares, Inc*,
No. 4:09-CV-3053, 2010 WL 11646900 (S.D. Tex. Apr. 13, 2010), report and
recommendation adopted *sub nom. Fat Butter, Ltd. v. BBVA USA Bancshares,
Inc.*, No. CIV.A. H-09-3053, 2010 WL 8756271 (S.D. Tex. Apr. 29, 2010) ......................... 18

*Fleetwood Enterprises, Inc. v. Gaskamp*,
  280 F.3d 1069 (5th Cir. 2002), opinion supplemented on denial of reh'g, 303
  F.3d 570 (5th Cir. 2002) .................................................................................................. 8, 17

*Ford v. NYLCare Health Plans*,
  141 F.3d 243 (5th Cir. 1998) ................................................................................................. 6

*Fortune v. Killebrew*,
  23 S.W. 976 (Tex. 1893) ....................................................................................................... 22

*Gay v. Manchester Mgmt., LLC*,
  No. 3:18-CV-1378-D, 2018 WL 5255267 (N.D. Tex. Oct. 22, 2018) ................................ 8, 9

*Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*,
  786 F.3d 400 (5th Cir. 2015) ............................................................................................ 12, 13

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ...................................................................................................... 11, 13, 16

*Hafer v. Vanderbilt Mortg. and Fin., Inc.*,
  793 F.Supp.2d 987 (S.D. Tex. 2011) ..................................................................................... 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ................................................................................................................. 8, 9

*Heritage Capital Corp. v. Christie's, Inc.*,
  2017 WL 1550514 (N.D. Tex. May 1, 2017) .......................................................................... 9

*In re AdvancePCS Health L.P.*,
  172 S.W.3d 603 (Tex. 2005) .................................................................................................. 17

*In re Bank One, N.A.*,
  216 S.W.3d 825 (Tex. 2007) .................................................................................................... 2

*In re Kaplan Higher Educ. Corp.*,
  235 S.W.3d 209 (Tex. 2007) (per curiam) ............................................................................. 21

*In re Labatt Food Serv., L.P.*,
  279 S.W.3d 640 (Tex. 2009) (orig. proceeding) .................................................................... 21

*In re Lyon Fin. Servs.*,
  257 S.W.3d 228 (Tex. 2008) .................................................................................................. 17

*In re McKinney*,
  167 S.W.3d 833 (Tex. 2005) .................................................................................................... 2

*In re Olshan Foundation Repair Co., LLC*,
  328 S.W.3d 883 (Tex. 2010) ............................................................................................ 19, 20

*In re Online Travel Co.*,
  953 F. Supp. 2d 713 (N.D. Tex. 2013) .................................................................. 18

*In re Poly-America, L.P.*,
  262 S.W.3d 337 (Tex. 2008) ................................................................................. 12

*In re Rubiola*,
  334 S.W.3d 220 (Tex. 2011) ................................................................................. 21

*Jack B. Anglin Co. v. Tipps*,
  842 S.W.2d 266 (Tex. 1992) ..................................................................... 11, 12, 14

*Kinnebrew v. Gulf Ins. Co.*,
  No. CA 3:94-CV-1517-R, 1994 WL 803508 (N.D. Tex. Nov. 28, 1994) ...................... 15, 16

*Klein v. ATP Flight Sch., LLP*,
  No. 14-CV-1522 JFB GRB, 2014 WL 3013294 (E.D.N.Y. July 3, 2014) ........................... 13

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) ................................................................................................. 2

*L.O.D.C. Group, Ltd. v. Accelerate360, LLC*,
  621 F.Supp.3d 716 (E.D. Tex. 2022) .................................................................... 18

*LeBlanc v. Lange*,
  365 S.W.3d 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ........................... 19

*Lower, LLC v. Amcap Mortgage, Ltd.*,
  No. 4:23-CV-685, 2024 WL 2784326 (E.D. Tex. May 30, 2024) ......................... 13

*Marcotte v. Am. Motorists Ins. Co.*,
  709 F.2d 378 (5th Cir. 1983) ................................................................................ 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................. 11, 12, 14, 16

*Morgan v. Smith Barney, Harris Upham & Co.*,
  729 F.2d 1163 (8th Cir. 1983) ....................................................................... 15, 16

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
  460 U.S. 1 (1983) ................................................................................................. 11

*Olympus Capital KEB Cards, Ltd. v. Lone Star Mgmt. Co. IV, Ltd.*,
  No. 3:06-CV-2020-B, 2007 WL 9712192 (N.D. Tex. Sept. 24, 2007) .................... 6

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003) .................................................................................... 7, 12, 13

*Pearland Urban Air, LLC v. Cerna,*
    693 S.W.3d 711 (Tex. App.-Houston [14th Dist.] 2024), aff'd *sub nom. Cerna*
    *as Next Friend of R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585 (Tex.
    2025) ............................................................................................................................. 23

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.,*
    139 F.3d 1061 (5th Cir. 1998) ......................................................................................... 6

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,*
    687 F.3d 671 (5th Cir. 2012) ........................................................................................... 9

*Polyflow, L.L.C. v. Specialty RTP, L.L.C.,*
    993 F.3d 295 (5th Cir. 2021) ......................................................................................... 12

*Prima Paint Corp. v. Flood & Conklin Mfg.,*
    388 U.S. 395 (1967) ........................................................................................................ 6

*Prudential Securities Inc. v. Marshall,*
    909 S.W.2d 896 (Tex. 1995) .................................................................................... 13, 14

*R.M. Perez & Associates,*
    960 F.2d 534 (5th Cir. 1992) ......................................................................................... 16

*Rent-A-Center., W., Inc. v. Jackson,*
    561 U.S. 63 (2010) .......................................................................................................... 9

*Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.,*
    564 S.W.3d 105 (Tex. App.—El Paso 2018, no pet.) .................................................... 19

*Sanchez v. Liggett & Myers, Inc.,*
    187 F.3d 486 (5th Cir. 1999) ......................................................................................... 14

*Saunders v. Guinn,*
    1 S.W.2d 363 (Tex. Civ. App.—Eastland 1927, writ ref'd) ........................................... 17

*Sharifi v. AAMCO Transmissions, Inc.,*
    No. CIV.A.3:07-CV-0718-D, 2007 WL 1944371 (N.D. Tex. June 28, 2007) ............... 13, 14

