**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>*Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION<br>a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually.<br><br>*Defendants*. | Civil Action No. 4:25-cv-00931-O |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.   ARGUMENT.................................................................................................. 1

     A.   PROCEDURAL POSTURE AND THRESHOLD MOTIONS ............................ 1

     B.   PLAINTIFFS' CLASS DEFINITIONS ARE NOT ASCERTAINABLE AND TURN ON INDIVIDUALIZED RELIANCE ......................................................... 6

     C.   RULE 23(A) REQUIREMENTS ARE NOT MET ...............................................11

     D.   RULE 23(B)(3) PREDOMINANCE AND SUPERIORITY ARE NOT SATISFIED ........................................................................................ 17

     E.   RULE 23(B)(2) IS INAPPLICABLE ................................................................. 20

     F.   PLAINTIFFS' MERITS ARGUMENTS CANNOT SALVAGE CERTIFICATION AND UNDERSCORE INDIVIDUAL ISSUES ..................................................... 21

     G.   THE COURT SHOULD RESOLVE THE FORUM-SELECTION CLAUSE AND ARBITRATION MOTIONS BEORE ANY CLASS RULING............................. 21

     H.   RESPONSE TO SPECIFIC POINTS IN PLAINTIFFS' MEMORANDUM....... 21

III.   CONCLUSION............................................................................................ 23

IV.  PRAYER ..................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad v. Old Republic Nat. Title Ins. Co.*,
  690 F.3d 698 (5th Cir. 2012) ...................................................................................14

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) .............................................................................16, 20

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*,
  571 U.S. 49 (2013)...................................................................................................5

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ..................................................................................20

*Castano v. American Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ............................................................................ *passim*

*Chavez v. Plan Benefit Services, Inc.*,
  957 F.3d 542 (5th Cir. 2020) ..................................................................................14

*Collindres v. QuitFlex Mfg.*,
  235 F.R.D. 347 (S.D. Tex. 2006)............................................................................16

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...................................................................................................4

*Corley v. Entergy Corp.*,
  222 F.R.D. 316 (2004) ...........................................................................................21

*Crutchfield v. Sewerage and Water Board of New Orleans*,
  829 F.3d 370 (5th Cir. 2016) ..................................................................................15

*DeBremaecker v. Short*,
  433 F.2d 733 (5th Cir. 1970) ....................................................................................6

*Edwards v. Doordash, Inc.*,
  888 F.3d 738 (5th Cir. 2018) .............................................................................19, 20

*Flecha v. Medicredit, Incorporated*,
  946 F.3d 762 (5th Cir. 2020) ..................................................................................14

*In re Ford Motor Co. Bronco II Product Liability Litigation*,
  177 F.R.D. 360 (E.D. La. 1997)..............................................................................13

*Frank v. Gaos*,
    586 U.S. 485 (2019)...................................................................................................................2

*Fund Texas Choice v. Deski*,
    738 F.Supp.3d 835 (W.D. Tex. 2024)......................................................................................16

*Gene And Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ...................................................................................................17

*Gordon v. Sig Sauer, Inc.*,
    No. H-19-585, 2019 WL 4572799 (S.D. Tex. Sept. 20, 2019)...................................................9

*Henry Schein, Inc. v. Stromboe*,
    102 S.W.3d 675 (Tex. 2002).....................................................................................................13

*Ictech-Bendeck v. Waste Connections Bayou, Inc.*,
    349 F.R.D. 106 (E.D. La. 2025)..................................................................................................7

*John v. National Security Fire & Casualty Co.*,
    501 F.3d 443 (5th Cir. 2007) .....................................................................................................6

*Kelley v. Galveston Autoplex*,
    196 F.R.D. 471 (S.D. Tex. 2000)..........................................................................................9, 10

*Keyes v. Guardian Life Insurance Co. of America*,
    194 F.R.D. 253 (S.D. Miss. 2000) ...........................................................................................10

*Langbecker v. Electronic Data Systems Corp.*,
    476 F.3d 299 (5th Cir. 2007) ...................................................................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................................2

*McManus v. Fleetwood Enterprises, Inc.*,
    320 F.3d 545 (5th Cir. 2003) ...........................................................................................8, 9, 18

*MP Vista, Inc. v. Motiva Enterprises, LLC*,
    286 F.R.D. 299 (E.D. La. 2012)...............................................................................................20

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
    910 F.Supp.2d 891 (E.D. La. 2012)............................................................................................7

*Regents of University of California v. Credit Suisse First Boston (USA), Inc.*,
    482 F.3d 372 (5th Cir. 2007) .....................................................................................................9

*In re Rodriguez*,
    695 F.3d 360 (5th Cir. 2012) ...................................................................................................14

*Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance Co.*,
319 F.3d 205 (5th Cir. 2003) ..............................................................................8, 15, 18

*Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
482 F.2d 880 (5th Cir. 1973) ................................................................................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................................3

*Steering Committee v. Exxon Mobil Corp.*,
461 F.3d 598 (5th Cir. 2006) ................................................................................20

*M.D. ex rel. Stukenberg v. Perry*,
675 F.3d 832 (5th Cir. 2012) ................................................................................14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...............................................................................................3

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)...............................................................................................3

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) ................................................................................17, 18

*Van v. Anderson*,
No. CIV.A. 3:99CV0311-P, 2001 WL 803722 (N.D. Tex. July 12, 2001) .............................12

*Walmart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...............................................................................................4, 14

