**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Julia Ya Zhao, Frederick Hausheer, Hongran Stone, individually and on behalf of all others similarly situated | ) ) ) ) | |
| Plaintiffs | ) | |
| v. | ) ) | |
| USA FENCING ASSOCIATION a Colorado Corporation | ) ) ) | Civil Case No.:4:25-cv-00931-O |
| and | ) ) ) | |
| Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, Kat Holmes, individually | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY TO OPPOSITION TO**
**MOTION FOR CLASS CERTIFICATION**

**ARGUMENT**

**A. Certification May Be Decided Without Resolving Pending Motions.**

1.      Fed. R. Civ. P. 23(c)(1)(A) directs the Court to determine class certification at an early practicable time. The Rule contains no mandate that threshold motions must be resolved before the Court analyzes certification. The Fifth Circuit requires district courts to conduct a rigorous analysis of Rule 23 prerequisites, but this rigor does not translate into a requirement that other motions be resolved first. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Indeed, the decision to certify lies within the Court's discretion. *See Cruson*, 954 F.3d at 253.

1

2.	Defendants cite *Edwards v. DoorDash* for the proposition that arbitrability must be decided before certification. 888 F.3d 738, 742 (5th Cir. 2018). However, *Edwards* arose in the FLSA conditional certification context; it does not establish some bright line rule applicable to Rule 23(b)(3) certification. *Id.* at 742-43. The FLSA conditional procedure operates differently from Rule 23(b)(3) certification, and *Edwards* cannot be imported wholesale into the Rule 23 framework without careful analysis of whether the reasoning applies.

3.	The Court possesses tools to manage certification and threshold issues. First, it can certify subject to the condition that members bound by valid arbitration agreements will be excluded from the class OR placed in a subclass. Second, if arbitration or forum-selection issues affect only a subset of potential class members, the Court can certify separate subclasses. Third, the Court can structure notice and opt-out procedures to account for arbitration or forum-selection issues. Fourth, a certification decision does not foreclose the Court's ability to later modify the class definition based on the outcome of threshold motions. *See Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 318-19 (5th Cir. 2024); *Nova Scotia Health Employees' Pension Plan v. McDermott Int'l, Inc.*, No. 24-20326, 2025 U.S. App. LEXIS 25866, at *17 (5th Cir. Oct. 3, 2025).

**B.	The Proposed Class Is Ascertainable Based on Objective Criteria.**

4.	The Fifth Circuit requires that a class be adequately defined and clearly ascertainable. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.5 (5th Cir. 2007). However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding. *See Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019).

**i.	The Class Is Defined by Objective Criteria.**

5.	The proposed class is defined as: parents and guardians who paid fees for minors participating in women's or girls' events at the Fort Worth NACs during the specified dates. The existence of these documentary criteria satisfies the ascertainability requirement without requiring

any inquiry into subjective mental states or individual reliance. *See Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015). Defendants' argument that reliance embedded in the class definition renders the class unascertainable is actually an argument about predominance – whether individual reliance inquiries will predominate over common issues. A class can be ascertainable even if proving the elements of the underlying claims requires individualized proof.

### ii.    Reliance Is Not Part of the Class Definition.

6.    The phrase "in reliance" in the class definition characterizes an injury theory and causal nexus between Defendants' conduct and the harm suffered by class members. It does not establish a membership criterion that must be adjudicated on an individual basis to determine who qualifies for the class. Class membership is determined by the objective facts: paying fees for minors in women's or girls' events at the specified NACs.

7.    Should the Court harbor any concern regarding the "in reliance" language, the class definition can be refined to remove that phrase while preserving the identical class of parents and guardians who paid fees for minors in women's or girls' events at the two specified NACs. Such refinement is routine in class action practice and does not warrant denial of certification. *See Zaragoza*, 112 F.4th at 318-19. Plaintiffs can refine the class definition to remove "in reliance" and offer the following definition: All parents or legal guardians who paid registration fees or other event-related charges to register a minor athlete for participation in events designated as "women's" or "girls'" at the March 3-6, 2023 or November 10-13, 2023 North American Cups in Fort Worth, Texas, hosted or sanctioned by USA Fencing Association.

