**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, and Kat Holmes, individually.<br><br>　　　*Defendants*. | Civil Action No. 4:25-cv-00931-O |

**DEFENDANTS' RESPONSE TO THE MOTION FOR WITHDRAWAL OF COUNSEL FOR PLAINTIFFS, SUBJECT TO AND WITHOUT WAIVER OF THEIR MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, TO TRANSFER VENUE, COMPEL ARBITRATION AND ALL OTHER DEFENSES**

Defendants United States Fencing Association ("USFA"), Donald Alperstein ("Alperstein"), David Arias ("Arias"), Phil Andrews ("Andrews"), Damien Lehfeldt ("Lehfeldt"), Lauryn Deluca ("Deluca"), and Kat Holmes ("Holmes") (collectively, "Defendants") file their Response to the Motion for Withdrawal of Counsel for Plaintiffs, (Dkt. 79), subject to and without waiver of their Motions to Dismiss for Lack of Personal Jurisdiction, to Transfer Venue, Compel Arbitration (Dkts. 24–40, 65], and all other defenses and in support, would show:

## I.   USE OF GENERATIVE ARTIFICAL INTELLIGENCE

1.     As required by Local Rule 7.2(f), Defendants hereby disclose unto the Court that its counsel prepared this Motion and brief with assistance of generative artificial intelligence.

## II.   INTRODUCTION

2.     Plaintiffs move for leave to permit Charles Xiaolin Wang to withdraw as counsel, seeking to "correct the record" of an inaccurate statement regarding his New York bar suspension in his verified Application for Admission Pro Hac Vice ("Application"). (Dkts. 8, 79, p. 1). Defendants respond for one purpose: to request the Court, in its sound discretion, to first exercise its power to require him to answer for his lack of candor to the Court, before affording leave.

3.     That concern is concrete. Absent Plaintiffs' request for conference the day after the filing of this Response, Defendants would have filed their forthcoming Request for a Show-Cause Order, which they hereby reference and incorporate verbatim as if fully stated herein.[1] Briefly, Defendants' Request for a Show-Cause Order asks the Court to order Mr. Wang to explain why sanctions are not warranted for his lack of candor in his Application, which contains misrepresentations already deemed "false" on June 3, 2026, in a parallel state-court proceeding. (Dkt. 8; Dkt. 78-2, p. 2, ¶¶ 3–4 ("experiencing infirmity in China… during the COVID Period is therefore false on both location and cause… [and] the 'in the process of being reinstated' representation was false when made.). In that proceeding, Mr. Wang submitted sworn testimony and, aside from changes to six (6) sworn facts, it is nearly identical in substance, as his Declaration he signed on June 15, 2026, just twelve (12) days later, in the instant matter. (Dkt. 79-1). Though

---

[1] Defendants requested that Plaintiffs confer on July 8, 2026. Defendants do not anticipate Plaintiffs to agree to the relief Defendants have requested.  However, counsel for Plaintiffs insisted on an opportunity to confer, yet represented that conflicts in his schedule prevented a conference until Thursday, July 9, 2026.  Despite conflicts on counsel for Defendants' schedule, counsel for Defendants rearranged his schedule to accommodate Plaintiffs' request.

he now admits those representations were inaccurate, Mr. Wang makes discrete, specific changes in his Declaration, to six (6) sworn facts from the declaration before the state court: (1) a clean-record; (2) his wife's role; (3) being "in China;" (4) his medical timeline; (5) his District of Columbia registration; and (6) his reinstatement status. Comparison of the state-court court's findings on his testimony in that case with his Declaration, which he attaches to the Motion in this matter, reveals each revision was made to make his account more defensible after the state court rejected it, doubling down on his three proffered excuses: (1) his wife; (2) the COVID period; and (3) a purported illness. This suggests a pattern of purposeful effort, not innocent error, warranting "clarification" about the purported correction. It confirms that Mr. Wang should answer to this Court directly.

