**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Julia Ya Zhao, Frederick Hausheer, Nana Pan, Hongran Stone, individually and on behalf of all others similarly situated<br><br>  *Plaintiffs*,<br><br>v.<br><br>USA FENCING ASSOCIATION<br>a Colorado Nonprofit Corporation<br><br>and<br><br>Donald Alperstein, David Arias, Phil Andrews, Damien Lehfeldt, Lauryn Deluca, and Kat Holmes, individually.<br><br>  *Defendants*. | Civil Action No. 4:25-cv-00931-O |

**DEFENDANTS' REQUEST FOR A SHOW-CAUSE ORDER, SUBJECT TO AND WITHOUT WAIVER OF THEIR MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, TO TRANSFER VENUE, COMPEL ARBITRATION AND ALL OTHER DEFENSES**

Defendants United States Fencing Association ("USFA"), Donald Alperstein ("Alperstein"), David Arias ("Arias"), Phil Andrews ("Andrews"), Damien Lehfeldt ("Lehfeldt"), Lauryn Deluca ("Deluca"), and Kat Holmes ("Holmes") (collectively, "Defendants"), respectfully file their request, subject to and without waiver of their Motions to Dismiss for Lack of Personal Jurisdiction, to Transfer Venue, Compel Arbitration (Dkts. 24–40, 65], and all other defenses, that the Court, in the exercise of its sound discretion, enter an order directing Plaintiffs' counsel, Charles Xiaolin Wang, to show cause why he should not be sanctioned for making, and failing to correct, material misrepresentations to this Court in his verified Application for Admission Pro Hac Vice ("Application") (Dkt. 8), and in support, Defendants would show:

### I.    USE OF GENERATIVE ARTIFICAL INTELLIGENCE

1.      As required by Local Rule 7.2(f), Defendants hereby disclose unto the Court that its counsel prepared this Motion and brief with assistance of generative artificial intelligence.

### II.    INTRODUCTION

2.      Defendants ask the Court to exercise its inherent authority to order Mr. Wang to explain why he should not be sanctioned for his lack of candor in his Application,[1] which contains misrepresentations already deemed "false" in a parallel state-court proceeding, on June 3, 2026. (Dkt. 8; Dkt. 78-2, p. 2, ¶¶ 3–4 ("experiencing infirmity in China… during the COVID Period is therefore false on both location and cause… [and] the 'in the process of being reinstated' representation was false when made."). In that proceeding, Mr. Wang also submitted sworn testimony and, aside from changes to six (6) sworn facts, it is nearly identical in substance, as his Declaration he signed on June 15, 2026. (Dkt. 79-1). While admitting that those representations in his Application were inaccurate, Mr. Wang makes discrete, specific changes in his Declaration, to six (6) sworn facts: (1) a clean-record; (2) his wife's role; (3) being "in China;" (4) his medical timeline; (5) his District of Columbia registration; and (6) his reinstatement status. Comparing the state-court court's findings on his testimony in that case, with his Declaration he subsequently submits to this Court,  reveals each of his revisions were made in one (1) direction, to make his account more defensible after the state-court rejected it, doubling down on his three proffered excuses: (1) his wife; (2) the COVID period; and (3) a purported illness. This pattern demonstrates Mr. Wang's calculated effort to abscond his duty to the Court and undermines any claims of

---

[1] Defendants also direct the Court's attention to another Application for Admission Pro Hac Vice for Mr. Wang, containing identical or substantially same representations at issue here, in a matter with the same Parties, before a district court in the Western District of Missouri, where a Rule 12(b) was recently granted. *Guzzi Vincenti, et. al. v. USA Fencing Assoc., et. al.*, No. 4:25-cv-00850-JFG, (W.D. Mo. May. 20, 2026) (Hereinafter "Missouri Case"); *see* Missouri Case, Dkts. 3, 5.

innocent-error. It confirms that Mr. Wang should answer to this Court directly.

3.        An order to show cause is the appropriate to balance affording Mr. Wang notice and an opportunity to be heard, while preserving the integrity of this Court's admission process. For these reasons as detailed herein, Defendants request the Court order Mr. Wang to explain why he should not be sanctioned for his clear ethical misconduct.

