IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JULIA YA ZHAO, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No.  4:25-CV-00931-O |
| | § | |
| UNITED STATES FENCING | § | |
| ASSOCIATION, ET AL., | § | |
| | § | |
| Defendants. | § | |

**OPINION & ORDER**

Before the Court are Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (ECF Nos. 24–30); Plaintiffs' Responses (ECF Nos. 50–55, 62); and Defendants' Omnibus Reply (ECF No. 66); Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 40); Plaintiffs' Response (ECF No. 61); and Defendants' Reply (ECF No. 68); and Defendants' Motion to Compel Arbitration (ECF No. 65), Plaintiffs' Response (ECF No. 71); and Defendants' Reply (ECF No. 73). Considering the Parties' briefing and the applicable law, the Court finds that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**, the Individual Defendants' (defined below) Motions to Dismiss for Lack of Personal Jurisdiction are **GRANTED**, USAFA's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**, and Defendants' Motion to Compel Arbitration should be and is **GRANTED**.

I.      BACKGROUND[1]

This case arises from USA Fencing Association's ("USAFA") two North American Cup tournaments held in Fort Worth, Texas, in March and November 2023 (the "Tournaments"). Plaintiffs are the parents of minor athletes who participated in the Tournaments. Plaintiffs allege

---

[1] The Court's recitation of the facts comes from the Parties' briefing. *See* ECF Nos. 65, 71, 73.

1

that Defendants, USAFA and individuals associated with USAF, discriminated against biological female athletes by allowing biological males to compete in women's events. Plaintiffs sued Defendants for alleged violations of Title IX (20 U.S.C. § 1681, et seq.), violations of the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code § 17.41, et seq.), Breach of Contract, Conspiracy, and Negligent Misrepresentation / Negligence Per Se. Plaintiffs have since dismissed their breach of contract claim.[2]

Defendants move for the Court to dismiss USAFA and Defendants David Arias, Phil Andrews, Lauryn Deluca, Donald Alperstein, Kat Holmes, and Damien Lehfeldt (collectively the "Individual Defendants") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and lack personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Defendants also move to compel arbitration subject to their jurisdictional motions. The Parties have fully briefed the issues, and Defendants' motions are ripe for the Court's review.[3]

## II.    LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Defendants may challenge a court's authority to hear a dispute under Federal Rule of Civil Procedure 12(b)(1). *See* FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Courts may dismiss for lack of subject matter jurisdiction on any of three separate grounds: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced

---

[2] *See* Pls.' Notice of Dismissal of Breach of Contract Claim, ECF No. 69.
[3] Defendants' reply brief to its Motion to Compel Arbitration (ECF No. 73) contains 24 pages of text, which exceeds the 10-page limit imposed by Local Rule 7.2(c). *See* L.R. 7.2(c) ("A reply brief must not exceed 10 pages."). Accordingly, the Court considered only the first 10 pages of text from Defendants' reply brief.

in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (internal quotation marks and citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Generally, when a Rule 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the Rule 12(b)(1) motion must be addressed first. *See id.* ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

### B.  Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof as the party seeking to invoke the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Plaintiff "need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). Furthermore, "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* at 546.

"A federal district court sitting in diversity may exercise personal jurisdiction over a [nonresident] defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citation omitted). "Because Texas's long-arm statute reaches to the constitutional limits,

the question [a federal court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Id.*

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When a nonresident defendant purposefully avails himself of the benefits of the forum state, so that he "'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction can be specific or general. *Clemens*, 615 F.3d at 378. General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (alteration in original) (internal quotation marks and citations omitted). Specific personal jurisdiction requires that a party "purposefully directed its activities at the forum state" and the Court has jurisdiction over claims "deriving from, or connected with" those activities. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