*Shearson/American Express Inc. v. McMahon,*
    482 U.S. 220 (1987) ...................................................................................................... 11

*Shumway v. Horizon Credit Corp.,*
    801 S.W.3d 890 (Tex. 1991) (Mauzy, J. concurring and quoting *Janssen*) ........................ 17

*Ski River Dev., Inc. v. McCalla,*
    167 S.W.3d 121 (Tex. App.—Waco 2005, pet. denied) ................................................ 19

*Smith v. Gateway, Inc.*,
   No. 03-01-00589-CV, 2002 WL 1728615 (Tex. App.—Austin July 26, 2002,
   no pet.) ................................................................................................................ 12, 13

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) ..................................................................................... 10, 23

*Southeastern Enameling Corp. v. General Bronze Corp.*,
   434 F.2d 330 (5th Cir. 1970) ................................................................................ 2

*Taylor Morrison of Texas, Inc. v. Ha*,
   660 S.W.3d 529 (Tex. 2023) ............................................................................... 22

*Thompson v. Glob. Fixture Services, Inc.*,
   No. CV H-22-0484, 2022 WL 3693453 (S.D. Tex. Aug. 25, 2022) ................ 19, 20

*Venture Cotton Co-op v. Freeman*,
   435 S.W.3d 222 (Tex. 2014) ...................................................................... passim

*Weston v. ITT-CFC*,
   No. 3:92-CV-2044-H, 1992 WL 473846 (N.D. Tex. Dec. 3, 1992) ..................... 16

*Wynne v. Am. Exp. Co.*,
   No. 2:09-CV-00260-TJW, 2010 WL 3860362 (E.D. Tex. Sept. 30, 2010) ........... 22

**Statutes**

20 U.S.C. § 1681 ......................................................................................................... 13

36 U.S.C. § 220501 ....................................................................................................... 3

36 U.S.C. § 220522(4) ............................................................................................... 22

36 U.S.C. § 220522(a)(13) ........................................................................................... 4

36 U.S.C. § 220522(a)(4)(B) .......................................................................... 3, 18, 19

36 U.S.C. § 220522(a)(8) ............................................................................................. 4

36 U.S.C. § 220524(3) ................................................................................................. 4

36 U.S.C. § 220524(4) ................................................................................................. 4

36 U.S.C. § 220524(6) ................................................................................................. 4

Tex. Bus. & Com. Code § 17.41 ................................................................................ 11

Tex. Fam. Code § 151.001(a)(7) ................................................................................ 22

**Rules**

American Arbitration Association, Commercial Arbitration Rules and Mediation
    Procedures R-7(a) (September 1, 2022)....................................................................... 9

Defendants United States Fencing Association ("USFA"), Donald Alperstein ("Alperstein"), David Arias ("Arias"), Phil Andrews ("Andrews"), Damien Lehfeldt ("Lehfeldt"), Lauryn Deluca ("Deluca"), and Kat Holmes ("Holmes") (collectively, "Defendants") file this brief in reply to Plaintiffs' brief in opposition [Dkt. 71] to Defendants' motion to compel arbitration [Dkt. 65].

## I.    INTRODUCTION

1.    Plaintiffs' brief in opposition is fraught with misstatements of fact and misapplication of law.

2.    Plaintiffs do not contest that they signed and acknowledged the arbitration agreement.

3.    The arbitration agreement does not prevent plaintiffs from effectively vindicating their statutory rights.

4.    A limitation on the types of damages available is not indicative of an intent to exclude claims.

5.    Mere adhesion contracts are not automatically unconscionable under Texas law or Colorado law, which the parties selected.

6.    The standardization of terms in the arbitration agreement for a national organization to function effectively is not unconscionable.

7.    Plaintiffs cannot avoid the fact that they are bound by the arbitration provision to which they agreed, both on their behalf and the behalf of their minor children.

8.    Plaintiffs cannot avoid the simple fact that every claim they assert is covered by the broad language of the arbitration agreement.

9.    Plaintiffs' arguments should be directed at the arbitrator, not this Court.

## II.    ARGUMENT

### A.    REASONING FROM FIRST PRINCIPLES.

10.    A court's role "is not to protect parties from their own agreements." *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014) (quoting *El Paso Field Services, L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 810-11 (Tex. 2012)).  Texas courts have consistently enforced the principle that contracting parties bear an affirmative duty to read and understand the agreements they execute.  The Texas Supreme Court established the modern framework in *In re McKinney*, holding that "absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."  *In re McKinney*, 167 S.W.3d 833 (Tex. 2005).  This rule reflects that court's emphasis that a party's subjective understanding or lack thereof does not negate acceptance of contractual terms when properly executed.  The presumption extends beyond mere signature to encompass constructive knowledge of contract contents.  In *In re Bank One, N.A.*, the Texas Supreme Court stated that "We presume that 'a party who signs a contract knows its contents.'"  *In re Bank One, N.A.*, 216 S.W.3d 825 (Tex. 2007).

11.    Federal courts in Texas consistently apply state contact law when resolving contract disputes under diversity jurisdiction.  The Fifth Circuit has recognized that "one who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentation."  *Southeastern Enameling Corp. v. General Bronze Corp.*, 434 F.2d 330 (5th Cir. 1970).  This application ensures uniformity between state and federal enforcement of contractual obligations within Texas.

12.    Plaintiffs' individual claims must be arbitrated.  "[C]ourts must examine a complaint with care to assess whether any individual claim must be arbitrated," and "[t]he failure to do so is subject to immediate review."  *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011).  As

discussed below, Congress has mandated that claims such as those brought by Plaintiffs must be arbitrated.

13.    Plaintiffs' claims are within the scope of the arbitration provisions.  Plaintiffs' claims cannot be maintained without reference to matters arising from or relating to a plaintiff's or their minor child's "membership or participation" in USA Fencing, "qualification or selection for, or competition in, any fencing event," or the Defendants' compliance with a "rule, regulation, policy, practice, bylaw, or statutory or common law, of USFA Fencing, FIE, USOC or IOC, or of any national, state, provincial or local governing or administrative body."  *Compare* Plaintiffs Second Amended Complaint [Dkt. 17] *with* Exhibits A-1 and A-2, attached to Defendants' Motion to Compel Arbitration [Dkt. 65].