*Ward v. Hellerstedt*,
753 Fed.Appx. 236 (5th Cir. 2018)........................................................................13

*Young v. Nationwide Life Insurance Co.*,
183 F.R.D. 502 (S.D. Tex. 1998)...........................................................................10, 11

**Statutes**

9 U.S.C. § 2...............................................................................................................5

9 U.S.C. § 4...............................................................................................................5

**Rules**

Fed. R. Civ. P. 12(f)..................................................................................................4

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................................5

Defendants United States Fencing Association ("USFA"), Donald Alperstein ("Alperstein"), David Arias ("Arias"), Phil Andrews ("Andrews"), Damien Lehfeldt ("Lehfeldt"), Lauryn Deluca ("Deluca"), and Kat Holmes ("Holmes") (collectively, "Defendants") file this response in opposition to Plaintiffs' memorandum in support [Dkt. 75] of their motion for class certification [Dkt. 74], subject to Defendants' pending motions to dismiss, to transfer venue, and to compel arbitration.[1]

## I.   INTRODUCTION

1.      Plaintiffs ask this Court to certify a sprawling class predicated on contested merits theories while multiple threshold, case-dispositive motions remain pending, including Rule 12 motions, a motion to enforce a forum-selection clause, and a motion to compel arbitration. Class certification should be denied or, at minimum, deferred. Plaintiffs' memorandum relies on uniformity and cohesiveness that do not exist; injects individualized reliance, causation, damages, and defenses that overwhelm any common issues; and ignores enforceable agreements governing forum and arbitral resolution. The Court should refuse to expend resources on class proceedings before first resolving the pending threshold motions, any of which would obviate or sharply curtail class issues.

## II.   ARGUMENT

### A.   PROCEDURAL POSTURE AND THRESHOLD MOTIONS

2.      The Court should first resolve Defendants' pending Rule 12(b) motions,[2] motion to enforce the parties' forum-selection clause,[3] and motion to compel arbitration[4] because those

---

[1] [Dkts. 24-40 and 65].

[2] [Dkts. 24-37, 39, 40].

[3] [Dkt. 38].

[4] [Dkt. 65].

threshold issues bear directly on whether any class could proceed in this forum or in court at all. Plaintiffs themselves acknowledge they seek certification under Rule 23(a) and Rule 23(b)(3) based on alleged uniform conduct at two Fort Worth NAC events and assert that "Defendants' jurisdictional and venue challenges do not preclude class certification." Plaintiffs urge the Court to proceed notwithstanding those threshold issues . That position reverses the efficient sequence. If the forum-selection clause is enforced, this case belongs elsewhere; if arbitration is compelled, class proceedings are unavailable; and if Rule 12 motions narrow or dismiss claims or parties, Plaintiffs' class theories change materially. Plaintiffs' own framing confirms these threshold issues are live and contested, and thus should be adjudicated first. Plaintiffs devote a section arguing "Defendants' Motions do Not Preclude Class Certification," including venue and jurisdiction challenges and an argument under the Ted Stevens Act.

3.        However, Defendants' pending motions undeniably impact Plaintiffs' attempt at class certification.

4.        <u>Lack of Subject Matter Jurisdiction</u>: Article III of the U.S. Constitution limits federal jurisdiction to actual cases or controversies, requiring every plaintiff to establish standing by demonstrating (1) a concrete, particularized, actual or imminent injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The motion vehicle for this challenge is Fed. R. Civ. P. 12(b)(1), which uniquely may be raised "at any time" because courts cannot waive subject matter jurisdiction defects. *Frank v. Gaos*, 586 U.S. 485, 492 (2019) ("federal courts lack jurisdiction if no named plaintiff has standing").  For example, Plaintiffs have not, and indeed cannot, meet the requirements of *Lujan* because no plaintiff, either named or assumed to be in the proposed class of minor athletes, has alleged that

he or she competed against a male-to-female athlete at either of the 2023 Fort Worth NACs, has articulated any harm concerning or arising from alcohol marketing, nor has explained why compliance with the law as articulated by the government at the time should subject someone to legal jeopardy now.

5.    *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), is a consequential recent development regarding Article III standing in class actions. In *TransUnion*, the Supreme Court held that "only plaintiffs concretely harmed by a defendant's statutory violation have Article III standing to seek damages against that private defendant in federal court." *TransUnion LLC*, 594 U.S. at 414.  The Court established that "Every class member must have Article III standing in order to recover individual damages." *Id.*, at 431. The Court also stated: "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)).  Applying this principle, the Court held that 6,332 of 8,185 class members—whose internal credit files were never disseminated to third-party businesses—lacked standing, even though they had suffered technical statutory violations of the Fair Credit Reporting Act.  *Id.*, at 442.  The Court found persuasive the argument that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *Id.*, at 436. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), laid important groundwork, holding that a "concrete" injury "must actually exist," and that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation" divorced from any concrete harm. *Robins*, 578 U.S. at 342.  A statutory right and a cause of action do not automatically confer standing; "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*, at 341.