### C.  The Proposed Class Satisfies All Rule 23(a) Requirements.

8.    The proposed class satisfies the **numerosity** requirement of Rule 23(a)(1). *See Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). With approximately 1,000 parents as potential class members, the class far exceeds the threshold to satisfy numerosity. Beyond sheer numbers, the Fifth Circuit instructs courts to consider the geographical dispersion of the class, the ease with

which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *Id*. The NAC tournaments are national competitions that attract participants from across the U.S., resulting in significant geographic dispersion. This dispersion makes joinder impracticable. The nature of this action demonstrate that joinder would be impracticable. A parent who paid registration fees, travel costs, and lodging expenses would face litigation costs far exceeding potential recovery in an individual action. Defendants' argument the numerosity estimate is speculative conflates numerosity with merits analysis. Numerosity focuses on whether joinder of all members is impracticable, not on whether every member of a broader population will ultimately satisfy the elements of the underlying claims. *Ibe*, 836 F.3d at 528.

### ii.    Commonality.

9.    Commonality requires that class members' claims depend upon a common contention that is capable of class-wide resolution, meaning that Determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020). Even a single common question of law or fact can suffice to establish commonality, so long as resolution of that question will resolve an issue that is central to the validity of each class member's claims. *Ibe*, 836 F.3d at 528.

10.    Several common questions exist that satisfy this standard: (1) whether USFA violated Title IX by allowing biological males to compete in women's events while receiving federal funding; (2) whether USFA falsely advertised women's or girls' events while intending to include biological males; (3) whether USFA's alcohol marketing was unlawfully targeted to minor athletes; (4) whether USFA's policies and practices violated the Texas Deceptive Trade Practices Act; and (5) whether class members sustained damages and the proper measure of such damages.

11.    USFA's alleged misrepresentations about sex-segregated competitions were uniform and directed at all class members through published policies, registration materials, and tournament advertising. All class members paid fees in reliance on USFA's representations.

4

Defendants' arguments regarding individualized facts are more appropriately addressed in the predominance analysis under Rule 23(b)(3), not in the commonality analysis under Rule 23(a)(2). Commonality requires only that common questions exist.

### iii.    Typicality.

12.    The typicality inquiry focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023). The critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

13.    The named plaintiffs are parents of minor athletes who participated in women's or girls' events at the March and/or November 2023 NAC tournaments. Their claims arise from the same alleged conduct by USFA: implementing a transgender policy without disclosure and promoting alcohol sponsorships at youth tournaments. The named plaintiffs, like all class members, paid registration, travel, lodging, or other fees in reliance on USFA's representations. Any factual differences among class members, such as the specific amounts paid or the specific events in which their children participated, do not defeat typicality under Fifth Circuit precedent. *See Adickes v. Hellerstedt*, 753 F. App'x 236, 246-47 (5th Cir. 2018).

### iv.    Adequacy of Representation.

14.    The Fifth Circuit considers three factors for adequacy: (1) the zeal and competence of the representative's counsel; (2) the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). Counsel for the named plaintiffs possess the requisite zeal and competence to represent the class. Ni, Wang & Massand, PLLC and

5

Mahdavi, Bacon, Halfhill & Young, PLLC have significant experience in complex litigation and have demonstrated their competence through thorough pleadings and opposition to Defendants' multiple motions. The named plaintiffs have shown their willingness and ability to take an active role in the litigation, and there are no conflicts of interest between named Plaintiffs and the class.

15.    When a class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class, but not all conflicts of interest will defeat adequacy. *See Angell*, 67 F.4th at 737. Here, Plaintiffs are not proposing to waive any claims. The relief sought is complementary; monetary damages compensate class members for fees paid in reliance on misrepresentations, while injunctive relief prevents future violations. Defendants' argument that some families may favor inclusive eligibility is speculative.

### D.  Common Questions Predominate Over Individual Issues.

16.    The predominance inquiry asks whether the common issues are more prevalent or important than the individual issues. *See Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 347-48 (5th Cir. 2012). It requires courts to consider how a trial would be conducted if a class were certified. Considering whether questions of law or fact common to class members predominate begins with the elements of the underlying cause of action.

### i.    Central Liability Issues Can Be Resolved on a Class-Wide Basis.

17.    Several central liability issues can be resolved on a class-wide basis: (1) whether USFA violated Title IX by allowing biological males to compete in women's events while receiving federal funding; (2) whether USFA's advertising of events as sex-segregated was deceptive under the Texas Deceptive Trade Practices Act; (3) whether USFA breached its contracts with members by failing to maintain sex-segregated competitions as promised; and (4) whether USFA's alcohol marketing was unlawfully targeted to minor athletes.