4.      The pending withdrawal does not cure those misrepresentations or divest the Court of its authority to investigate them. Defendants therefore ask that the Court retain jurisdiction over Mr. Wang's conduct and, as set forth in Defendants' forthcoming Request for a Show-Cause Order, direct him to explain why he should not be sanctioned, before allowing any withdrawal.

## III.     FACTUAL BACKGROUND

5.      On August 26, 2025, Mr. Wang filed his verified Application, the Court granted it the following day, and Mr. Wang entered appearances for Plaintiffs. (Dkts. 8, 11, 19-23). In Section VII, Mr. Wang represented that he "was suspended by the New York bar solely due to failure to register during the COVID period while [he] was experiencing infirmity," and that he had "made all payments in arears and [was] in the process of being reinstated." (Dkt. 8, p. 2). In Section VI, he certified "N/A" to whether he had ever involuntarily lost the right to practice before any court or tribunal. (*Id.*)

6.      A state court has already deemed his proffered excuses as false and, at best, rebutted

by his own testimony. In the parallel Colorado action, *Geva v. USA Fencing*, the District Court for El Paso County revoked Mr. Wang's pro hac vice admission on June 3, 2026. (Dkt. 78-2, p. 2). That court found that Mr. Wang's representation that his suspension arose "solely due to failure to register[] during the COVID period" while he was "experiencing infirmity in China" was incorrect based on his own testimony admitting that his New York registration delinquency began in 2016, and also because his own public statements placed him in the United States, not China at the time. (*Id.*). The court further found that Mr. Wang's representation that he was "in the process of being reinstated'…was false when made[,]" because no reinstatement process existed for two (2) years until he purported refiled "recently." (*Id.*)

7.      Mr. Wang has now sworn to these events twice, yet his two accounts do not match. He first swore to them in his Affidavit executed under penalty of perjury under Colorado law, on May 19, 2026 (Dkt. 78-4, pp. 13–16), and then again, here, in his Declaration under penalty of perjury under Texas law, on June 15, 2026. (Dkt. 79-1, p. 5, ¶ 6). Mr. Wang built his Declaration on his Affidavit, as demonstrated by the same seven (7) paragraphs and the same fifteen (15) subparts. This makes identifying the six (6) discrete revisions easy and the timing curious. Because he signed the Declaration only after the Colorado court had found his account "false" and revoked his admission (Dkt. 78-2, p. 2, ¶¶ 3–4), each independent edit reflects testimony deliberately revised to try to overcome the adverse ruling from Colorado. Instead of admitting to and correcting his misrepresentations, Mr. Wang doubles down on the same three excuses: (1) his wife; (2) the COVID period; and (3) an intermittent illness, while altering the already sworn facts beneath them. Deleting "in China" underscores his calculated efforts, and the two oaths now conflict about whether his District of Columbia registration ever lapsed. Still, Mr. Wang's unrevised timeline defeats all of his excuses summarily.

- 4 -

8.      Defendants filed their Request for Judicial Notice of these public records on June 16, 2026. (Dkt. 78). Plaintiffs moved to withdraw Mr. Wang the next day, June 17, 2026, based on an effort to "correct the record," without disclosing his representations had just been deemed false and had just cost Mr. Wang his admission in Colorado. (Dkt. 79; Dkt. 78-2, p. 2). A fact that Mr. Wang has still not corrected in his application for *pro hac vice* before this court. (Dkt. 8).

## IV.    ARGUMENT & AUTHORITY

### A.    Plaintiffs Bear the Burden of Showing Good Cause

9.      "An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." *White v. BAC Home Loans Servicing, LP*, No. 309-CV-2484-G, 2010 WL 2473833, at *1 (N.D. Tex. June 15, 2010) (Fish, J.) (quoting *Matter of Wynn,* 889 F.2d 644, 646 (5th Cir. 1989)). The attorney seeking withdrawal carries the burden of establishing that good cause for the withdrawal exists. *Id*. (citing *Federal Trade Commission v. Intellipay, Inc*., 828 F. Supp. 33, 34 (S.D. Tex. 1993) ("The record must generally reflect an appropriate basis for granting leave [to withdraw]; unsubstantiated claims are insufficient."). Further, the local rules require that attorneys seeking to withdraw from a representation, even when the succeeding attorney's identity is made known, must do so by motion, "…specify[ing] the reasons requiring withdrawal[.]" N.D. TEX. LOC. R. 83.12(a).