### III.      FACTUAL BACKGROUND

4.        On August 26, 2025, Mr. Wang filed his Application. (Dkt. 8). The Court granted it on the following day. (Dkt. 11).  Mr. Wang thereafter entered appearances for Plaintiffs. (Dkts. 19–23). In Section VII of the Application, Mr. Wang stated: "I was suspended by the New York bar solely due to failure to register during the COVID period while I was experiencing infirmity. I have since made all payments in arears and am in the process of being reinstated." (Dkt. 8, p. 2). In Section VI, he certified that he had never involuntarily lost the right to practice before any court or tribunal, when he marked it as, "N/A." (*Id*.)

5.        The Application incorporated the same representations Mr. Wang had made in a parallel pro hac vice application in *Geva v. USA Fencing*, No. 2025CV31304, in the District Court for El Paso County, Colorado. (Dkt. 78-2, p. 2). On June 3, 2026, that court granted a motion to revoke Mr. Wang's pro hac vice admission. (*Id*.). To this end, that court found that Mr. Wang's representation that his suspension arose "solely due to failure to register[] during the COVID period" while he was "experiencing infirmity in China" was rebutted by his own testimony admitting that his New York registration delinquency began in 2016, and also because his own public statements placed him in the United States, not China, during the relevant period. (*Id*.). The court further found that Mr. Wang's representation that he was "in the process of being reinstated'…was false when made[,]" because no reinstatement process existed for two (2) years

until he purported refiled "recently." (*Id*.)

6.      On June 16, 2026, Defendants filed their Request for Judicial Notice and Consideration, under Rule of Evidence 201, of these public records of the state-court's sanctions against Mr. Wang.  (Dkt. 78). On June 17, 2026, Plaintiffs' filed their Motion to Withdraw Mr. Wang as Counsel, submitting Mr. Wang's sworn declaration where he conceded that the Section VII statement "was inaccurate." (Dkt. 79-1, p. 2, ¶ 3).

7.      Mr. Wang has now sworn to these events twice, and his two accounts do not match. He first swore to them in an Affidavit executed under penalty of perjury under Colorado law, on May 19, 2026 (Dkt. 78-4, pp. 13–16), and again in the Declaration he filed in this Court under penalty of perjury under Texas law, on June 15, 2026. (Dkt. 79-1, p. 5, ¶ 6). Mr. Wang built the later Declaration from the earlier Affidavit, with the same seven (7) paragraphs and the same fifteen (15) subparts, so the changes between them are deliberate edits, not independent recollection. Because he signed the Declaration only after the Colorado court had found his account "false" and revoked his admission (Dkt. 78-2, p. 2, ¶¶ 3–4), each edit reflects sworn testimony revised to meet an adverse ruling. Rather than simply correct the record, Mr. Wang doubled down on the same three excuses: (1) his wife; (2) the COVID period; and (3) an intermittent illness, while altering the facts beneath them.

8.      Mr. Wang's three excuses: (1) his wife; (2) the COVID period; and (3) illness, each shifted between the two (2) sworn statements. Both blame his wife for the false document, but now, he leans in harder: Mr. Wang now swears the Application "was typed by my wife using the Colorado application as a template" and that "[t]he same inaccuracy in the Colorado application was copied to the Texas application later on[,]"conceding that he verified, under oath, the identical false statements before this Court. (Dkt. 79-1, p. 4, ¶ 5(14); Dkt. 79-1, p. 2, ¶ 4). The COVID

- 4 -

excuse likewise changed: while Mr. Wang previously swore that he was "experiencing infirmity in China," he now quietly deletes that representation that he was "in China." (Dkt. 78-4, p. 14, ¶ 3; Dkt. 79-1, p. 2, ¶ 3). Regardless, Mr. Wang's own timeline still defeats the excuse: he swears his registration lapsed "since 2016" and that he returned to and "stayed in the U.S." from the end of 2019 (Dkt. 78-4, p. 14, ¶¶ 5(3), 5(5); Dkt. 79-1, p. 3, ¶¶ 5(3), 5(5)). On this basis, the Colorado court found Mr. Wang's representation about "experiencing infirmity in China during the COVID period" was "false on both location and cause." (Dkt. 78-2, p. 2, ¶ 3). Deleting "in China" from the second statement also underscores his calculated efforts. Mr. Wang edited out the most demonstrably false detail while preserving the sympathetic COVID gloss. While both statements blame his mid-2025 signing on illness, they rely on a hospitalization, months later in September 2025. (Dkt. 78-4, p. 15, ¶ 5(13); Dkt. 79-1, p. 4, ¶ 5(13)). The Declaration then supplies a new, convenient collapse absent from his Affidavit: "[t]wo weeks after this application was submitted, I lost consciousness due to the illness and was ambulanced to an emergency room." (Dkt. 79-1, p. 4, ¶ 5(14)). This detail surfaces only where Mr. Wang needs to explain why he never corrected his Declaration. At the same time, his Declaration silently drops the "short term memory loss" symptom he had sworn to in Colorado. (Dkt. 78-4, p. 15, ¶ 5(12); Dkt. 79-1, p. 4, ¶ 5(12)). Notably, during this time, Mr. Wang dictated and verified two (2) motions, obtained pro hac vice admission, and entered appearances for the Plaintiffs.