### C. Compelling Arbitration

The Federal Arbitration Act ("FAA") establishes national policies "favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). In determining whether parties should be compelled to arbitrate a dispute, the court conducts a two-step inquiry. *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007) (per curiam) (citing *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)). The first question is to decide whether the parties contracted to arbitrate. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). If they have, then the second question is whether a claim is covered by the arbitration agreement. *Id.* at 201; *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. V. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation omitted). In analyzing whether there is a valid agreement, courts apply state-law principles governing the formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

If the court determines that an agreement to arbitrate exists, it must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration. *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir. 2004). Upon finding that a valid arbitration agreement exists and no policies or statutes preclude its enforcement, the court is required to compel arbitration and stay or dismiss its proceedings. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

## III. ANALYSIS

The Fifth Circuit has held that "a court cannot rule on arbitrability without subject-matter and personal jurisdiction." *Hines v. Stamos*, 111 F.4th 551, 565 (5th Cir. 2024). One exception to

the personal jurisdiction rule is "[w]hen a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration." *Id.* (quoting *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (alteration in original). But this exception is not applicable here because Defendants have not agreed to arbitrate in Texas.

### A.  Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs have not complied with the Ted Stevens Act, also known as the Amateur Sports Act ("ASA"), 36 U.S.C. § 220501, *et seq.*[4] According to Defendants, "the ASA requires [a National Governing Body] to submit disputes concerning 'the opportunity of any amateur athlete […] to participate in amateur athletic competition' to binding arbitration."[5] Defendants submit that Plaintiffs are "challenging nationwide eligibility policies adopted by a national governing body" and as such "Congress has explicitly mandated [that this challenge] is subject to mandatory and binding arbitration."[6] Because Defendants assert this dispute should be sent to arbitration and the Court agrees, the Court **DENIES** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

### B.  Personal Jurisdiction

All seven Defendants seek dismissal for lack of personal jurisdiction. Defendants can be classified in two groups: (1) the Individual Defendants—Alperstein, Arias, Lehfeldt, Andrews, Holmes, and Deluca, and (2) the corporate Defendant, USAFA.

---

[4] Br. Supp. Defs.' Mot. Dismiss 2, ECF No. 40-1.
[5] *Id.* (quoting 36 U.S.C. § 220522(4)) (alteration in original).
[6] Defs.' Reply 2, ECF No. 68.

1.   Individual Defendants

The Individual Defendants argue that Plaintiffs have not alleged a *prima facie* case of personal jurisdiction because none of the Individual Defendants reside in Texas or have continuous or systematic contacts to support general jurisdiction.[7] Nor, they argue, have Plaintiffs established that their only claim against the Individual Defendants—conspiracy—arose out of any of the Individual Defendants' contacts with Texas or that any of the Individual Defendants purposefully directed their activities to Texas sufficient to support specific jurisdiction.[8] The Individual Defendants assert that their only connection to the case is their position on the board of directors— or in Andrews' case, as the Chief Executive Officer—and that none of their alleged actions in promulgating the challenged transgender policy were conducted in or directed at Texas.[9] Plaintiffs respond that the Individual Defendants directed activities toward Texas by participating in the creation and authorization of policies implemented at the Tournaments held in Fort Worth, Texas, which directly caused harm to Texas residents.[10] The Court agrees with the Individual Defendants.

> The Fifth Circuit employs a three-step test in analyzing specific jurisdiction:
>
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020) (citation omitted). Plaintiffs do not allege how the Individual Defendants participation in implementing the policies at issue were specifically directed at Texas or were implemented in Texas. Nor have Plaintiffs established how their cause of action stems from the Individual Defendants forum related contacts. USAFA is

---

[7] *See* Defs.' Mots. Dismiss 2–5, ECF Nos. 25-1–30-1.
[8] *Id.*
[9] *Id.*
[10] Pls.' Resps. Mots. Dismiss 1, ECF Nos. 50–52, 54, 55, 62.