## B.    CONGRESS REQUIRES THE PARTIES TO ARBITRATE PLAINTIFFS' CLAIMS.

14.    Congress enacted the Ted Stevens Olympic and Amateur Sports Act ("ASA"), in relevant part, to ensure the prompt and equitable resolution of grievances of members of national governing bodies ("NGBs") such as USFA through arbitration.  *See* 36 U.S.C. § 220501*, et seq.*

15.    Congress has mandated that parties "submit to binding arbitration any controversy involving […] the opportunity of any amateur athlete […] to participate in amateur athletic competition […] upon demand […]."  36 U.S.C. § 220522(a)(4)(B).  USFA has an arbitration agreement in its participation waivers pursuant to this Congressional mandate.  Plaintiffs have brought claims involving the opportunity of amateur athletes to participate in amateur athletic competitions.

16.    Congress has mandated that national governing bodies (NGBs), such as USFA, provide "an equal opportunity to amateur athletes […] to participate in amateur athletic competition, without discrimination on the basis of race, color, religion, sex, age, or national

origin, and with fair notice and opportunity for a hearing to any amateur athlete […] before declaring the individual ineligible to participate." 36 U.S.C. § 220522(a)(8). USFA has enacted and posted its policies, following guidance from the Executive branch concerning discrimination (especially under Title IX), pursuant to this Congressional mandate.

17.     Congress has mandated that NGBs provide "procedures for the prompt and equitable resolution of grievances of its members." 36 U.S.C. § 220522(a)(13). USFA has resolutions procedures and an arbitration agreement in its participation waivers pursuant to this Congressional mandate.

18.     Congress has mandated that NGBs "keep amateur athletes informed of policy matters and reasonably reflect the views of the athletes in its policy decisions", "disseminate and distribute to amateur athletes […] in a timely manner the applicable rules and any changes to such rules" of the NGB, and "provide equitable support and encouragement for participation by women where separate programs for male and female athletes are conducted on a national basis." 36 U.S.C. § 220524(3), (4), and (6). USFA has enacted and posted its policies, following guidance from the Executive branch concerning discrimination (especially under Title IX), pursuant to this Congressional mandate.

## C.     WHAT THE ARBITRATION AGREEMENT ACTUALLY SAYS.

19.     The parties agreed to the following arbitration language to participate in the March 2023 and November 2023 NACs held in Fort Worth, Texas:

**ARBITRATION:** Any controversy or claim arising from or relating to my membership or participation, or my minor child's membership or participation, in USA Fencing, including but not limited to any matter arising from or relating to (i) qualification or selection for, or competition in, any fencing event, whether staged under the auspices of USA FENCING, the FIE, the USOC, the IOC or some other fencing administrative body, (ii) qualification or selection for, or activities as, a referee, coach or other official at any such fencing event; or (iii) compliance with any rule, regulation, policy, practice, bylaw, or statutory or common law, of USA Fencing, FIE, USOC or IOC, or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing by any officer, director, employee, agent, attorney, referee, official, committee member or volunteer of the USA Fencing, shall to the fullest extent permitted by law be settled by arbitration, *provided however*, that prior to the commencement of any such arbitration, any and all available administrative procedures and remedies of USA Fencing, FIE, USOC, IOC or applicable sports, governmental or administrative body shall have been exhausted. Any arbitration shall be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration shall be governed by the laws of the State of Colorado and the United States, and it shall be conducted in Colorado Springs, Colorado. If the dispute is less than $50,000 there shall be no discovery other than the exchange of documents. If the dispute is over $49,999.99, discovery may also include no more than two (2) depositions (of not more than 7 hours each) by each side, unless the parties shall otherwise agree or the arbitrator(s) shall otherwise order for good cause shown. The arbitrator(s) will have no authority to award consequential, punitive or exemplary damages. Except as may be required by law or noted above, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder to a non-party without the prior written consent of all parties.

*See* [Dkt. 65], Exs. A-1 and A-2.

20.    In their response, Plaintiffs represent that they are suing USFA and its officers and board members for alleged (1) violations of Title IX; (2) violations of the Texas DTPA; (3) conspiracy to violate established rights; and (4) fraud through negligent misrepresentation through the Defendants' alleged illegal and discriminatory policies, false advertising of fencing tournaments, and unlawful promotion of alcohol at youth events. *See* [Dkt. 71] at 5.[1]  Each of these claims falls within the broad scope of the arbitration agreement, which covers **"[a]ny controversy or claim arising from or relating to** [a Plaintiff's] membership or participation, or **[their] minor child's** membership **or participation in USA Fencing**, **including but not limited to any matter arising from or relating to** (i) **qualification or selection for, or competition in, any fencing event,** whether staged under the auspices of USA FENCING, the FIE, the USOC, the IOC, or some other fencing administrative body […]; **or (iii) compliance with any rule, regulation, policy, practice, bylaw, or statutory or common law, of** USA Fencing, FIE, USOC, or IOC, or of **any national, state**, provincial or local **governing** or administrative **body**, **including any issue concerning compliance by USA Fencing or by any officer, director employee, agent,**

---

[1] References to page numbers are to the page number of the pdf on file.

attorney, referee, official, committee member or volunteer of USA Fencing, *shall to the fullest extent permitted by law be settled by arbitration* […].” *See* [Dkt. 65], Exs. A-1 and A-2 (emphasis added). This Court has previously and correctly compelled arbitration under very similar language, concluding that “[t]he Fifth Circuit has elucidated the meaning of ‘related to,’ holding that such broad arbitration clauses ‘embrace all disputes between the parties having a significant relationship to the [subject matter of the dispute] regardless of the label attached to the disputes.” *Olympus Capital KEB Cards, Ltd. v. Lone Star Mgmt. Co. IV, Ltd.,* No. 3:06-CV-2020-B, 2007 WL 9712192, at *5 (N.D. Tex. Sept. 24, 2007) (granting motion to compel arbitration) (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998)); *see also, Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 398 (1967) (characterizing “arising out of or relating to” language as a “broad arbitration clause”). “Whether a claim falls within the scope of an arbitration agreement under Texas law depends on the factual allegations of the complaint instead of the legal causes of action asserted.” *Ford v. NYLCare Health Plans*, 141 F.3d 243, 250 (5th Cir. 1998). Factually, Plaintiffs’ complaints, regardless of how they wish to label them or assert them, arise from or relate to both their minor child’s competition in a fencing event and the Defendants’ alleged non-compliance with national and state regulations, policies, practices, statutory law, and common law. Plaintiffs’ claims are subject to the broad arbitration agreement and are arbitrable.