6.       Failure to State a Claim: Related to the above, plaintiffs have failed to state a claim upon which relief can be granted.  Plaintiffs' pleading does not demonstrate a harm, a causal connection between the harm and conduct, nor a right to relief that a court can grant.  Under *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), "[Rule 23] does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350.  The Court mandated a "rigorous analysis" that "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* Critically, commonality requires more than shared legal theories—"Their claims must depend upon a common contention…[that] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central the validity of each one of the claims in one stroke" *Id.*  The Court emphasized that commonality requires "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

7.       *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) extended this rigor to the predominance analysis, holding that a damages model presented at class certification "must measure only those damages attributable to" the specific liability theory being tried. *Behrend*, 569 U.S. at 35 (2013).  "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* A damages model that "would reduce Rule 23(b)(3)'s predominance requirement to a nullity" cannot justify certification. *Id.*

8.       Because the class allegations in plaintiffs' live complaint are defective and cannot be maintained, the court should use its authority under Federal Rule of Civil Procedure 12(f) and

strike the class.  Additionally, Federal Rule of Civil Procedure 23(d)(1)(D) authorizes the court to "require that the pleadings be amended to eliminate allegations about representation of absent persons."

9.      Forum Selection Clause: Where class members have entered into contracts with the defendant containing forum-selection clauses designating a different venue, the practical impact on the class action is dramatic.  When a defendant moves to transfer on forum-selection clause grounds, three adjustments apply: (1) "the plaintiff's choice of forum merits no weight," and "the plaintiff, as the party defying the forum-selection cause, bears the burden of establish that transfer to the forum for which the parties bargained is unwarranted"; (2) "a court evaluating  a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interest"—they are deemed to weigh entirely in favor of the contractually chosen forum; and (3) the transferee court applies its own choice-of-law rules.  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 63-65 (2013).  Because public-interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  *Id.*, at 64.  The clause does not render the original venue necessarily "wrong" under § 1406(a) or Rule 12(b)(3), but it triggers this modified § 1404(a) analysis with near presumptive force.  *Id.*, at 59.  To the extent the court entertains certifying a class, the class definition should be limited to exclude members whose waivers and agreements with USFA require venue in Colorado.

10.      Arbitration Agreement: Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Section 4 of the FAA, 9 U.S.C. § 4, authorized a court to compel arbitration upon petition by an aggrieved party.  Together,

these provisions create a powerful mechanism compelling individual arbitration of claims. To the extent the court entertains certifying a class, the class definition should be limited to exclude members whose waivers and agreements with USFA require arbitration.

## B.    PLAINTIFFS' CLASS DEFINITIONS ARE NOT ASCERTAINABLE AND TURN ON INDIVIDUALIZED RELIANCE

11.    Plaintiffs define the putative class to include parents or guardians "who paid registration, travel, lodging, or other fees in reliance on Defendants' representations." Plaintiffs propose a class of "all parents or legal guardians" of minors who registered for or participated in "women's" or "girls'" events at the March and November 2023 NACs "and who paid registration, travel, lodging, or other fees in reliance on Defendants' representations" . That definition is improper because it embeds a merits element—individual reliance—rendering class membership unascertainable without mini-trials. Plaintiffs concede reliance is part of their theory across claims, including alleged deceptive advertising and DTPA theories. Plaintiffs contend that common questions include "whether USFA falsely advertised 'women's' or 'girls' events" and whether class members "sustained damages and the proper measure of such damages," premised on payments made "in reliance on USFA's representations" . Who saw what, when, and why they paid varies widely by family, event, communication channel, and timing, defeating administrative feasibility and injecting predominant individual issues.

12.    The Fifth Circuit recognizes an implied threshold requirement that any proposed class must be "adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). This means that "there can be no class action if the proposed class is amorphous or imprecise." *John v. National Security Fire & Casualty Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007). Courts within the Fifth Circuit require class definitions to be mechanically ascertainable by "'objective criteria,' and not dependent on an 'individualized cause determination

on the merits.'" *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, 349 F.R.D. 106, 120 (E.D. La. 2025). Where determining membership requires probing a person's subjective mental state or motivation, a class definition fails ascertainability. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 914 (E.D. La. 2012) (approving a class definition specifically because "Nothing in the class definition requires a determination on the merits or delves into any person's subjective mental state"). A class definition that restricts membership to those who paid in reliance on Defendants' representations squarely fails this standard. Determining whether any given parent actually saw, read, and relied upon a particular representation by USFA before paying registration or travel costs requires an individual inquiry into that parent's subjective state of mind and conduct. That inquiry is not "mechanical"—it varies by family, by event, by which communications each parent encountered, by when they registered, and by what other information they had or sought. The definition thus cannot be applied without conducting a mini-trial on each potential member's circumstances. Courts within the Fifth Circuit have consistently found that class definitions requiring such individualized inquiry are not administratively feasible and should be rejected.

13. The Fifth Circuit has laid down a clear, durable rule: individual reliance defeats predominance and precludes class certification. The origin of this rule is *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973), where the Fifth Circuit held that "if there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action." *Simon*, 482 F.2d at 882. *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) articulates this rule clearly. The Fifth Circuit reversed a district court that had deferred the reliance question, holding flatly: "According to both the advisory committee's notes to Rule 23(b)(3) and this court's decision in *Simon v. Merrill Lynch*,

… a fraud class action cannot be certified when individual reliance will be an issue." *Castano*, 84 F.3d at 745.  The *Castano* court criticized the district court's attempt to avoid the reliance problem by refusing to decide it, warning that such an approach risks years of litigation followed by eventual decertification: "The risk that a district court will make the wrong guess, that the parties will engage in years of litigation, and that the class ultimately will be decertified (because reliance predominates over common issues) prevents this class action from being a superior method of adjudication." *Id.*, at 749.