18.    This case is distinguishable from *Castano*, *Sandwich Chef*, and *McManus*. USFA's alleged misrepresentations about sex-segregated competitions were uniform and directed at all

class members through published policies, registration materials, and tournament advertising. Unlike cases involving varying oral presentations or individualized communications, here the omissions were uniform at both tournaments. That is, USFA represented events as sex-segregated through standardized event designations while uniformly failing to disclose the actual policy permitting biological males under 16 to participate.

### ii.    Individualized Damages Do Not Defeat Predominance.

19.    The Fifth Circuit has consistently held that individualized damages calculations will not preclude a finding of predominance. *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020); *Ibe*, 836 F.3d at 529 ("Generally, individualized damages calculations will not preclude a finding of predominance."). The predominance inquiry can be satisfied if the proceedings are structured to establish liability on a class-wide basis, with separate hearings to determine, if liability is established, the damages of individual class members. *See Chavez v. Plan Ben. Servs., Inc.*, 108 F.4th 297, 318 (5th Cir. 2024). A class may be divided into subclasses for adjudication of damages, and Rule 23(c)(4) explicitly recognizes the flexibility that courts need in class certification by allowing certification with respect to particular issues. Here, while class members may have paid different amounts for registration fees, travel costs, and lodging expenses, these individualized damages calculations do not defeat predominance because the common liability issues predominate. *See also Cruson*, 954 F.3d at 258 (finding that claimed damages of excessive charges can be reckoned by fairly straightforward math from the defendant's files).

### iii.    Plaintiffs' Damages Model Is Consistent with Their Liability Theory.

20.    Plaintiffs' damages theory involves refunds and restitution of fees paid to USFA and related expenses incurred in reliance on USFA's uniform event designations. The liability theory rests on USFA's uniform misrepresentation through event designations and uniform omission of the actual participation policy. Where determinations on liability and damages have been bifurcated in accordance with Rule 23(c)(4) and the district court reserves all issues

concerning damages for individual determination, concerns about damages models are substantially reduced. *See In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014). Plaintiffs propose precisely this structure: establish liability on a class-wide basis through common proof regarding USFA's uniform representations and omissions, then determine individual damages through objective calculation of documented fees and expenses.

### E. Plaintiffs and Class Members Have Article III Standing.

21.    Where determinations on liability and damages have been bifurcated in accordance with Rule 23(c)(4) and the district court reserves all issues concerning damages for individual determination, concerns about damages models are substantially reduced. *See In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014). The Court may establish liability on a class-wide basis through common proof regarding USFA's uniform representations and omissions, then determine individual damages through objective calculation of documented fees and expenses.

#### i.    Economic Injury Is a Quintessential Concrete Harm.

22.    "Economic injury is a quintessential harm that federal courts have long been empowered to remedy." *Jackson Mun. Airport Auth. v. Harkins*, 98 F.4th 144, 148 (5th Cir. 2024). Article III standing requires a concrete injury even in the context of a statutory violation. *See Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024). Plaintiffs have alleged concrete economic harm: they paid registration fees, travel costs, and lodging expenses in reliance on USFA's misrepresentations that the competitions were sex-segregated. This economic injury is concrete and particularized. *See Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

#### ii.    Plaintiff's Injury is Not Contingent on Direct Male to Female Competition.

23.    The injury is not contingent upon whether plaintiffs' children directly competed against male-to-female athletes.[1] Rather, the injury arises from the misrepresentation itself. When

---

[1] It makes no difference whether any participant fenced against a biological male. The inclusion of biological males in the tournament automatically affects Plaintiff. A fencing tournament consists of (1) the pool bouts and (2) the direct

parents paid to enter what was represented as a sex-segregated women's and girls' competition, they purchased a specific service. The misrepresentation or omission regarding the sex-segregated nature of the event constitutes an injury at the point of transaction and participation decision. This is analogous to a consumer purchasing a product based on false advertising. The injury occurs when the consumer pays for the product, not when the defect is discovered through use.