10.     Permitting an attorney to withdraw is a decision "entrusted to the sound discretion" of the trial court. *White*, 2010 WL 2473833, at *1 (quoting *Matter of Wynn,* 889 F.2d at 646 (citation omitted)). In conducting this inquiry, the trial court "'must insure that it is aware of the reasons behind the request' for withdrawal." *Id*. (quoting *United States v. Cole*, 988 F.2d 681, 683 (7th Cir. 1993)). If it is not convinced that good cause to withdraw exists, the trial court possesses "substantial latitude to deny an attorney's motion to withdraw." *Id*. (collecting cases); *see also*

*Cole*, 988 F.2d at 683 ("'Unless there is a demonstrated conflict of interests or counsel and defendant are embroiled in an irreconcilable conflict that is so great that it resulted in a total lack of communication preventing an adequate defense, there is no abuse of discretion in denying a motion to withdraw.'") (quoting *United States v. Morris,* 714 F.2d 669, 673 (7th Cir.1983)) (internal quotation marks and brackets omitted). Whether good causes exist is a question of federal law, and it is answered predominately by referring "to the standards for withdrawal articulated in national ethics canons and in the ethics rules adopted by the court." *White*, 2010 WL 2473833, at *2 (collecting cases). To this end, the local rules adopt the Texas Disciplinary Rules of Professional Conduct. N.D. TEX. LOC. R. 83.8(e).

11.     Even when convinced that good cause exists, it is "incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel." *White*, 2010 WL 2473833, at *3 (quoting *Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. 1981)). To this end, the court should consider additional factors before allowing withdrawal. *Edwards v. Oliver*, No. 3:17-CV-1208-M-BT, 2022 WL 4820147, at *5 (N.D. Tex. Sept. 30, 2022) (citing *Broughten*, 634 F.2d at 882). In this inquiry, the main factors are "undue delay in the proceedings, prejudice to the client, and the interests of justice." *Id*. (citations omitted); *see also White*, 2010 WL 2473833, at *3 (collecting cases on factors).

## B.     "Correcting the Record" Is Not Good Cause

12.     Plaintiffs' sole stated basis for withdrawal is that Mr. Wang seeks to "correct the record" of his inaccurate statements in his Application. (Dkt. 79, p. 1). Generally, however, "a lawyer who agrees to represent a client is generally 'expected to work through the completion of a case.'" *Edwards v. Oliver*, No. 3:17-CV-1208-M-BT, 2022 WL 4820147, at *5 (N.D. Tex. Sept. 30, 2022) (quoting *Intellipay*, 828 F. Supp. at 34); *see also Am. Res. Techs., Inc. v. Oden*, 2014

WL 6884243, at *3 (N.D. Tex. Dec. 8, 2014) (Boyle, J.); *Streetman v. Lynaugh*, 674 F. Supp. 229, 235 (E.D. Tex. 1987) ("[A]n attorney who has once agreed to represent a client should not be permitted to abandon his responsibilities merely because he is unhappy with the nature of the relationship with the client."). Plaintiffs have not met their burden of demonstrating good cause for withdrawal, and Mr. Wang's Declaration is not a correction. In fact, by submitting Mr. Wang's Declaration, Plaintiffs simply opened the door for further inquiry into the already deemed misrepresentations and the intent in making the discrete, subsequent changes, in this Court.