9.      The two oaths also present an irreconcilable conflict about whether his District of Columbia registration ever lapsed. Previously, Mr. Wang swore his friend, "did keep [his] registration current with the DC bar but forgot to do the same for the New York Bar since 2016[,]" (Dkt. 78-4, p. 14, ¶ 5(3)), and now he swore she "forgot to keep [his] registration current with the DC bar and the New York Bar since 2016." ((Dkt. 79-1, p. 3, ¶ 5(3)). Mr. Wang likewise retreated

from the flat assurance to the Colorado court that he "made all payments in arrears … and [he is] in the process of being reinstated[,]" to now blaming filing in the wrong department and further aversions of illness. (Dkt. 78-4, p. 14, ¶ 5; Dkt. 79-1, p. 2, ¶ 5). This after the Colorado court found Mr. Wang's representation that he was "in the process of being reinstated" was "false when made." (Dkt. 78-2, p. 2, ¶ 4). Most tellingly, Mr. Wang ends his Affidavit by swearing that "no disability, disciplinary or grievance proceedings have been filed or are pending against me and I have never had a request for pro hac vice admission denied or revoked" (Dkt. 78-4, p. 16, ¶ 6). In his Declaration, he silently deletes that oath and instead discloses the Colorado revocation, a bar complaint, and retained ethics counsel, (Dkt. 79-1, p. 5, ¶ 6), without acknowledging he had sworn the opposite to the Colorado judge, just weeks earlier.

10.    These are not the marks of a single clerical slip. These six (6) sworn facts: (1) clean-record; (2) his wife's role; (3) being "in China;" (4) his medical timeline; (5) his District of Columbia registration; and (6) his reinstatement status, were all revised in one direction, to make Mr. Wang's account more defensible after the Colorado court rejected it, doubling down on his three excuses: (1) his wife; (2) the COVID period; and (3) illness. That pattern undermines any claim of innocent-error. It confirms that Mr. Wang should answer to this Court directly.

11.    Neither the pending withdrawal nor the passage of time cures the misrepresentations or divests the Court of authority to address them.

## IV.    ARGUMENT & AUTHORITY

### A.    The Court's Inherent Power to Address Mr. Wang's Misrepresentations in his Application for Pro-Hac-Vice Admission

12.    Federal courts possess inherent powers "necessary to the exercise of all others," including the specific power to control admission to their bar and to discipline attorneys who appear before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citations omitted). That

authority extends to managing the court's proceedings and "control[ling] the conduct of those who appear before them[,]" and it permits a court to sanction conduct that abuses the judicial process, including a fraud upon the court. *Id*. at 33. A court may "conduct an independent investigation in order to determine whether it has been the victim of fraud." *Id*. at 44 (citation omitted). In the Fifth Circuit, "[i]t is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers." *In re Grodner*, 587 Fed. Appx. 166, 169 (5th Cir. 2014) (quotation and other citations omitted).

13.     Courts "enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do." *United States v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006). For attorneys admitted to practice on *pro hac vice* status, it is no different. *Id*. at 375. ("We agree … that once a district court has admitted an attorney to practice before it *pro hac vice,* it may revoke that attorney's admission if, after following the proper disciplinary procedure, it concludes that the attorney violated a clearly identifiable ethical rule.").