headquartered in Colorado, and the individual Defendants live in Ohio, Alabama, New York, Virginia, and Colorado.[11] According to USAFA, it sponsors tournaments across the United States and the policy applied to all USAFA sponsored tournaments—not only Texas Tournaments.[12] Thus, the Individual Defendants actions as officers or board members of USAFA in implementing a nationwide policy are insufficient to establish personal jurisdiction.[13]

### 2.  USAFA

USAFA contends the Court does not have personal jurisdiction over it because it is a Colorado nonprofit domiciled in Colorado and has no purposeful contacts with Texas.[14] Plaintiffs argue that USAFA "has established minimum contacts with Texas through purposeful availment by deliberately hosting two major tournaments in Fort Worth and by engaging in ongoing business activities in Texas including recruiting and training members, certifying clubs, and sanctioning local tournaments."[15] Plaintiffs further argue that their claims arise directly from USAFA's contacts with Texas.[16] The Court agrees with Plaintiffs.

USAFA being haled into court in Texas is not the result of "as a result of random, fortuitous, or attenuated contacts." *Clemens*, 615 F.3d at 379. Rather, by administering and sponsoring the Tournaments USAFA has purposefully availed itself of the benefits and protections of Texas. *Id.* Even a "single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).  Likewise, Plaintiffs claims arise squarely from USAFA's administration

---

[11] *See* Defs.' Mots. Dismiss 2, ECF Nos. 25-1–30-1.

[12] *Id.* at 3.

[13] The Individual Defendants also argue that the fiduciary shield doctrine bars personal jurisdiction over them. Because the Court concludes it does not have personal jurisdiction on other grounds, it does not address this argument.

[14] Def.'s Mot. Dismiss 2, ECF No. 24-1.

[15] Pls.' Resp. Mot. Dismiss 4, ECF No. 53.

[16] *Id.* at 5.

of the Tournaments thereby creating a "sufficient nexus between [USAFA's] contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378–79.

Because the Court does not have personal jurisdiction over the Individual Defendants, the Court **GRANTS** the Individual Defendants' Motions to Dismiss and **DISMISSES without prejudice** the claims against the Individual Defendants. And because the Court finds that it has personal jurisdiction over USAFA, it **DENIES** USAFA's Motion to Dismiss.

### C.  Compelling Arbitration

Defendants contend the case should be compelled to arbitration because the parties have agreed to arbitrate and Plaintiffs' "claims fall squarely within the [arbitration] provision."[17] Plaintiffs argue that they should not be forced to arbitrate their claims because (1) "the arbitration agreement's prohibition on consequential, punitive, and exemplary damages prevents Plaintiffs from effectively vindicating their statutory rights under Title IX and the Texas DTPA" rending the arbitration provision unenforceable as it prevents "the effective vindication of federal statutory rights"; (2) "the limitation on damages indicates that the parties did not intend to arbitrate claims where punitive and/or exemplary damages are central to the statutory remedy"; and (3) "the arbitration agreement is both procedurally and substantively unconscionable under Texas law."[18]

#### 1.  Whether the Parties Agreed to Arbitrate

Plaintiffs do not appear to contend that they did not agree to arbitrate, rather they argue that the arbitration agreement is unenforceable.  But to the extent they do challenge whether they agreed to arbitrate, the Court finds that they did.

The Parties' arbitration provision states that "[a]ny controversy or claim arising from or relating to my membership or participation, or my minor child's membership or participation, in

---

[17] Defs.' Mot. Compel Arbitration 3–5, ECF No. 65.
[18] Pls.' Resp. Mot. Compel Arbitration 2, ECF No. 71.

USA Fencing, including but not limited to any matter arising from or relating to (i) qualification or selection for, or competition in, any fencing event . . . shall to the fullest extent permitted by law be settled by arbitration."[19] Thus, the Parties have clearly agreed to arbitrate claims at least some claims.