21. Plaintiffs are factually incorrect that “Defendants seek to compel arbitration on a clause in membership waivers signed by Plaintiffs or their parents, a clause buried in lengthy, non-negotiable documents filled with unrelated boilerplate language.” *See* [Dkt. 71] at 1. Defendants seek to compel arbitration on clauses contained in participation waivers and terms and conditions that are specific to each NAC in which the participant wishes to participate, not in the membership

waivers as alleged by Plaintiffs. *See* [Dkt. 65], Exs. A, A-1, A-2, and A-3. Those participation waivers are one-page documents, and contain provisions related to USFA's refund policy, no show fine policy, and waiver of liability in bold headings, and related to USFA's drug testing policy, consent for medical treatment, and arbitration agreement in bold and underlined headings. *See* [Dkt. 65], Exs. A-1 and A-2. The single page document is neither lengthy nor boilerplate, and the arbitration agreement is not buried.

22.     While Plaintiffs are correct to point out that "[t]he arbitrator(s) will have no authority to award consequential, punitive, or exemplary damages," they are incorrect in leading the Court to believe that this automatically excludes statutory damages or has any impact on the arbitrability of the claim asserted by Plaintiffs. *See* [Dkt. 65], Exs. A-1 and A-2. As Plaintiffs correctly point out, treble damages under the DTPA are statutory damages. *See* [Dkt. 71] at 8 (citing *Marcotte v. Am. Motorists Ins. Co.*, 709 F.2d 378, 380 (5th Cir. 1983)). Contrary to Plaintiffs' assertion, the arbitration provision does not mention "statutory damages," and in fact specifically permits statutory causes of action. *See* [Dkt. 65], Exs. A-1 and A-2 ("[a]ny controversy or claim arising from or relating to … any matter arising from or relating to…compliance with any … statutory … law…."). The United States Supreme Court addressed and dismissed a similar argument regarding statutory treble damages permitted under RICO cautioning that arbitration provisions should not be held unconscionable based on speculation about their potential effect. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003) (noting that "the preliminary question [of] whether the remedial limitations at issue … prohibited an award of RICO treble damages [was] not a question of arbitrability.").

23.     The plain language of the arbitration provision also indicates that the claims of the minor children of the Plaintiffs are also to be arbitrated. Plaintiffs signed the participant waivers

on behalf of their minor children, that the children are third-party beneficiaries under the participant waivers, and that the Plaintiffs are suing on behalf of their children concerning matters governed by the participant waivers. *See, generally, Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002), opinion supplemented on denial of reh'g, 303 F.3d 570 (5th Cir. 2002).

## D.    THE ISSUE OF ARBITRABILITY (ALONG WITH ALL OF PLAINTIFFS' CLAIMS) SHOULD BE SUBMITTED TO THE ARBITRATOR(S) FOR RESOLUTION.

24.    "Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). "Under the [Federal Arbitration] Act and this Court's cases, the question of who decides arbitrability is itself a question of contract." *Id.* Parties may delegate threshold questions to the arbitrator by expressly or implicitly agreeing to a delegation clause by "clear and unmistakable" evidence. *Id.*, at 69; *see also Gay v. Manchester Mgmt., LLC*, No. 3:18-CV-1378-D, 2018 WL 5255267, at *5 (N.D. Tex. Oct. 22, 2018).

25.    The arbitration agreement specifies that "any matter arising from or relating to […] compliance with any rule, regulation, policy, practice, bylaw, or statutory or common law, of USFA Fencing […] shall to the fullest extent permitted by law be settled by arbitration […]." [Dkt. 65], Exs. A-1 and A-2. The arbitration agreement itself falls within the scope of matters to be decided by arbitration, as it constitutes a "rule, regulation, policy, [or] practice" of USFA. Therefore, the threshold issue of arbitrability is delegated to the arbitrator(s), rather than this Court.

26.    Furthermore, the arbitration agreement incorporates by reference the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). *Id.* ("Any arbitration shall be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules […]."). In *Henry Schein*, the Court did not "express a view about whether [an arbitration agreement that incorporates AAA Rules] in fact delegated the arbitrability question to

an arbitrator." *Henry Schein*, 586 U.S at 71-72. However, the Court did note that "[t]he rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions." *Id.*, at 66. AAA Commercial Rule R-7 states, in relevant part, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." AAA Commercial Rule R-7(a) (September 1, 2022). Therefore, the incorporation of AAA Rules in an arbitration agreement is clear and unmistakable evidence of the parties' delegation of threshold arbitrability questions to the arbitrator. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 746 (5th Cir. 2018) ("[E]xpress incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Manchester Mgmt.*, 2018 WL 5255267, at *5.

27.    Because Plaintiffs unconscionability arguments target the arbitration agreement and fail to challenge the delegation clause, the delegation clause is deemed valid and Plaintiffs remaining arguments regarding the validity of the arbitration agreement should be addressed by the arbitrator(s). *Edwards*, 888 F.3d at 746. If the issue of conscionability is raised to attack the entire arbitration agreement itself, rather than the validity or enforceability of the delegation clause in particular, it should ordinarily be resolved by the arbitrator(s) and not the court. *See Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

28.    Because all the claims in Plaintiffs' lawsuit are arbitrable, the suit cannot proceed. *Manchester Mgmt.*, 2018 WL 5255267, at *6 (citing *Heritage Capital Corp. v. Christie's, Inc.*, 2017 WL 1550514, at *6 (N.D. Tex. May 1, 2017)). While the Federal Arbitration Act mandates a requested stay when all claims are subject to arbitration, the United States Supreme Court found

that a court is not barred from dismissing a suit subject to arbitration on other grounds, such as lack of jurisdiction. *Smith v. Spizzirri*, 601 U.S. 472, 476 n.2 (2024) (referencing *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552, (2005) (observing that "[t]he district courts of the United States ... are 'courts of limited jurisdiction' " and " 'possess only that power authorized by Constitution and statute' ")).  Fifth Circuit precedent permits a district court to compel arbitration in the district specified in the arbitration agreement (in this case, Colorado Springs, Colorado).  *See Dupuy–Busching Gen. Agency, Inc. v. Ambassador Ins. Co.,* 524 F.2d 1275, 1276, 1278 (5th Cir.1975) (recognizing Mississippi district court's order directing parties to proceed with arbitration in New Jersey was contrary to express terms of § 4, but finding district court acted correctly where plaintiff sought to avoid arbitration by bringing suit in Mississippi, rather than contract forum of New Jersey, and defendant sought arbitration under terms of agreement).  Here, Plaintiffs plainly seek to avoid arbitration by suing in Texas, rather than the contract forum of Colorado.  For the reasons outlined and briefed in Defendants' various motions to dismiss and to transfer, as well as their motion to compel arbitration, the Court should compel arbitration of Plaintiffs' claims in the selected forum of Colorado Springs, Colorado, and dismiss this lawsuit in Texas for lack of jurisdiction.