14.    *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance Co.*, 319 F.3d 205 (5th Cir. 2003), confirmed and extended this rule, holding that "[f]raud actions that require proof of individual reliance cannot be certified as Fed. R. Civ. P. 23(b)(3) class actions because individual, rather than common, issues will predominate." *Sandwich Chef*, 319 F.3d at 211.  The court quoted the then-recent *Patterson v. Mobil Oil Corp.*, 241 F.3d 417 (5th Cir. 2001): "Claims for money damages in which individual reliance is an element are poor candidates for class treatment, at best. We have made that plain." *Id.* at 219 (quoting *Patterson* 241 F.3d at 419). The *Sandwich Chef* court concluded: "Cases that involve individual reliance fail the predominance test." *Id.*, at 219.

15.    *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545 (5th Cir. 2003), applied these principles to a consumer-products context similar to the one at issue here. The court reversed class certification of fraudulent concealment and negligent misrepresentation claims premised on allegedly misleading statements about a vehicle's towing capacity. The court found that "reliance will vary from plaintiff to plaintiff, depending on the circumstances surrounding the sale," and illustrated the problem using the two named plaintiffs themselves—one of whom had read and inquired about the product representation, and one of whom had not. *McManus*, 320 F.3d at 550.

The Fifth Circuit quoted one of the Texas Supreme Court's most pointed statements on why a class action cannot substitute for individualized proof: "evidence insufficient to prove reliance in a suit by an individual does not become sufficient in a class action simply because there are more plaintiffs. Inescapably individual differences cannot be concealed in a throng." *Id.*, at 549 (quoting *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002)). *Regents of University of California v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372 (5th Cir. 2007), reaffirmed the same principle in a securities context: "Without a classwide presumption of reliance, plaintiffs would have to prove individual reliance on defendants' conduct. '[A] fraud class action cannot be certified when individual reliance will be an issue.'" *Regents of University of California*, 482 F.3d 383 (5th Cir. 2007) (quoting *Castano*, 84 F.3d at 745).

16.     The DTPA claims asserted by Plaintiffs are subject to the same infirmity.  Texas law requires that a plaintiff asserting a DTPA false-advertising claim prove detrimental reliance on the alleged misrepresentation. In *Gordon v. Sig Sauer, Inc.*, No. H-19-585, 2019 WL 4572799 (S.D. Tex. Sept. 20, 2019),  the Southern District of Texas struck DTPA false-advertising claims as to the putative class premised on an advertising campaign, holding that the claim "would require an inquiry into whether each putative class member, when purchasing a [product], relied on statements made during that campaign, or on other marketing materials," rendering the claim "ill-suited for class treatment."  *Gordon*, 2019 WL 4572799, *21.  The court relied on the Texas Supreme Court's statement in *Henry Schein, Inc. v. Stromboe* that "reliance is an element of" a DTPA claim and that plaintiffs "failed to show that individual issues of reliance do not preclude the necessary finding of predominance." *Id.* (quoting *Stromboe*, 102 S.W.3d at 693-94).  Similarly, in *Kelley v. Galveston Autoplex*, 196 F.R.D. 471 (S.D. Tex. 2000), the Southern District of Texas denied class certification of DTPA and fraud claims because "[t]he common law fraud claim

involves issues of individual reliance and as such is not appropriate for class treatment," citing *Castano* directly for the proposition that a fraud class action cannot be certified when individual reliance is an issue. *Kelley*, 196 F.R.D. 471, 474-75 (citing *Castano*, 84 F.3d at 745). Thus, plaintiff's own theory of this case—deceptive advertising and DTPA claims—expressly requires each class member to prove detrimental reliance, and any advertising campaign reliance claim requires determining which representations each parent actually saw (e.g., the published written policies of USFA) and relied upon before paying.

17.     The variations in exposure to Defendants' alleged representations make classwide adjudication of reliance impossible as a practical matter. The proposed class encompasses parents who attended two separate events—held at different times (March 2023 and November 2023)— who registered through different channels, who may or may not have seen particular advertising, whose payment decisions were influenced by different communications and different motivations. The Fifth Circuit has consistently refused to certify classes where the reliance inquiry turns on such variable individual circumstances.

18.     In *Keyes v. Guardian Life Insurance Co. of America*, 194 F.R.D. 253 (S.D. Miss. 2000),  the court denied class certification of fraud claims arising out of insurance sales, agreeing that where alleged misrepresentations were "shared with customers, if at all, in the context of varying oral presentations, presumption of reliance is inappropriate" and individual issues substantially predominated. *Keyes*, 194 F.R.D. at 257, n. 5 (quoting *In re Jackson National Life Ins. Co. Premium Litigation*, 183 F.R.D. 217, 222 (W.D. Mich 1998)).  In *Young v. Nationwide Life Insurance Co.*, 183 F.R.D. 502 (S.D. Tex. 1998), the district court—relying on *Castano*— denied certification despite acknowledging defendants' alleged egregious conduct, because "individual reliance is an essential element of Plaintiffs' claims" and "[t]he disparate circumstances

of the two named class representatives alone demonstrate that this element will vary substantially from Plaintiff to Plaintiff, thus precluding class certification for failure to satisfy the predominance requirement of Rule 23" *Young,* 183 F.R.D. at 507.  Each parent must individually prove reliance under Texas law.