### iii.    Plaintiffs' Injuries are Tangible Rather than Bare Statutory Violations.

24.    Defendants cite *TransUnion* and *Spokeo* for the proposition that statutory violations alone do not establish standing. While correct, the principle does not apply. *TransUnion* and *Spokeo* involved allegations of statutory violations, but without alleging concrete economic injury. Plaintiffs' case is fundamentally different. Plaintiffs do not rest on a bare statutory violation; they allege actual monetary losses-registration fees, travel expenses, and lodging costs-incurred in reliance on USFA's representations and omissions; these are real, quantifiable economic harms. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021).

### iv.    The Class Definition Ensures Only Injured Members Recover.

25.    The Fifth Circuit has not yet decided whether standing must be proven for unnamed class members in addition to the class representative. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020). However, regardless of which analytical approach applies, Plaintiffs' class is anchored in a concrete, easily identifiable economic injury that can be administered to ensure only injured members recover. *See In re Deepwater Horizon*, 739 F.3d 790, 800-01 (5th Cir. 2014). The class definition, parents and guardians who paid registration fees and incurred travel and lodging expenses for participation in the USFA events, limits recovery to those who suffered the alleged economic injury. Only those who paid for the events will be members of the class.

---

elimination bout which is arranged based on the result of the pool bout. A biological male who competes in one pool will affect all fencers in that pool during pool bouts because it affects the overall rankings. This disruption also affects fencers who did not fence the biological male in pool bouts because direct elimination seeding is based on overall pool results.

**F.  Class Resolution Is Superior to Other Methods and the Class Is Manageable.**

    **i.  Superiority Factors Support Certification.**

26.  Rule 23(b)(3) requires that class resolution be superior to other available methods for fair and efficient adjudication of the controversy. *See Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 347-48 (5th Cir. 2012). Several factors weigh decisively in favor of class resolution. First, individual class members have little interest in controlling separate actions given the relatively modest individual damages compared to litigation costs. The cost of individual litigation would likely exceed the potential recovery for most class members, making individual actions impractical. Second, there is no indication of other litigation concerning this controversy, suggesting that concentration of the claims in a single class action is efficient and appropriate. Third, the events giving rise to the claims occurred in Fort Worth, Texas, making this forum appropriate for resolving the dispute. Fourth, there are no unusual difficulties in managing this class action. The class is defined by objective criteria that can be verified through USFA's records.

    **ii.  The Class Is Manageable Through Records and Standardized Procedures.**

27.  USFA maintains registration and payment records for all class members. These records provide a reliable and efficient mechanism for identifying class members and calculating damages. Class members who participated in the two NAC events can be readily identified through USFA's database. *See Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015). Damages can be calculated using a methodology based on documented expenses: registration fees charged by USFA for each NAC event; documented travel expenses; and documented lodging expenses.

28.  Plaintiffs seek certification under Rule 23(b)(3), not Rule 23(b)(2). The primary relief sought is monetary damages for the registration, travel, and lodging expenses incurred by class members. Monetary relief predominates in a class action unless it is incidental to requested injunctive or declaratory relief. *See Washington v. CSC Credit Servs.*, 199 F.3d 263, 269 (5th Cir. 2000). Here, monetary damages predominate, making Rule 23(b)(3) the appropriate framework.

Dated: May 4, 2026                          Respectfully Submitted,

*/s/ Timothy T. Wang*
Timothy T. Wang
TX Bar #： 24067927
twang@nilawfirm.com
**Ni, Wang & Massand, PLLC**
8140 Walnut Hill Ln
Suite 615
Dallas, TX 75231
(972) 331-4600

Charles Xiaolin Wang (admitted *pro hac vice*)
DC Bar #： 470265
cwang@mbhylaw.com
**Mahdavi, Bacon, Halfhill & Young, PLLC**
11350 Random Hills Rd.
Suite 700
Fairfax, Virginia 22030
(703) 420-7620

James T. Bacon (admitted *pro hac vice*)
VA Bar #： 22146
jbacon@mbhylaw.com
**Mahdavi, Bacon, Halfhill & Young, PLLC**
11350 Random Hills Rd.
Suite 700
Fairfax, Virginia 22030
(703) 420-7620

*Counsel for Plaintiffs Julia Ya Zhao,*
*Frederick Hausheer, Hongran Stone,*
*individually and on behalf of all others*
*similarly situated*

## USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to Local Rule 7.2, this brief has been prepared with the assistance of generative artificial intelligence.

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, a true and correct copy of the foregoing has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.


*/s/ Timothy T. Wang*
Timothy T. Wang