**C.      Withdrawal Request Cannot Defeat the Disciplinary Investigation**

13.      Federal courts possess inherent powers "necessary to the exercise of all others," including the specific power to control admission to their bar and to discipline attorneys who appear before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citations omitted). In the Fifth Circuit, "[i]t is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers." *In re Grodner*, 587 Fed. Appx. 166, 169 (5th Cir. 2014) (quotation and other citations omitted). Local Rule 83.8 confirms that authority, permitting the presiding judge, "after giving opportunity to show cause to the contrary," to discipline an attorney whose conduct violates the Texas Disciplinary Rules of Professional Conduct, including the Rule 3.03 duty of candor to the tribunal. N.D. Tex. Loc. Civ. R. 83.8(b), (e); Tex. Disc. R. Prof. Conduct 3.03.

14.      A knowing misrepresentation to the Court is itself sanctionable "unethical behavior" under this district's disciplinary rule. *In Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 528 (5th Cir. 1992). In *Allied Pilots*, the Fifth Circuit affirmed findings that attorneys "violated [Texas Disciplinary] Rule 3.03 …[by making] false statements of material fact to the court and offered and used evidence they knew to be false." *Id*. at 528. To this end, the Fifth Circuit held that "[t]hese violations of the Texas Disciplinary Rules easily qualify as unethical conduct

which is barred by Local Rule 13.2 of the Northern District of Texas." *Id.* (citing Local Rules prior to 2004 amendments).

15.    The issues of whether misrepresentations were made here, how many, and the purpose of the six (6) subsequent revisions to this Court "…should not be swept under the rug." *In re Wick*, 628 F.3d 379, 380 (7th Cir. 2010) (holding that disbarment in federal bar was the appropriate sanction, despite request to voluntarily withdraw, after being disbarred by the state bar, for fraudulent billing practices). Permitting Mr. Wang to withdraw before he explains his conduct would undermine the Court's power to police its own bar as well as the professional standards under which lawyers in the State of Texas operate. The candor question should be resolved before, or concurrently with, any withdrawal.

**D.    The Court Should Retain Jurisdiction and Condition Any Withdrawal**

16.    Defendants do not ask the Court to force Mr. Wang to remain in a representation he no longer wishes to hold. They ask that his departure not be permitted to extinguish the Court's supervisory authority. Allowing Mr. Wang to withdraw, before requiring him to explain his uncorrected misrepresentations would undermine the Court's power to police its courts and govern the attorneys that practice before it. It would also be an affront to the profession of lawyers in Texas.  The Court should resolve the candor question before, or concurrently with, any withdrawal request. Defendants request the Motion be denied.

## V.    CONCLUSION & PRAYER

Based on the foregoing, Defendants respectfully request that the Court decline to permit Mr. Wang's withdrawal to serve as an unconditioned exit, retain jurisdiction over his conduct notwithstanding any withdrawal or substitution of counsel, and, as requested in Defendants' forthcoming Request for a Show-Cause Order, direct Charles Xiaolin Wang to show cause, in writing and at a hearing, why he should not be sanctioned under the Court's inherent authority for

the material misrepresentations in his Application for Admission Pro Hac Vice (Dkt. 8), and such

further relief, at law or in equity, as the Court deems just and appropriate.

DATED: July 8, 2026

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/ Robert Lemus*_____
      Robert Lemus
      Texas Bar No.: 24052225
      rlemus@grsm.com
      Arman Nikkhoo
      Texas Bar No. 24107649
      anikkhoo@grsm.com
      1900 West Loop South, Suite 1000
      Houston, Texas 77027
      (713) 490-4869 - Telephone
      (713) 961-3938 – Facsimile

      **COUNSEL FOR DEFENDANTS
      UNITED STATES FENCING
      ASSOCIATION, DONALD
      ALPERSTEIN, PHIL ANDREWS,
      DAVID ARIAS, LAURYN DELUCA,
      KAT HOLMES, and DAMIEN
      LEHFELDT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the July 8, 2026, a true and correct copy of the foregoing instrument has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

*/s/ Robert Lemus*
Robert Lemus