14.     Here, Mr. Wang's admitted lack of candor in his application and in his Declaration fall squarely within the Court's supervisory authority. Under Local Civil Rule 83.8(b), a presiding judge, "after giving opportunity to show cause to the contrary, may take any appropriate disciplinary action against a member of the bar" whose conduct violates the Texas Disciplinary Rules of Professional Conduct, which include the Rule 3.03 duty of candor to the tribunal. N.D. TEX. LOC. CIV. R. 83.8(b), (e). In short, it is within the Court's power to require Mr. Wang to answer for his misrepresentations. Defendants respectfully request this Court order him to explain.

## B.     An Order to Show Cause is the Proper Means for Sanctions

15.     The safe harbor provision of Rule 11 does not apply for sanctions ordered on the court's own initiative, and the court may proceed by entering an order describing the offending

conduct and directing the offending party to show cause why sanctions should not issue. *Clark v. Mortenson*, 93 Fed. Appx. 643, 652 (5th Cir. 2004) (citations omitted). Indeed, a misrepresentation about an attorney's own disciplinary status in a pro hac vice application may be properly analyzed "pursuant to the court's inherent authority as opposed to" Rule 11. *Limon v. City of Laredo*, No. 5:24-CV-113, 2025 WL 408458, at *2, n.3 (S.D. Tex. Jan. 14, 2025), report and recommendation adopted, No. 5:24-CV-113, 2025 WL 407862 (S.D. Tex. Feb. 5, 2025). Of course, an order to show cause would also satisfy Mr. Wang's due process. *In re Grodner*, 587 Fed. Appx. 166, 170 (5th Cir. 2014) (citations omitted). The relief Defendants request is proper.

### C.    The Record Supplies the Predicate for a Show-Cause Order

16.    The Court need not resolve the ultimate question of sanctions now. It need only find that the record warrants requiring Mr. Wang to explain himself, for making misrepresentations in his Application and his admissions of those misrepresentations, and also for doubling down on his preferred excuses, by making a series of calculated revisions to his sworn testimony, instead of accepting responsibility for his misconduct and lack of candor.  Defendants recognize that the Court may take judicial notice of the Colorado order and filings only for the fact that they exist and what they state and that ultimately, sanctions turn on findings of bad faith and Mr. Wang's intent, to be determined at hearing. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998) (discussing judicial notice under Fed. R. Civ. P. 201) (citations omitted); *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (requiring a finding of bad faith for sanctions under inherent powers). Mr. Wang should have the opportunity to address that question directly. The appropriate course is to order him to do so.

### D.    Mr. Wang's Pending Withdrawal Does Not Divest the Court of Authority

17.    Mr. Wang's pending motion to withdraw does not extinguish the Court's authority. Allowing  Mr.  Wang  to  withdraw,  before  requiring  him  to  explain  his  uncorrected

misrepresentations would undermine the Court's power to police its courts and govern the attorneys that practice before it. The Court should resolve the candor question before, or concurrently with, any withdrawal request.

## V.    CONCLUSION & PRAYER

Based on the foregoing, Defendants respectfully request that the Court enter an order directing Charles Xiaolin Wang to show cause, in writing and at a hearing, why he should not be sanctioned under the Court's inherent authority for the material misrepresentations in his Application for Admission Pro Hac Vice (Dkt. 8) and his failure to correct them, and granting such further relief as the Court deems just.

DATED: July 8, 2026

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/ Robert Lemus*_____
      Robert Lemus
      Texas Bar No.: 24052225
      rlemus@grsm.com
      Arman Nikkhoo
      Texas Bar No. 24107649
      anikkhoo@grsm.com
      1900 West Loop South, Suite 1000
      Houston, Texas 77027
      (713) 490-4869 - Telephone
      (713) 961-3938 – Facsimile

      **COUNSEL FOR DEFENDANTS**
      **UNITED STATES FENCING**
      **ASSOCIATION, DONALD**
      **ALPERSTEIN, PHIL ANDREWS,**
      **DAVID ARIAS, LAURYN DELUCA,**
      **KAT HOLMES, and DAMIEN**
      **LEHFELDT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the July 9, 2026, a true and correct copy of the foregoing instrument has been electronically served on all parties and/or their counsel of record by ECF and in accordance with the Federal Rules of Civil Procedure.

*/s/ Robert Lemus*
Robert Lemus

## **CERTIFICATE OF CONFERENCE**

I certify that on July 9, 2026, counsel for Defendants conferred with counsel for Plaintiffs regarding the relief requested in this Motion, and that Plaintiffs oppose the requested relief.

*/s/ Robert Lemus*
Robert Lemus