### 2. Whether a Delegation Clause Exists

Defendants argue for the first time in their reply that there is a delegation clause and thus the Court should allow the arbitrator to decide arbitrability questions.[20] Ordinarily, the Court does not consider arguments raised for the first time in reply. *Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) ("This court will not consider arguments raised for the first time in a reply brief."). But even considering, Defendants' delegation clause argument, the Court finds there is not a valid delegation clause.

A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). If the party seeking arbitration argues that there is a delegation clause, the Court first establishes whether a valid arbitration agreement exists. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018). Once the Court finds a valid arbitration agreement exists, the next question is whether the purported delegation clause is in fact a delegation clause. *Id.* If the Court determines that a delegation clause exists, the Court must refer the claim to arbitration absent some exceptional circumstance. *Kubala v. Supreme Prod. Services, Inc.*, 830 F.3d 199, 203 (5th Cir. 2016). If the agreement does not contain a delegation clause, the Court "must perform the ordinary arbitrability analysis." *Id.*

Defendants argue that the arbitration provision delegates arbitrability by requiring that

---

[19] Defs.' Mot. Compel Arbitration, Ex. A at 3, ECF No. 65.
[20] Defs.' Reply Mot. Compel Arbitration 8–9, ECF No. 73.

> "compliance with any rule, regulation, policy, practice, bylaw, or statutory or common law, of USA Fencing, FIE, USOC or IOC, or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing or by any officer, director, employee, agent, attorney, referee, official, committee member or volunteer of the USA Fencing, shall to the fullest extent permitted by law be settled by arbitration . . . ."[21]

But contrary to Defendants' assertion, this provision says nothing about delegating arbitrability to the arbitrator. To have a valid delegation provision, the Parties must "clearly and unmistakably agree[] to arbitrate arbitrability." *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 410 (5th Cir. 2014) (internal quotations omitted). The provision cited by Defendants appears to refer to the type of claims subject to arbitration. Likewise, no other terms in the arbitration provision indicates that the Parties clearly and unmistakably agreed to delegate arbitrability to the arbitrator. As such, the Court finds that the arbitration agreement does not contain a valid delegation clause.

### 3.   Arbitrability of Plaintiffs' Claims

Next, the Court determines whether Plaintiffs' asserted claims fall within the scope of the arbitration agreement. The Fifth Circuit has held that arbitration clauses requiring arbitration of claims that are "connected with or relate to" an agreement are broad in scope. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F. 3d 1061, 1067 (5th Cir. 1998). The Circuit has explained that such a broad arbitration agreement indicates the parties "intend the clause to reach all aspects of the relationship." *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998).

---

[21] Defs.' Mot. Compel Arbitration, Ex. A at 3, ECF No. 65.

Because Plaintiffs' claims arise from participation in the Tournaments and the arbitration provision applies to "[a]ny controversy or claim arising from . . . any fencing event,"[22] Plaintiffs' claims fall under the arbitration agreement.

### 4.   Whether the Arbitration Agreement is Enforceable

Plaintiffs argues that the arbitration agreement is unenforceable under two theories. The first is predicated on denial of effective vindication of statutory rights.[23] The second raises contract defenses.[24]

### i.   *Effective Vindication*

Plaintiffs assert that being compelled to arbitrate would limit their ability to pursue their Title IX, conspiracy, and DTPA claims because the arbitration provision provides that "[t]he arbitrator(s) will have no authority to award consequential, punitive or exemplary damages."[25] This, they argue, violates the effective vindication doctrine.[26] Defendants argue that "[t]he prohibition on certain damages does not prevent plaintiffs from pursuing their substantive claims and obtaining compensatory relief."[27]

The effective vindication doctrine is an exception to the Federal Arbitration Act's general policy in favor of arbitration. *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 738 (5th Cir. 2026). The doctrine requires the Court to invalidate an arbitration agreement if it operates "as a prospective waiver of a party's *right to pursue* statutory remedies." *Id.* (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (emphasis in original)). However, the Supreme Court has dismissed concerns that the arbitral forum was inadequate "so long as the prospective

---

[22] *Id.*
[23] Pls.' Resp. Mot. Compel Arbitration 3–5, ECF No. 71.
[24] *Id.* at 5–12.
[25] Defs.' Mot. Compel Arbitration, Ex. A at 3, ECF No. 65.
[26] Pls.' Resp. Mot. Compel Arbitration 3–5, ECF No. 71.
[27] Defs.' Reply Mot. Compel Arbitration 10, ECF No. 73.

litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Am. Exp. Co.*, 570 U.S. at 235.