**E.    THE ARBITRATION AGREEMENT ALLOWS STATUTORY RIGHTS VINDICATION.**

29.    The effective vindication doctrine has been narrowly applied by the Supreme Court, primarily to situations where arbitration costs would make pursuing claims economically impossible. The prohibition on certain damages does not prevent plaintiffs from pursuing their substantive claims and obtaining compensatory relief. Courts have regularly enforced arbitration agreements with similar limitations, recognizing that parties may agree to procedural limitations so long as the core statutory claims remain viable. The agreement still allows plaintiffs to pursue

their primary claims and obtain meaningful relief should they prevail.

30.    "Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  "In this regard, […] the burden is on [the respondent] to show that Congress intended to preclude a waiver of a judicial forum […]."  *Id.* (citing *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).  The Supreme Court has cautioned that '[t]hroughout such an inquiry, it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).

31.    Plaintiffs argue that the arbitration agreement bars the effective vindication of statutory rights under Tex. Bus. & Com. Code § 17.41, *et seq.* ("DTPA").  Notwithstanding the issue of whether Plaintiffs can even qualify as consumers under the DTPA, the basis of their argument concerning treble-damages is misdirected, because, as discussed above, "statutory damages" are not addressed by the plain language of the arbitration agreement.  Furthermore, Texas courts (both state and federal) routinely compel arbitration where DTPA claims have been asserted.  *See, e.g., Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp.3d 539, 543 (N.D. Tex. 2015) (evaluating arbitration award of court-ordered arbitration of DTPA claim); *Adad v. Alta Colleges Inc.*, No. 3:05-CV-2478-K, 2006 WL 8437382, at *1 (N.D. Tex. June 5, 2006) (granting motion to compel arbitration of claims, including DTPA claims, against plaintiffs who signed agreements containing arbitration clause); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266,

271 (Tex. 1992) ("[W]e hold that the City's DTPA claims are arbitrable pursuant to the parties' agreement and shall be arbitrated under the Federal [Arbitration] Act."); *see also, Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 304-06 (5th Cir. 2021) (ordering arbitration of unfair competition and fraudulent inducement claims).  As Judge Lee Yeakel succinctly held, "Claims made under the DTPA are arbitrable."  *Smith v. Gateway, Inc.*, No. 03-01-00589-CV, 2002 WL 1728615, at *4 (Tex. App.—Austin July 26, 2002, no pet.) (citing *Jack B. Anglin*, 842 S.W.2d at 271).  Finally, the United States Supreme Court has located "different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards."  *PacifiCare Health*, 538 U.S. at 405; *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 413 (5th Cir. 2015).  The DTPA's treble-damages provision likewise falls on that spectrum.  Plaintiffs' argument is inapposite and uncompelling.

32.     When parties agree to arbitrate a statutory claim, "a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  *Mitsubishi*, 473 U.S. at 628.  Under Texas law, arbitration agreements typically function simpy as forum-selection caluses rather than statutory waivers.  *In re Poly-America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008).  The issue Planitiffs raise is not one that militates against the arbitrability of their claims, but rather whether a waiver of a potential remedy is valid.  *See, e.g., PacifiCare Health*, 538 U.S. at 407 n.2; *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 230 (Tex. 2014) ("any implied waiver under [an arbitration agreement], which likewise does not conform to the DTPA's requirements, is contrary to public policy and therefore invalid.").  And, if the waiver of a potential remedy under the DTPA is found to be invalid, that does not render the entire agreement uncionable and invalid, but rather just that term.  *Venture Cotton*, 435 S.W.3d at 230-31.  Here, the arbitration agreement's collateral effect on statutory rights and

- 12 -

remedies is a peripheral concern to the essential purpose of the speedy and efficient resolution of disputes within the scope of the arbitration agreement. *See id.* The appropriate would be to sever the objectionable limitation. *Id.* ("We accordingly conclude that the court of appeals erred in declining to sever the objectionable limition on the […] statutory rights."). The United States Supreme Court has held that the determination of whether or not such an objectionable limitation should be severed is not the province of the courts, but rather one that the arbtirator should decide. *PacificCare Health*, 538 U.S. at 404; *Gil Ramirez Group*, 786 F.3d at 413. Plaintiffs should make their arguments to the arbitrator(s), not this Court.

33.     Plaintiffs have failed to point this Court to any Congressional or legistlative intent to preclude either Title IX or the DTPA from mandatory arbitration. *See Gilmer*, 500 U.S. at 26. The Title IX statute contains no express anti-arbitration lagnuage, and courts have found no congressional intent to make Title IX claims categorically non-arbitrable. 20 U.S.C. § 1681; *see, e.g., Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 JFB GRB, 2014 WL 3013294, at *10 (E.D.N.Y. July 3, 2014). Furthermore, "[c]laims made under the DTPA are arbitrable." *Smith*, 2002 WL 1728615, at *4. The cases cited by Plaintiffs do not stand for the proposition that Plaintiffs' claims are not subject to arbitration, but rather that limits on relief, to the extent contrary to public policy, are void. The claims still must go to arbitration, and the arbitrator must decide whether the limits are proper or not.