19.     The principle articulated by these courts applies with full force here: parents at fencing events made their payment decisions based on widely varying exposures to written and disclosed policies, advertising, registration communications, coach recommendations, and prior participation history. The individualized inquiry into who saw what, when, and why they paid cannot be resolved through common evidence. The proposed class definition—by making reliance a condition of membership—does not solve this problem; it embeds it into the class itself, making ascertainability impossible without conducting exactly the kind of plaintiff-by-plaintiff mini-trial that the Fifth Circuit's predominance doctrine prohibits.

### C.     RULE 23(a) REQUIREMENTS ARE NOT MET

#### 1.     **Numerosity**

20.     Plaintiffs speculate there are about "one thousand" putative members by inferring from total athlete counts, but they provide no evidence tying that estimate to their reliance-laden definition. Plaintiffs rely on total participation figures—"over 2,300" athletes in March 2023 and "over 2,200" in November 2023—and then estimate "approximately one thousand" parents as putative class members . Athlete counts cannot establish how many parents both meet the definition and claim injury based on alleged reliance. Plaintiffs' own formulation requires individualized inquiry, undermining numerosity supported by competent proof.

21.     The central defect in a numerosity argument based on a total athlete roster or athlete enrollment figure is that such a figure measures a population, not the class. Where the class definition requires proof of reliance and injury as conditions of membership, many—potentially

most—members of a total athlete population will not qualify.  Especially here, where plaintiffs have failed to, and in fact cannot, allege that a single athlete competed against a male to female athlete.[5]  Counting all athletes therefore inflates the apparent class size by including people who are not, and could never be, members of the class as defined. Courts in the Fifth Circuit have repeatedly rejected this mode of reasoning.

22.     In *Van v. Anderson*, No. CIV.A. 3:99CV0311-P, 2001 WL 803722, at *3 (N.D. Tex. July 12, 2001), the court squarely addressed an attempt to use a population-level statistic—specifically, a census estimate of Asian-Pacific Islanders in Dallas County—to establish class size. The court rejected the exhibit as "unauthenticated, inadmissible" and not "evidence of the class size" at all, explaining that "a plaintiff cannot speculate that a class is numerous."  *Van*, 2001 WL 803722, at *3.  More fundamentally, the court found that the proposed group of potential class members "cannot qualify as potential class members: their existence is dependent on sheer speculation that they suffered discrimination." *Id*.  Because individualized inquiry was required to determine whether each member of the broader population had actually been harmed, the population figure was meaningless as a measure of the class.  Such is the same here, because it is sheer speculation that a potential class member competed against a male to female athlete or otherwise faced the allegations raised by plaintiffs.

23.     Relatedly, the *Castano* court noted that "until plaintiffs decide to file individual claims, a court cannot, from the existence of injury, presume that all or even any plaintiffs will pursue legal remedies."  *Castano*, 84 F.3d at 748.  This critical observation applies with equal force to numerosity: the mere existence of a large group of athletes cannot support an inference

---

[5] Plaintiffs have not identified a single match in which one of the proposed class athletes competed against a male-to-female athlete at either of the Fort Worth 2023 NAC competitions.

that they all suffered the specific reliance-based injury the class definition requires.  *In re Ford Motor Co. Bronco II Product Liability Litigation*, 177 F.R.D. 360 (E.D. La. 1997) reinforced the same principle specifically in the fraud and misrepresentation context.  The court held that in a common law fraud action, "each class member would have to demonstrate his individual reliance upon the alleged misrepresentations, causing individual, not common, fact issues to predominate" *In re Ford Motor Co.*, 177 F.R.D at 374.  The same holds true for a DTPA false-advertising complaint.  *See Henry Schein, Inc.*, 102 S.W.3d at 693-94 ("reliance is an element of" a DTPA claim).  Plaintiffs argued "that individualized inquiry on the reliance issue could be avoided by use of a classwide presumption of reliance[,]" but the court rejected this approach.  *In re Ford Moto Co.*, 177 F.R.D at 374-75.  This has direct significance for numerosity: if every class member must individually prove reliance, then a plaintiff who estimates class size by counting all vehicle purchasers—without any showing of how many actually relied—has not provided a competent estimate of the class defined.

24.     The Fifth Circuit requires that district courts conduct a "rigorous analysis" of each Rule 23 prerequisite, including numerosity.  *Ward v. Hellerstedt*, 753 Fed. Appx. 236, 238 (5th Cir. 2018).  That rigor means a court cannot simply accept a raw athlete count without examining what that number actually represents relative to the class definition.  Where the class definition incorporates individualized elements—such as proof that a particular athlete relied on a specific representation and suffered injury as a result—any estimate must grapple with how many of the broader population satisfy those conditions.  The total number of athlete participants is a starting point, not an answer to the question of numerosity, and a bare headcount provides no probative information.

2.     **Commonality**

25.     Plaintiffs list broad questions (Title IX, deceptive advertising, alcohol marketing)

- 13 -

and assert "uniform" policies, but resolution of liability hinges on individualized facts: who received which representation; whether any "misrepresentation" was material to a given parent; whether a particular athlete competed in an event allegedly impacted; and what injury, if any, resulted. Plaintiffs' commonality section posits uniform questions regarding alleged Title IX violations, false advertising of sex-segregated events, alcohol marketing, DTPA liability, and class-wide damages . Those are abstract merits questions, not a "common contention" capable of resolution "in one stroke" for all members as defined. *See Dukes*, 564 U.S. at 350; *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 838 (5th Cir. 2012).   Their own reliance-centered class definition confirms commonality is illusory.