Here, the statutory remedy for a violation of the Texas DTPA is treble damages.[28] *See* TEX. BUS. & COM. CODE § 17.50. And as Defendants point out, while consequential, punitive or exemplary damages may be unavailable to Plaintiffs, there is no prohibition on statutory damages under the arbitration provision.[29] Likewise, Plaintiffs have not pointed the Court to any authority providing a statutory right to consequential, punitive or exemplary damages for their conspiracy or Title IX claims. In fact, "Title IX contains no express remedies" and "punitive damages are unavailable" under Title IX. *McGowan v. S. Methodist Univ.*, 715 F. Supp. 3d 937, 954 (N.D. Tex. 2024), *aff'd sub nom. Clouse v. S. Methodist Univ.*, No. 24-10461, 2025 WL 2427755 (5th Cir. Aug. 22, 2025). As such, Plaintiffs have not clearly identified any statutory cause of action that could not be vindicated through arbitration.

### ii.     *Procedural and Substantive Unconscionability*

Plaintiffs argue that the arbitration provision is procedurally and substantively unconscionable.[30] They assert it is procedurally unconscionable because it is "[a]n adhesion contract is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party with no real opportunity to negotiate terms."[31] Plaintiffs also contend it is substantively unconscionable due to the arbitration agreement (1) barring core statutory and common-law remedies, (2) requiring arbitration in Colorado Springs under Colorado law, and (3) binding minors to an arbitration agreement their parents signed.[32] Defendants offer responsive

---

[28] Pls.' Resp. Mot. Compel Arbitration 4, ECF No. 71.
[29] Defs.' Reply Mot. Compel Arbitration 10, ECF No. 73.
[30] Pls.' Resp. Mot. Compel Arbitration 6, ECF No. 71.
[31] *Id.*
[32] *Id.* at 7–12.

arguments in their reply brief, but they are beyond page 10,[33] and thus the Court does not consider them.

Texas law, which the Parties rely on in their briefs, recognizes both substantive and procedural unconscionability. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Id.* If a contract is found unconscionable, Texas law renders it unenforceable. *Id.* The burden of proving that an agreement is unconscionable rests on the party opposing arbitration. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

Plaintiffs argue the Court should deem the arbitration agreement procedurally unconscionable because it is an adhesion contract "presented on a take-it-or-leave-it basis as a precondition to competing."[34] But as Defendants correctly state, "adhesion contracts are not automatically unconscionable under Texas law."[35] *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) ("Adhesion contracts are not automatically unconscionable, and there is nothing per se unconscionable about arbitration agreements."). "Under the FAA, unequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract." *Id.* Plaintiffs do not allege that they entered into the contract because of fraud. Rather, Plaintiffs argue they "had no meaningful choice but to acquiesce if their children wanted to fence."[36] But "the mere existence of unequal bargaining power does not make an arbitration clause unconscionable." *Davis v. EGL Eagle Glob. Logistics*

---

[33] *See* footnote 2.
[34] Pls.' Resp. Mot. Compel Arbitration 7, ECF No. 71.
[35] Defs.' Reply Mot. Compel Arbitration 1, ECF No. 73.
[36] Pls.' Resp. Mot. Compel Arbitration 7, ECF No. 71.

*L.P.*, 243 F. Appx. 39, 46 (5th Cir. 2007) (citing *FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001)). Such an agreement may be enforceable even if the terms offered are not negotiable. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002). As such, Plaintiffs have not carried their burden to show that the agreement is procedurally unconscionable.