## F.     CONSPIRACY CLAIMS ARE ARBITRABLE.

34.     In addition, Plaintiffs have misguided the Court by failing to address, differentiate, or even direct the Court's attention to the myriad Texas cases that have found that conspiracy claims are arbitrable. *See, e.g., Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995); *Lower, LLC v. Amcap Mortgage, Ltd.*, No. 4:23-CV-685, 2024 WL 2784326, at *9 (E.D. Tex. May 30, 2024); *Sharifi v. AAMCO Transmissions, Inc.*, No. CIV.A.3:07-CV-0718-D, 2007 WL

1944371, at *5 (N.D. Tex. June 28, 2007).  For example, in *Prudential Securities, Inc. v. Marshall*, the Texas Supreme Court found that the plaintiffs' conspiracy claims were subject to arbitration because, "as a matter of logic," the conspiracy claims had to "at least touch upon […] claims referable to arbitration.  *Prudential*, 909 S.W.2d at 900 (referencing *Mitsubishi,* 473 U.S. at 624 n. 13).  The Texas Supreme Court noted it "cannot conclude with positive assurance that the [conspiracy] statements at issue here are not at least 'factually intertwined' with the arbitrable claims."  *Id.* (referencing *Jack B. Anglin*, 842 S.W.2d at 271).  In that case, the Texas Supreme Court found that plaintiffs' "contention that their claims are outside the scope of the arbitration agreement is inherently inconsistent with their allegations that the statements were uttered to further a conspiracy […]."  *Id.*

35.    Here, as matter of the same logic, Plaintiffs' contention that their conspiracy claims are outside the scope of the arbitration agreement is inherently inconsistent with their claims that arbitrable conduct was done to further a conspiracy—the "conspiracy" is factually intertwined with the arbitrable claims.  The fallacy of Plaintiff's position is highlighted by the fact that "[w]ithout an underlying tort, there can be no claim for a conspiracy to commit the tort."  *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999); *Sharifi*, 2007 WL 1944371, at *5.  In Texas, "civil conspiracy is a theory of vicarious liability and not an independent tort."  *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).  Thus, "the damages that matter come from the underlying wrongful act, not the conspiracy itself."  *Id.*  Therefore, whether Plaintiffs' conspiracy claim, which is not statutory, can be vindicated is a red-herring—the inquiry is whether Plaintiffs can be vindicated on their underlying claims, which they can as demonstrated above.

## G.    REMEDIAL PROVISIONS DO NOT AFFECT SCOPE OF ARBITRATION.

36.    The arbitration clause broadly covers "any matter arising from or relating to" claims

against USFA and its officers/directors, showing a clear intent to encompass all disputes. The damages limitation is a separate remedial provision that modifies available relief but does not limit the scope of arbitrable claims. Courts regularly interpret similar provisions as procedural limitations on remedies rather than substantive carve-outs from arbitration. The plain language of the agreement demonstrates an intent to arbitrate all claims, with the damages provision simply establishing the parameters of available relief.

37.     In *Kinnebrew v. Gulf Ins. Co.*, No. CA 3:94-CV-1517-R, 1994 WL 803508 (N.D. Tex. Nov. 28, 1994), this Court analyzed similar agruments to the ones asserted by Plaintiffs. There, although the plaintiff was subject to a mandatory arbitration provision, she argued that "she should not be compelled to arbitrate her claims because the remedies availale to her in Gulf's Arbtiraiton Policy are not as favorable as the remedies avialable in a judicial forum," specifically because abitration provision limited her damages to actual damages and did "not provide for the award of punitive damages, attorneys' fees, and equitable relief," which she characterized as substantive rights. *Kinnebrew*, 1994 WL 803508, at *1. The Court dismissed her argument, noting that the plaintiff has misconstrued the nature of "substantive rights," noting that a party "does not forego 'subnstnative rights' when compelled to arbtirate under a more limited remedial scheme" where the arbitraiton provision fully protects a party's substantive right. *Id.*, at *2. This Court adopted the Black's Dicitionary definition of "substantive rights" to mean "a right to equal enjoyment of fundamental rights, privileges and immunities; distinguished from procedural right." *Id.* Referencing *Gilmer*, *Mitsubishi Motors*, and *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1168 n.7 (8th Cir. 1983), the Court found that a party must abide by its agreement to arbitrate unless the party can show that Congress or the Texas Legislature "has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue" and noting with

apparent approval the holding from the Eighth Circuit that "[t]he potential unavailability of punitve damages is not a ground for enying effect to an otherwise valid agreement to arbitrate." *Kinnebrew*, 1994 WL 803508, at \*2. (citing *Gilmer*, 500 U.S. at 26; *Mistubishi Motors*, 473 U.S. at 628; and *Morgan*, 729 F.2d at 1168 n.7).  The Court ultimately concluded that a party's claim "that any agreement to arbitrate would be an unenforceable adhesion contract is an attack on the agreement as a whole and is therefore subject to arbtiration itself" and also that an argument that an agreement subject to an arbitration provision is unduly burdensome or unconscionable is also subject for arbtiraiton*Id.* (citing *R.M. Perez & Associates*, 960 F.2d 534, 538 (5th Cir. 1992) and *Weston v. ITT-CFC*, No. 3:92-CV-2044-H, 1992 WL 473846 (N.D. Tex. Dec. 3, 1992)).  Based on the above reasoning, the Court then ordered the parties to arbitrate.  *Id.*

38.     Here, the Plaintiffs make the same arguments, and the Court should reach the same conclusion.  The remedial language within the arbitration provision is procedural rather than substantive and the entire matter should be arbitrated in accordance with the parties' arbitraiton agreement.

## H.    THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER TEXAS LAW.

39.     Mere adhesion contracts are not automatically unconscionable under Texas law. Courts routinely enforce standardized agreements in recreational and sporting contexts. USFA, as the governing body, has legitimate interests in establishing uniform dispute resolution procedures. The plaintiffs voluntarily chose to participate in these optional competitive events with full awareness of the terms. The agreement was presented in standard electronic format with clear notice, and parents had the opportunity to review the terms before agreeing. Texas courts have consistently held that take-it-or-leave-it contracts in recreational contexts are enforceable absent extraordinary circumstances not present here.

40.    Texas courts recognize both procedural and substantive unconscionability as potential defenses to contract enforcement.  However, the standards for proving unconscionability are exceptionally demanding.   One of the earliest decisions to apply the defense of unconscionability to a contract described the contract as one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."  *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014) (quoting *Earl of Chesterfield v. Janssen*, 28 Eng. Rep. 82, 100 (1751) and citing *Saunders v. Guinn*, 1 S.W.2d 363, 366 (Tex. Civ. App.—Eastland 1927, writ ref'd) (noting this "definition") and *Shumway v. Horizon Credit Corp.*, 801 S.W.3d 890, 896 (Tex. 1991) (Mauzy, J. concurring and quoting *Janssen*)).  The arbitration agreement is not procedurally unconscionable under Colorado or Texas law.  The arbitration agreement is not substantively unconscionable under Colorado or Texas law.