26.     The Fifth Circuit has explained that "contrary to prior Fifth Circuit caselaw that 'the fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality,' the Supreme Court held [in *Dukes*] that 'commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'"   *In re Rodriguez*, 695 F. 3d 360, 367 n.9 (5th Cir. 2012).   The Fifth Circuit has also observed that because the commonality test focuses on issues that are "central to the validity of each of the claims," a court must analyze commonality through the lens of "the elements of the underlying cause of action."   *Flecha v. Medicredit, Incorporated*, 946 F.3d 762, 766-67 (5th Cir. 2020).   The Fifth Circuit has reinforced that during a commonality analysis, the district court must "address actual or potential differences in purported class members' individual circumstances and claims" and that failure to adequate analyze the defendant's individualization arguments is itself reversible error.   *Chavez v. Plan Benefit Services, Inc.*, 957 F.3d 542, 548-49 (5th Cir. 2020).   The Fifth Circuit has rejected the proposition that merely identifying common questions suffices: "The

court's synthesis … would write the predominance requirement out of [Rule 23], and any common issue would predominate if it were common to all the individual trials." *Castano*, 84 F.3d 734, 745. A class cannot be certified where "individual issues of reliance and causation" would predominate. *Sandwich Chef*, 319 F.3d 205, 210-220 (2003).

### 3. **Typicality**

27. Plaintiffs' three proposed representatives span different events and tournaments and assert differing exposures to purported policies and marketing. Plaintiff Zhao's daughter fenced Y14 Women's Foil at both tournaments; Plaintiff Hausheer's daughter fenced Y14 and Cadet Women's Épée in November; Plaintiff Stone's daughter fenced Y14/Cadet Women's Saber in March and Y14/Cadet/Junior Women's Saber in November . These differing sports experiences, communications, and timing create distinct reliance, causation, and damages profiles, defeating typicality under Plaintiffs' own theories.

28. The Fifth Circuit has consistently denied class certification where individualized evidence—not a common course of conduct—drives each plaintiff's claim. Different events, different tournaments, different competitive divisions, and different timing mean that each representative's experience requires its own individualized examination of what policies applied, what marketing was received, and what damages resulted. *See, e.g., Crutchfield v. Sewerage and Water Board of New Orleans*, 829 F.3d 370, 376-79 (5th Cir. 2016) (affirming denial of certification where plaintiffs sought to "recover different damages caused by different acts committed by different defendants at different times"). Typicality failure flows form plaintiffs' own theories.

### 4. **Adequacy**

29. Adequacy fails where proposed representatives advance claims and relief that conflict with other absent members' interests, especially where some families may favor inclusive

eligibility or did not rely on alleged representations. Plaintiffs also assert pursuit of injunctive relief alongside damages, which can create conflicts about litigation strategy and settlement priorities. Plaintiffs state the representatives seek both monetary damages and injunctive relief and claim no conflicts exist with absent members . On this record, adequacy is unproven, and conflicts are plausible given the diverse views and circumstances in a nationwide fencing community.

30.     The Fifth Circuit has vacated class certification because substantial conflicts existed among the class members regarding the relief sought. *See Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 315-16 (5th Cir. 2007).  The court held that where class members were affected in "dramatically different ways," the conflict was serious enough to vacate certification and require full reconsideration of adequacy on remand.  *Id.*, 315.  This principle applies forcefully where some absent class members may favor inclusive eligibility definitions, may never have relied on any alleged representations, or may have received benefits rather than harm from the challenged conduct.  In *Fund Texas Choice v. Deski*, 738 F. Supp. 3d 835 (W.D. Tex. 2024), the court recently denied class certification under Rule 23(a)(4) in part because of "the varying views of prosecutors on the priority of enforcing Texas's abortion laws"—a situation analogous to a nationwide fencing community (following federal mandates) with diverse perspectives on eligibility and litigation goals.  *Deski*, 738 F. Supp. 3d 835, 843.  Where class members "may not fully support the law politically," or have competing views on the priority of pursing challenged conduct, one representative cannot adequately represent the entire group. *Id.*, at 841-42.  And, a hybrid class to certify for injunctive relief on the one hand and for damages on the other has been specifically rejected by the Fifth Circuit because the pursuit of both forms of relief itself creates the conflict.  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420-26 (5th Cir. 1998); *Collindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 369-71 (S.D. Tex. 2006).

**D.      RULE 23**(b)**(3) PREDOMINANCE AND SUPERIORITY ARE NOT SATISFIED**

1.      **Predominance**

31.      Plaintiffs' own presentation shows individual issues predominate.    The predominance inquiry "requires a court to consider 'how a trial on the merits would be conducted fi a class were certified'" and that it "entails identifying the substantive issues that will control the outcome, assessing which issues will predominated, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."  *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (quotation marks and citation omitted)).  "The predominance requirement of Rule 23(b)(3) is far more demanding [than commonality under Rule 23(a)] because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* (quotation marks and citation omitted).

32.      Applying this framework to this matter, a trial would necessarily devolve into a series of mini-trials examining, for example: which specific USFA policies were available and each parent read before registering for each tournament; which emails they received and when; whether they attended any informational meetings or relied on word-of-mount from coaches or other parents; and whether their payment decisions were actually driven by any representation versus other motivations such as their child's athletic goals.  The Fifth Circuit has reinforced that a district court "must perform sufficient analysis to determine that class members' fraud claims are not predicated on proving individual reliance," and that "[i]f the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement."  *Unger v. Amedisys Inc.*, 401 F.3d 316, 321-22 (5th Cir. 2005) (citations omitted).  The court further emphasized that "Rule 23 requires the court to 'find,' not merely assume, the

facts favoring class certification." *Id.*, at 321.