Plaintiffs' statutory and common law remedy arguments for substantive unconscionability rest on several of the arguments the Court has already addressed above. As the Court previously explained, Plaintiffs have not shown any statutory rights that are barred through arbitration. Likewise, Plaintiffs have provided no authority that contracting away certain common law remedies is improper. To the extent there is a remedy that the Court has overlooked or has not been presented, the arbitrator should find that denying such a remedy is unconscionable and sever that provision. *See Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 229–30 (Tex. 2014) (explaining that an unconscionable provision in an arbitration agreement may be severed so long as the severed provision "does not constitute the essential purpose of the agreement.").

Plaintiffs have likewise not carried the burden on their remining arguments. First, Plaintiffs' argument that they cannot bind their minor children to arbitration is incorrect. The Texas Supreme Court has explained that "parents may sign arbitration agreements on behalf of their children" based on their statutory authority under Texas Family Code § 151.001(a)(7). *Taylor Morrison of Texas, Inc. v. Ha*, 660 S.W.3d 529, 534 (Tex. 2023). Likewise, "Parents may equitably bind their children to an arbitration agreement through direct-benefits estoppel by suing based on the contract on their child's behalf." *Id.*

Finally, Plaintiff's argue that traveling to Colorado would impose "significant travel and legal costs on Texas Plaintiffs."[37] But Plaintiffs cite no authority to substantiate this being

---

[37] *Id.* at 10–11.

unconscionable. Plaintiffs further argue that Colorado law "does not allow Plaintiffs a meaningful opportunity to pursue relief [because] Colorado law does not provide the same consumer-protection framework as Texas law, particularly with respect to the DTPA's enhanced damages regime and Texas's strong public policy favoring private enforcement of consumer protections."[38] But as Plaintiffs acknowledge, Colorado has its own consumer protection act which provides for treble damages.[39] While Colorado's standard might be different than Texas' standard, Plaintiffs have provided no authority showing this is unconscionable.

*     *     *

Because Plaintiffs have not carried their burden to resist arbitration the Court **GRANTS** Defendants' Motion to Compel Arbitration.

### 5.   Whether the Case Should Be Stayed

Having referred the claims to arbitration, the Court must determine whether to stay or dismiss this lawsuit. *See* 9 U.S.C. § 3. Given that Plaintiffs ask the Court to stay pending arbitration,[40]  the Court **GRANTS** Plaintiffs' request to stay the proceedings pending conclusion of the arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

### IV.   CONCLUSION

Because Defendants assert this dispute should be sent to arbitration and the Court determines that the dispute should be sent to arbitration, the Court **DENIES** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 40). Additionally, because the Court

---

[38] *Id.* at 11.
[39] *Id.* at n. 2.
[40] *Id.* at 13–14.

16

does not have personal jurisdiction over the Individual Defendants, the Court **GRANTS** the Individual Defendants' Motions to Dismiss (ECF Nos. 25–30) and **DISMISSES without prejudice** the Individual Defendants. And because the Court finds that it does have personal jurisdiction over USAFA, it **DENIES** USAFA's Motion to Dismiss (ECF No. 24). The Court further concludes that Plaintiffs' claims are covered by the Representation Agreement's arbitration provision. Accordingly, the Court **GRANTS** Defendants' Motion to Compel Arbitration & Stay Lawsuit Pending Arbitration (ECF No. 65). The Court **REFERS** the Parties' dispute to arbitration. The suit shall be administratively **STAYED** pending the completion of arbitration proceedings. The Clerk of court is directed to administratively close this case pending resolution of the arbitration proceedings. Within 14 days of the conclusion of arbitration, the Parties are **ORDERED** to file a joint status report with the Court regarding the results of the arbitration.

 **SO ORDERED** on this **23rd day** of **July, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**