41.    Plaintiffs cite decisions under Missippi law and the Third Circuit to suppor their procedural unconscionability arguments.  This is unsurprising when Texas courts have held that "the only cases under Texas law in which an agreement as found procedurally unconscionable involve situations in which one of theparties appears to have been incapable of understanding the agreement."  *Hafer v. Vanderbilt Mortg. and Fin., Inc.*, 793 F.Supp.2d 987, 1003 (S.D. Tex. 2011) (quoting *Fleetwod Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002)).  In Texas, "[a]dhesion contracts are not automatically or *per se* unconscionable, and there is nothing *per se* unconscionable about arbitration agreements."  *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 233 (Tex. 2008); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("Adhesion contracts are not authomatically void.").   Because adhesive contracts are not considered automatically unconsionable under Texas law, Plaintiffs' procedural unconscionability challenge to the

arbitraiton provision on ground that the arbitration agreement is an adheison contract is without merit. *See Fat Butter, Ltd v. BBVA USA Bancshares, Inc*, No. 4:09-CV-3053, 2010 WL 11646900, at \*17 (S.D. Tex. Apr. 13, 2010), report and recommendation adopted *sub nom. Fat Butter, Ltd. v. BBVA USA Bancshares, Inc.*, No. CIV.A. H-09-3053, 2010 WL 8756271 (S.D. Tex. Apr. 29, 2010). Furthermore, "clickwrap agreements" such as the one involved in the participation waiver receive strong enforcement and are valid where users are "conspicuously presented with the agreement prior to entering into a contract" and it is "impossible to complete a transaction […] in the absence of affirmative assent […]." *In re Online Travel Co.*, 953 F. Supp. 2d 713, 719 (N.D. Tex. 2013).

42.    Procedural unconscionablity requires "unfair surprise or oppression" and means that opression and unfairness must tain the negotiation process leading to the agreement's formation, focusing on facts surrounding the bargaining process. *L.O.D.C. Group, Ltd. v. Accelerate360, LLC*, 621 F.Supp.3d 716, 724 (E.D. Tex. 2022). Here, the Plaintiffs were not "incapable of understanding the agreement" nor have they been subjected to "unfair surprise or oppression." Instead, Plaintiffs suggest that because the arbtiration provision was not subject to negotiation, did not require a separate signature, and was presented on a take-it-or-leave-it basis, the arbtiration provision should be deemed procedurally unconscionable. However, in order to reach this conclusion, Plaintiffs would have the Court ignore the mandate of Congress in the ASA that claims such as the ones asserted by Plaintiffs must be submitted to binding arbitraiton on demand. *See* 36 U.S.C. § 220522(a)(4)(B).

43.    Substantive unconscionability examines the fairness of the contract terms themselves, requiring provisions that are "sufficiently shocking or gross to compel the court to intercede." *Budget Rent a Car Sys., LLC v. Ozumba*, No. 01-20-00408-CV, 2022 WL 2347742,

at *12 (Tex. App.—Houston [1st Dist.] June 30, 2022, no pet.) (quoting *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied) and *LeBlanc v. Lange*, 365 S.W.3d 70, 88 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).  The mere fact that one party received a poor bargain, failed to understand complex terms, or merely regrets accepting the benefit of the bargain after the fact does not establish unconscionability without additional evidence of oppressive circumstances.  This makes sense because Texas has a "strong commitment to the principle of contractual freedom."  *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 371 (Tex. 2001); *see also*, *Venture Cotton*, 435 S.W.3d at 228 ("Unconscionable bargains are therefore an exception to the freedom that generally pervades contract law.")  Plaintiffs must demonstrate extraordinary circumstances beyond mere failure to read or understand contract terms.  The *Ridge Natural Resources* decision emphasized that "a contracting party has the duty to read or understand the agreement she is entering into" and that unconscionability cannot be established by "simply asserting that she failed to read the contract before she signed it or that she did not understand the contract she signed."  *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 135 (Tex. App.—El Paso 2018, no pet.). Plaintiffs not only have failed to bring forward evidence sufficient to empower this Court to intervene and overturn the arbitration provision on unconscionability grounds, but invite this Court to act contrary to the mandates of Congress.  *See* 36 U.S.C. § 220522(a)(4)(B).

44.    Plaintiffs argue that the costs imposed by arbitration cause the arbitration provision to be substantively unconscionable.  "[T]he crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights."  *Thompson v. Glob. Fixture Services, Inc.*, No. CV H-22-0484, 2022 WL 3693453, at *3 (S.D. Tex. Aug. 25, 2022) (quoting *In re Olshan Foundation*

*Repair Co., LLC*, 328 S.W.3d 883, 894 (Tex. 2010). "In *In re Olshan* the Texas Supreme Court set out factors for this analysis under Texas contract law: (1) the total costs of litigation compared to the total cost of arbitration; (2) whether that disparity is so great as to deter the bringing of claims; (3) the actual cost of arbitration compared to the total amount of damages the claimant is seeking; and (4) the claimant's overall ability to pay the arbitration fees and costs." *Id.* (citing *In re Olshan*, 328 S.W.3d at 894-95). "Of these factors, 'comparison of the total costs of the two forums is the most important[.]'" *Id.* (quoting *In re Olshan*, 328 S.W.3d at 894). "Texas courts require 'some evidence that a complaining party will likely incur arbitration costs ins ich an amount as to deter enforcement of statutory rights in the arbitral forum.'" *Id.* (quoting *In re Olshan*, 328 S.W.3d at 893) (emphasis in original). "The complaining party 'must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id.* (quoting *In re Olshan*, 328 S.W.3d at 895).

45.    Plaintiffs have not provided any of the required evidence under *In re Olshan*. *See also*, *Amateur Athletic Union of the United States, Inc. v. Bray*, 499 S.W.3d 96, 107-108 (Tex. App.—San Antonio 2016, no pet.). Plaintiffs argue that the arbitration provision is substantively unconscionable because it allegedly "(1) bars core statutory and common-law remedies, (ii) attempts to shield non-signatory individual defendants, (iii) forces Texas parents and minors into a distant, out-of-state arbitral forum, and (iv) does so through a non-negotiable adhesion contract imposed as a condition of youth athletic participation." [Dkt. 71], at 11. However, as discussed above, the arbitration provision does not bar core statutory or common-law remedies, which remain available to claimants; rather it limits available remedies while specifically providing for statutory and common-law claims, which is not unconscionable.