33.    <u>Reliance and Exposure</u>: Membership and liability turn on whether each parent saw and relied upon specific representations—published policies, registration pages, emails, postings, or word-of-mouth—which vary across tournaments and events. Plaintiffs' theory rests on payments made "in reliance on USFA's representations" and "uniform misrepresentations," yet the class definition itself requires proof of individualized reliance. The means by which each parent became aware of relied on USFA's core policy or registration terms varied substantially, and the class definition expressly encompasses parents who may have learned of USFA's representations through any channel, including published policies and word-of-mouth. Even if Plaintiffs propose that common proof can establish reliance for all members without individualized inquiry, *Sandwich Chef* rejected a similar theory—the court held that even if invoices contained the same misrepresentation, individual policyholders' knowledge and actual reliance on those invoices required individual proof. *Sandwich Chef*, 319 F.3d 205, 220-221. Here, the proposed class members' actual knowledge and actual reliance on USFA's representations and policies will require individual proof. Reliance will vary based on whether each plaintiff read specific materials or were informed of specific policies or not. *McManus*, 320 F.3d 545, 549-550 (5th Cir. 2003) (certification reversed because "individual questions of reliance precluded class certification of […] fraudulent concealment, negligent misrepresentation, and breach of express warranty claims.")

34.    <u>Injury and Causation</u>: Determining whether any athlete fenced against, or was even placed in brackets with, a challenged competitor requires event- and bout-specific proof, and many claimed injuries are non-economic, subjective, or derivative of differing tournament experiences. Plaintiffs assert injuries from alleged inclusion of "biological males" in women's events and from

alcohol sponsorships "at youth tournaments," positing uniform effects, without basis or evidence, across March and November NACs .

35.    Damages: Plaintiffs seek recovery of registration, travel, and lodging, but amounts, sources of payment, third-party reimbursements, and post-event benefits vary family by family. Plaintiffs cite out-of-pocket expenditures such as "registration fees, travel costs, and lodging expenses," yet argue that individualized calculations do not defeat predominance.

36.    These individualized elements overwhelm any purported common question, particularly given Plaintiffs' reliance-embedded class definition.

2.    **Superiority**

37.    The *Castano* court found that superiority was lacking where "individual damage claims are high, and punitive damages are available," and where "the prevailing party may recover attorneys' fees under many consumer protection statutes," because these factors made individual suits feasible and class treatment not superior to individual adjudication.  *Castrano*, 84 F.3d 734, 748-49.  Superiority is lacking for additional reasons.

38.    Contractual Forums and Arbitration: Plaintiffs' filings ignore that agreed dispute-resolution mechanisms make individual proceedings in designated forums or arbitration superior to a court class action. Plaintiffs attempt to sidestep this by urging certification despite pending motions. Plaintiffs contend venue and jurisdiction challenges "do not preclude" certification and invite the Court to proceed before resolving those threshold motions.

39.    The Fifth Circuit has made clear, at least in reference to FLSA collective actions, that contractual dispute-resolution mechanisms must be addressed ***before*** a court proceeds to certify a class.  *Edwards v. Doordash, Inc.*, 888 F.3d 738, 742-43 (5th Cir. 2018) ("arbitrability claims should be resolved at the outset, even before consideration conditional class certification," affirming that arbitrability is "a 'threshold question' to be determined 'at the outset' […] consistent

- 19 -

with the 'national policy favoring arbitration.'").  The reasoning in *Edwards* expressed extended beyond its specific facts—the court rejected attempts to distinguish the rule based on case-specific difference such as the number of named plaintiffs or whether the validity of the arbitration agreement was disputed.  *Id.  Edwards* remains persuasive for analogous threshold issue.

40.    Manageability: Administration would entail individual inquiries into reliance, communications, event participation, bout histories, travel choices, and damages. Plaintiffs' proposal offers no manageable plan beyond referencing "USFA's records." Plaintiffs assert that "USFA's records should readily identify the class members" and that minimal discovery would suffice to contact parents and guardians . But those records do not reveal who relied on which representation or why expenses were incurred.  The court must decline to entertain Plaintiffs' "figure-it-out-as-we-go-along" approach.  *See MP Vista, Inc. v. Motiva Enterprises, LLC*, 286 F.R.D. 299, 313 (E.D. La. 2012) (the court rejected a plan that "simply do[es] not provide a workable method for managing this case and largely ignores the specifics of how a trial might proceed if the parties were unable or unwilling to agree to a settlement.").  Furthermore, a class whose damages depend on how much each member spent on travel, entry fees, coaching, or other event-related costs that vary by person, by event, and by individual choice cannot satisfy the standards through reference to organizational records alone.  *See Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 604-05 (5th Cir. 2006); *Allison*, 151 F.3d 402, 419-21 and *Bell Atlantic Corp.*, 339 F.3d 294, 301-02.