46.     As discussed *ad nauseum* in Defendants other pleadings, the individual defendants are only defendants because of their roles as directors, officers, and/or agents of USFA and not based on any independent individual conduct.  Further, an obligation to arbitrate also binds a non-signatory under principles of contract law and agency.  *Bray*, 499 S.W.3d at 103 (citing *In re Rubiola*, 334 S.W.3d 220, 223-24 (Tex. 2011).  Non-signatories to an arbitration agreement can compel arbitration or be compelled to arbitrate.  *Id.*, at 103-04 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding) and *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 209, 209 (Tex. 2007) (per curiam)).  "When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement." *Id.*, at 104.  "The scope of an arbitration agreement may be extended to claims against agents of the principle when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable."  *Id.*

47.     There is only one Texas parental/minor (Julia Ya Zhao and Frederick Hausheer apparently are parents to the same minor) unit that is a named party in this litigation—the proposed class would be made up of parental/minor units that are from all over the United States and included one from Massachusetts[2] and one from California.  For the non-Texas class members anticipated by Plaintiffs, there cannot be any real difference between litigating in Texas or Colorado, and there is not any appreciable increase in cost demonstrated by Plaintiffs between court and arbitration.  This is especially the case where Plaintiffs are seeking millions of dollars in damages.  [Dkt. 17], at 27-29.

48.     Finally, the agreement complained of by Plaintiffs was mandated by Congress.  *See*

---

[2] Plaintiff Nana Pan whose minor child participated in Men's events nonsuited their claims.

36 U.S.C. § 220522(4).  It is statutorily required, and so any argument that it is unconscionable is an attack on the ASA itself.  In addition, Plaintiffs must show that the arbitration provision is so one-sided that it is substantively unconscionable under these circumstances.  *Wynne v. Am. Exp. Co.*, No. 2:09-CV-00260-TJW, 2010 WL 3860362, at *8 (E.D. Tex. Sept. 30, 2010).  Plaintiffs have failed to do so.

## I.    MINORS ARE BOUND BY PARENTAL SIGNATURES.

49.    Parents regularly enter into binding agreements on behalf of their minor children in educational, recreational, and sports contexts. While Fleetwood addressed specific circumstances involving personal injury claims, courts have distinguished that case when parents knowingly enter agreements to secure benefits for their children. Here, parents signed the agreements specifically to enable their children's participation in a voluntary competitive activity. Courts have recognized parents' authority to bind their children to procedural terms like arbitration when exercising their parental prerogative to enroll children in optional activities, particularly where the agreement doesn't waive substantive rights but merely specifies the forum for resolution.

50.    Recent Texas Supreme Court precedent forecloses Plaintiffs' argument that minors are not bound by their parents' signatures on arbitration agreements.  Texas courts recognize that "as a general matter, parents may sign arbitration agreements on behalf of their children" based on their statutory authority under Texas Family Code § 151.001(a)(7).  *Taylor Morrison of Texas, Inc. v. Ha*, 660 S.W.3d 529, 534 (Tex. 2023).  Though rare, "an arbitration agreement signed by a parent on a child's behalf may be unenforceable, such as when a parent's interests are adverse to the child's interests." *Id.*, at 534 n. 6 (citing *Fortune v. Killebrew*, 23 S.W. 976, 976-77 (Tex. 1893)).  Plaintiffs have not alleged that their interests are adverse to those of their children, in fact they have alleged the exact opposite.  The Plaintiffs have bound their minor children to the arbitration provision.

51.     Furthermore, the arbitration provision clearly contemplates subjecting claims involving minor children that arise from or relate to their participation in the fencing event to arbitration.  More importantly, subsequent to the execution of the participation waivers containing the arbtiration provision, the minor children participated in the services and activities of both the March and November 2023 NACs held in Fort Worth, Texas governed by the participation waiver and arbitratino provision, thereby benefitting from the agreement of the parties in a way that equitably binds the children to the terms of the participation waiver, including the arbitration provision.  *See Pearland Urban Air, LLC v. Cerna*, 693 S.W.3d 711, 716 (Tex. App.—Houston [14th Dist.] 2024), aff'd *sub nom. Cerna as Next Friend of R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585 (Tex. 2025).

## J.     THERE ARE NO NON-ARBITRABLE CLAIMS TO STAY.

52.     While the Supreme Court has confirmed that a stay is required upon request when some claims are arbitrable, this presupposes that some claims are indeed non-arbitrable. Here, the arbitration agreement's broad language encompasses all claims arising from or relating to USFA participation. Given the comprehensive nature of the agreement and the interrelated nature of the claims, all claims fall within the scope of arbitration. The Court should therefore compel arbitration of all claims rather than creating a bifurcated proceeding that would result in inefficiency and potentially inconsistent outcomes.

53.     Furthermore, as discussed above, rather than issuing a stay, Defendants submit that the Court should compel the parties to arbitration, and then dismiss Plaintiffs' suit on jurisidictional grounds.  *See Spizzirri*, 601 U.S. at 476 n.2.

## III.     CONCLUSION

54.     Plaintiffs entered into a valid, enforceable arbitration provision that has been mandated by Congress.  Plaintiffs have failed to carry their burden to avoid the arbitration

provision. The Court should compel the parties to arbitration in accordance with their agreement and then dismiss Plaintiffs' claims on the jurisdictional grounds asserted by Defendants rather than stay the proceedings.

## IV.    PRAYER

Based on the foregoing, Defendants reiterate their request that the Court compel the parties to arbitration in accordance with their agreement and for such other and further relief to which they may be entitled in equity or law.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _____

Robert Lemus
Texas Bar No.: 24052225
rlemus@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4869 - Telephone
(713) 961-3938 - Facsimile

**ATTORNEYS FOR DEFENDANTS
UNITED STATES FENCING
ASSOCIATION, DONALD
ALPERSTEIN, PHIL ANDREWS,
DAVID ARIAS, LAURYN DELUCA,
KAT HOLMES, and DAMIEN
LEHFELDT**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the February 16, 2026, a true and correct copy of the foregoing instrument has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

*/s/ Robert Lemus*          

Robert Lemus