**E.    RULE 23(b)(2) IS INAPPLICABLE**

41.    Plaintiffs briefly invoke Rule 23(b)(2) standards but press individualized monetary relief based on personal reliance and expense decisions, which predominates over any prospective, indivisible injunction. Plaintiffs describe Rule 23(b)(2) and claim Defendants acted on grounds generally applicable to the class while simultaneously seeking damages for registration, travel, and

lodging . That relief is not incidental and defeats (b)(2) certification.  If "separate hearings are required to determine each class member's monetary damages, monetary relief predominates over injunctive relief."  *Corley v. Entergy Corp.*, 222 F.R.D. 316 (2004).

**F.      PLAINTIFFS' MERITS ARGUMENTS CANNOT SALVAGE CERTIFICATION AND UNDERSCORE INDIVIDUAL ISSUES**

42.      Plaintiffs hinge commonality and predominance on broad merits propositions (e.g., Title IX, DTPA, "uniform" policies and advertisements). Plaintiffs frame common questions as whether USFA violated Title IX, engaged in deceptive advertising about sex-segregated events, and conducted unlawful alcohol marketing at youth tournaments, asserting uniform policies across both NACs . Those assertions beg core individualized inquiries regarding exposure, reliance, causation, injury, and defenses—issues that cannot be resolved "in one stroke" class-wide under Plaintiffs' own definitions and theories.

**G.      THE COURT SHOULD RESOLVE THE FORUM-SELECTION CLAUSE AND ARBITRATION MOTIONS BEORE ANY CLASS RULING**

43.      Plaintiffs ask the Court to defer or discount threshold motions and proceed to Rule 23. Plaintiffs argue jurisdiction and venue challenges, and Ted Stevens Act issues, should not forestall certification and may be addressed later . The more prudent course is the opposite: decide the motion to enforce the forum-selection clause and the motion to compel arbitration first. If granted, those rulings will eliminate or significantly narrow any class inquiry, prevent inconsistent obligations, respect party agreements, and conserve judicial resources.

**H.      RESPONSE TO SPECIFIC POINTS IN PLAINTIFFS' MEMORANDUM**

44.      <u>Numerosity via Athlete Counts</u>: Plaintiffs rely on total NAC participation figures to extrapolate "approximately one thousand" parents as class members . That estimate does not align with their reliance-based definition and cannot establish numerosity without individualized determinations of exposure and reliance.

45.    "Uniform" Misrepresentations: Plaintiffs assert Defendants "uniformly represented the events as sex-segregated competitions" and that policies "were uniform across the March and November 2023 NACs" . Even if standardized language existed, Plaintiffs' theory requires proof that each parent saw, understood, and relied upon that language in choosing to incur expenses—a person-specific inquiry that defeats predominance.

46.    Title IX as Common Issue: Plaintiffs contend that whether USFA was subject to Title IX and "violated Title IX by allowing biological males to compete in women's events" is a common question . That merits question cannot be certified where class membership and injury turn on individualized reliance and where the proposed remedies are individualized monetary claims.

47.    DTPA Reliance and Causation: Plaintiffs' DTPA theory centers on alleged deceptive advertising of "sex-segregated" events and payments made "in reliance" on those statements . Those elements vary by class member and predominate.

48.    Alcohol Marketing Allegations: Plaintiffs allege "alcohol sponsorships at these youth tournaments, including visible branding and member benefits from an alcohol distributor, without restricting access or advertising to minors" . Exposure, perception, and causation for any asserted injury differ substantially among venues, days, and families, defeating common resolution.

49.    Ascertainability via "USFA Records": Plaintiffs claim that "USFA's records" will identify class members and that only "minimal discovery" is required to contact them . Those records cannot identify the reliance element embedded in the class definition; ascertainability therefore fails.

50.    Pending Venue/Jurisdiction Motions: Plaintiffs assert these threshold issues "do not

- 22 -

preclude class certification" and may be sequenced later . The Court should resolve them first because they control forum and arbitrability.

51.    <u>Ted Stevens Act</u>: Plaintiffs argue that Defendants' Ted Stevens Act contentions "go to the merits" and should not block certification . Regardless of merits, those arguments further show that class-wide adjudication is neither necessary nor efficient pending threshold rulings that could dispose of or reframe claims.

### III.    CONCLUSION

52.    Plaintiffs' motion for class certification[6] is premature given Defendants' pending Rule 12 motions,[7] motion to enforce the forum-selection clause,[8] and motion to compel arbitration,[9] and the Court should defer any Rule 23 ruling until after deciding Defendants' pending motions.  Should any claim remain before the Court thereafter, the Court should order targeted discovery and briefing focused on ascertainability, reliance/exposure variability, and manageability before entertaining any renewed class motion.

### IV.    PRAYER

Based on the foregoing, Defendants pray that the Court deny Plaintiffs' motion for class certification, and grant Defendants all such other and further relief to which they may be entitled in equity or law.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _____

---

[6] [Dkt. 74].

[7] [Dkts. 24-37, 39, 40].

[8] [Dkt. 38].

[9] [Dkt. 65].

Robert Lemus
Texas Bar No.: 24052225
rlemus@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4869 - Telephone
(713) 961-3938 - Facsimile

**ATTORNEYS FOR DEFENDANTS
UNITED STATES FENCING
ASSOCIATION, DONALD
ALPERSTEIN, PHIL ANDREWS,
DAVID ARIAS, LAURYN DELUCA,
KAT HOLMES, and DAMIEN
LEHFELDT**

- 25 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the April 21, 2026, a true and correct copy of the foregoing instrument has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

*/s/ Robert Lemus*
Robert Lemus